No. 24-12444-G

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

STATE OF ALABAMA, et al.,
        *Plaintiffs-Appellants*,

v.

U.S. SECRETARY OF EDUCATION, et al.
        *Defendants-Appellees*,

On Appeal from the United States District Court
for the Northern District of Alabama, No. 7:24-cv-533 (Axon, J.)

## PLAINTIFFS-APPELLANTS' <u>EMERGENCY</u> MOTION FOR ADMINISTRATIVE INJUNCTION
## (RELIEF NEEDED BY <u>JULY 31, 2024</u>)

Steve Marshall
  *Attorney General*
Edmund G. LaCour Jr.
  *Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
cam@consovoymccarthy.com

[Additional counsel listed at end of brief]

*Counsel for Plaintiffs-Appellants*

No. 24-12444-G
*Alabama v. U.S. Sec'y of Educ.*
**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Per Rule 26.1 and Circuit Rule 26.1, Appellants certify that the following have an interest in the outcome of this appeal:

1. Alabama, State of, *Plaintiff-Appellant*

2. Axon, Annemarie Carney, *U.S. District Court Judge*

3. Bernstein, C'Zar, *Attorney for Private Plaintiffs-Appellants*

4. California, State of, *Amicus*

5. Cardona, Miguel, in his official capacity as Secretary of Education, *Defendant-Appellee*

6. Carr, Christopher M., *Attorney for Plaintiff-Appellant Georgia*

7. Florida, State of, *Plaintiff-Appellant*

8. Flynn, Shawn M., *Attorney for Amicus Stop Abusive and Violent Environments*

9. Georgia, State of, *Plaintiff-Appellant*

10. Goldfarb, Jon C., *Attorney for Amici States of New Jersey, California, and Pennsylvania*

11. Independent Women's Law Center, *Plaintiff-Appellant*

12. Independent Women's Network, *Plaintiff-Appellant*

13. Kopplin, Rebecca, *Attorney for Defendants-Appellee*

14. Lacour, Jr., Edmund, *Attorney for Plaintiff-Appellant Alabama*

15. Marshall, Steve, *Attorney for Plaintiff-Appellant Alabama*

16. McKasson, Lindsay R., *Attorney for Amicus Stop Abusive and Violent Environments*

17. Miller, Edward A. R., *Attorney for Amicus Stop Abusive and Violent Environments*

18. Moody, Ashley, *Attorney for Plaintiff-Appellant Florida*

19. New Jersey, State of, *Amicus*

20. Norris, Cameron, *Attorney for Private Plaintiffs-Appellants*

21. North, Benjamin F., *Attorney for Amicus Stop Abusive and Violent Environments*

22. Parents Defending Education, *Plaintiff-Appellant*

23. Pennsylvania, State of, *Amicus*

24. Percival, James H., *Attorney for Plaintiff-Appellant Florida*

25. Peters, David, *Attorney for Defendants-Appellee*

26. Petrany, Stephen J., *Attorney for Plaintiff-Appellant Georgia*

27. South Carolina, State of, *Plaintiff-Appellant*

28. Spate, Joseph D., *Attorney for Plaintiff-Appellant South Carolina*

29. Speech First, Inc., *Plaintiff-Appellant*

30. Stop Abusive and Violent Environments, *Amicus*

31. Taylor, Bryan, *Attorney for Non-Alabama Plaintiffs-Appellants*

32. United States Department of Education, *Defendant-Appellee*

33. Vaseliou, Thomas, *Attorney for Private Plaintiffs-Appellants*

34. Wilson, Alan, *Attorney for Plaintiff-Appellant South Carolina*

No. 24-12444-G

*Alabama v. U.S. Sec'y of Educ.*

Parents Defending Education, Speech First, Independent Women's Network, and Independent Women's Law Center have no parent corporation and no corporation owns 10% or more of their stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal. Per Circuit Rule 26.1-2(c), Appellants certify that the CIP contained in this motion is complete.

Dated: July 30, 2024

/s/ *Cameron T. Norris*
Counsel for Plaintiffs-Appellants

# INTRODUCTION

The Department of Education's sweeping regulation on Title IX will go into effect in less than 36 hours, on August 1, 2024. *See* 89 Fed. Reg. 33,474 (Apr. 29, 2024). The regulations require a series of radical changes at schools that take federal money, including

- letting males use female restrooms (proposed 34 C.F.R. §106.31, .10)
- letting males shower and undress in front of females in locker rooms (§106.31, .10)
- letting males box and wrestle females in P.E. class (§106.10)
- letting males room with females on overnight trips (§106.10)
- punishing students who refuse to use someone's "preferred pronouns" (§106.2)
- punishing students who express "offensive" views on same-sex marriage, abortion, gender identity, or other controversial topics (§106.2)

The Title IX rule not only immediately jeopardizes the rights and safety of students. But it also requires schools to digest the rest of the 423-page rule, update their policies, retrain their employees, figure out how to reconcile contrary state laws, and more. And the rule's effective date is hours away.

Until today, the Department's Title IX rule was 0-8 in court. District courts preliminarily enjoined the rule's enforcement in at least 26 States[1]; and the Sixth and Fifth Circuits let those injunctions stand in full, *see Tennessee v. Cardona*, 2024 WL

---

[1] *Tennessee v. Cardona*, 2024 WL 3019146 (E.D. Ky. June 17); *Louisiana v. Dep't of Educ.*, 2024 WL 2978786 (W.D. La. June 13); *Arkansas v. Dep't of Educ.*, 2024 WL 3518588 (E.D. Mo. July 24); *Texas v. United States*, 2024 WL 3405342 (N.D. Tex. July 11); *Carroll Indep. Sch. Dist. v. Dep't of Educ.*, 2024 WL 3381901 (N.D. Tex. July 11); *Kansas v. Dep't of Educ.*, 2024 WL 3273285 (D. Kan. July 2).

3453880 (6th Cir. July 17); *La. ex rel. Murrill v. Dep't of Educ.*, 2024 WL 3452887 (5th Cir. July 17). The district court was the first to uphold the rule, even though Eleventh Circuit precedent is the *most* adverse to the Department's position. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc) (bathrooms); *Eknes-Tucker v. Gov'r of Ala.*, 80 F.4th 1205 (11th Cir. 2023) (gender identity); *Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022) (free speech). In the rule itself, the Department acknowledges that its rule conflicts with this Court's precedent: It "declines to adopt the Eleventh Circuit's reasoning in *Adams*," 89 Fed. Reg. at 33,821, an option that agencies don't have when they litigate in this circuit.

But time is too short for a deep dive into the merits. Though briefing was complete on June 19 and oral argument was held on July 1, the district court did not rule until today, July 30, giving the plaintiffs (Alabama, Georgia, Florida, South Carolina, and four associations who represent students) just hours to seek emergency relief. Now that the district court has denied an injunction pending appeal, D.Ct.Doc.64, Plaintiffs will file a motion asking this Court for the same relief. But that motion could not be briefed, let alone considered and decided, before the rule goes into effect in less than 36 hours.

Plaintiffs thus ask this Court to enter an administrative injunction **by July 31, 2024**, temporarily barring Defendants from enforcing the challenged rule in Alabama, Georgia, Florida, and South Carolina until this Court resolves Plaintiffs' forthcoming

2

motion for an injunction pending appeal. This state-specific relief mirrors the injunctions that six district courts have entered and two appellate courts have upheld. It requires no consideration of the merits: It simply "'freeze[s]'" the status quo and "buys time" for this Court to consider Plaintiffs' forthcoming motion. *United States v. Texas*, 144 S.Ct. 797, 798 (2024) (Barrett, J., concurring). It will not harm Defendants, who must simply wait to enforce the rule for a few more weeks in a few more States. But it's essential to protect Plaintiffs, schools, and students in this circuit from irreparable harm.[2]

## ARGUMENT

By the end of the day on July 31, this Court should enter an administrative injunction that temporarily bars Defendants, pending this Court's decision on Plaintiffs' forthcoming motion for an injunction pending appeal, from enforcing the challenged rule in Alabama, Florida, Georgia, and South Carolina. That injunctive relief would mirror the preliminary injunctions that other courts have entered across the country, though its duration would be much shorter. *E.g.*, *Louisiana*, 2024 WL 2978786, at *21

---

[2] Defendants themselves have asked the Supreme Court for emergency relief before August 1, in the Fifth and Sixth Circuit cases involving the rule. *See* Docket, No. 24A79 (U.S.); Docket No. 24A78 (U.S.). Because the Supreme Court could rule on those requests on July 31, an administrative stay could give this Court the added benefit of seeing the Supreme Court's decisions before having to resolve an injunction pending appeal.

("[Defendants] ARE HEREBY ENJOINED AND RESTRAINED from implementing, enacting, enforcing and taking action in any manner to enforce the FINAL RULE" in "Louisiana, Mississippi, Montana, and Idaho"). Plaintiffs will then file and brief their motion for an injunction pending appeal on whatever expedited schedule this Court deems appropriate.

**To prevent irreparable harm before the rule goes into effect on August 1, this Court should enter administrative relief by July 31.**

This Court can issue "administrative" relief that "buys the court time to deliberate" on a broader request for expedited relief. *Texas*, 144 S.Ct. at 798 (Barrett, J., concurring) (discussing administrative stays); *accord Klay v. United Healthgrp.*, 376 F.3d 1092, 1099-100 (11th Cir. 2004) (discussing administrative injunctions). This authority stems from courts' inherent authority to manage their dockets and the All Writs Act (28 U.S.C. §1651). Both the Supreme Court and circuit courts "frequently" grant this kind of relief. *See Texas*, 144 S.Ct. at 798 (Barrett, J., concurring) (collecting examples); *e.g.*, *Career Colleges & Sch. of Texas v. U.S. Dep't of Educ.*, 98 F.4th 220, 233 (5th Cir. 2024) ("administrative injunction" "granted" against same agency in APA case); *Trump v. Thompson*, 2021 WL 5239098 (D.C. Cir. Nov. 11) (granting motion for administrative injunction); *Trump v. Vance*, 2019 WL 5703884 (2d Cir. Oct. 7) (similar).

Because administrative injunctions are needed to let the court "make an intelligent decision" on the broader request for relief pending appeal, they of course don't require the court to predict how it will resolve that request on "the merits." *Texas*, 144

4

S.Ct. at 799; *accord Klay*, 376 F.3d at 1100-01. Their "point" is to "minimize harm" in the short period between now and "the time it takes" for the court to resolve that broader request. *Texas*, 144 S.Ct. at 798-99 (Barrett, J., concurring). An administrative injunctive is appropriate whenever it is "calculated in the court's sound judgment to achieve the ends of justice entrusted to it." *Klay*, 376 F.3d at 1100.

Under any factor or test, administrative relief is needed here. A temporary injunction is needed to prevent irreparable harm to Plaintiffs in the period between the rule's effective date and a decision on their forthcoming motion. Defendants will suffer no harm, by contrast, since their rule isn't in force now, has never been in force, and is enjoined across the country. And to the extent this Court considers the merits, Plaintiffs will likely prove—as every other court so far has held—that the rule should be preliminarily enjoined in the plaintiff States.

**Harm to Plaintiffs**: Plaintiffs will suffer irreparable harm without an administrative injunction. They proved those harms in 13 declarations in the district court, which Defendants never rebutted or offset with any evidence of their own. *See* D.Ct.Docs. 7-2–13, 15. Most notably for now, the plaintiff States will suffer "loads of time and lots of costs" that they'll never recover if this Court lets the rule go into effect on August 1. *Tennessee*, 2024 WL 3453880, at *4.

The Eleventh Circuit "has recognized that unrecoverable monetary loss is an irreparable harm," *Georgia v. President of the United States*, 46 F.4th 1283, 1302 (11th Cir.

2022), and "complying with a regulation later held invalid almost always produces [that] irreparable harm," *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). The federal government, after all, cannot be sued for damages later for costs incurred now. *W.V. ex rel. Morrisey v. Dep't of the Treasury*, 59 F.4th 1124, 1149 (11th Cir. 2023).

Here, the rule upends the status quo by requiring schools to digest hundreds of pages of new regulations, change their policies, train their employees, and much more. The rule itself estimates that compliance will cost millions. 89 Fed. Reg. at 33,851, 33,861, 33,548, 33,483, 33,492, 33,850, 33,862, 33,868-69. And Plaintiffs' declarants testified, without contradiction, that the real costs are much higher. *E.g.*, D.Ct.Doc.7-3 ¶¶6-17; D.Ct.Doc.7-2 ¶¶9, 13-19; D.Ct.Doc.7-4 ¶¶5-15; D.Ct.Doc.7-8 ¶¶6-20; D.Ct.Doc.7-9 ¶¶6-18; D.Ct.Doc.7-10 ¶¶9-19. Those costs have only grown, since schools have even less time once the rule becomes effective "on August 1, just before the start of the school year." *Tennessee*, 2024 WL 3453880, at *4. And those "enormous administrative costs" will "double" should this Court let the rule go into effect now, only to grant Plaintiffs an injunction later. *Louisiana*, 2024 WL 3452887, at *2.

Plaintiffs' irreparable harms are not limited to money. The rule conflicts with the States' policies and statutes, *e.g.*, D.Ct.Doc.7-2 ¶14; D.Ct.Doc.7-3 ¶12; D.Ct.Doc.7-8 ¶9; D.Ct.Doc.7-4 ¶8; D.Ct.Doc.7-10 ¶10, as both the district court and Defendants agree, *see* D.Ct.Doc.58 at 119; D.Ct.Doc.24 at 53. This "inability to enforce … duly enacted [laws] clearly inflicts irreparable harm on the State[s]." *Abbott v. Perez*, 585 U.S.

579, 603 n.17 (2018); *accord Morrisey*, 59 F.4th at 1149. Further, the rule will allow males into female restrooms, locker rooms, and other intimate spaces, *e.g.*, *Tennessee*, 2024 WL 3453880, at *1, jeopardizing students' "'constitutional right to bodily privacy,'" *Adams*, 57 F.4th at 805. And the rule requires schools to adopt a definition of harassment that this Court says unconstitutionally chills students' speech, another well-recognized form of irreparable harm. *Cartwright*, 32 F.4th at 1128. Those students whose rights are being violated are members of the plaintiff associations, D.Ct.Doc.7-13 ¶¶13-19; D.Ct.Doc.7-12 ¶¶12-25; D.Ct.Doc.7-11 ¶¶9-21, and citizens of the plaintiff States.

The district court found that the rule, at a minimum, will cost States time and money, D.Ct.Doc.58 at 26-27, and preempt some of their laws, D.Ct.Doc.58 at 119-21; and it never suggested that those harms could be undone later. So its aside about Plaintiffs' supposed "delay" is both wrong and confusing. D.Ct.Doc.58 at 110-11. Wrong because Plaintiffs sued the same day that the rule was published, moved for a preliminary injunction only six days later (despite the rule's massive length), and proposed the briefing schedule that *Defendants* said they needed (hence why Defendants have never faulted Plaintiffs for "delay"). *See* D.Ct.Docs.1, 7, 13. And confusing because most of Plaintiffs' harms stem from the rule going into effect on August 1; Plaintiffs acted entirely consistently with that reality by negotiating a schedule where its motion was fully briefed by June 19 and fully argued by July 1, giving the district court a whole month to rule before the effective date of August 1. Plaintiffs moved *faster* than many cases where

7

district courts *granted* injunctions against the rule. That the district court waited until the second to last day to issue its opinion—longer than every other court in these cases—says nothing about Plaintiffs or their injuries.[3]

**Negligible Harm to Defendants**: The harm to Defendants from a brief administrative injunction would be negligible. The Department "can hardly be said to be injured by putting off the enforcement of a Rule it took three years to promulgate after multiple delays." *Louisiana*, 2024 WL 3452887, at *3. Plus, administrative relief will simply leave the existing rules in place, which are more than sufficient to prevent sex discrimination. *Tennessee v. Cardona*, Doc. 117 at 23, 26 (E.D. Ky. July 10, 2024). And the challenged rule is already enjoined in at least 26 other States, as explained. Even the district court found the notion that "the Department … would be irreparably harmed by an injunction" to be "unpersuasive." D.Ct.Doc.58 at 119-20.

**Likely Success on the Merits**: To the extent "the underlying merits [are] a reason to grant an administrative" injunction, the merits heavily favor Plaintiffs here. *Texas*, 144 S.Ct. at 799 (Barrett, J., concurring). As explained, six district courts and two courts of appeals have held that the rule should be preliminarily enjoined. Though the Sixth

---

[3] Plaintiffs' motion here was fully briefed on the same day that briefing ended in *Kansas*, two days faster than *Arkansas*, and nine days faster than the two cases in Texas. *Compare* D.Ct.Doc. 38 (reply brief filed June 19), *with Carroll Indep. Sch. Dist.*, No. 4:24-cv-461, Doc. 36 (N.D. Tex.) (reply brief filed June 28), *Texas*, No. 2:24-cv-86, Doc. 46 (N.D. Tex.) (reply brief filed June 28), *Arkansas*, No. 4:24-cv-636, Doc. 21 (E.D. Mo.) (reply brief filed June 21), *Kansas*, No. 5:24-cv-4041 (D. Kan.) (reply brief filed June 19).

8

Circuit was 2-1, even the dissent agreed that the rule's central provisions should be enjoined in full. *See Tennessee*, 2024 WL 3453880, at *3 ("All three members of the panel, it bears emphasis, agree that these central provisions of the Rule should not be allowed to go into effect on August 1."). That conclusion is even easier here, given this Court's existing caselaw. Consider just a few of the arguments against some of the flawed provisions.

1. <u>Importation of Gender Identity</u> (§106.10). The rule redefines Title IX's "scope" by defining "sex discrimination" to include discrimination based on "gender identity." 89 Fed. Reg. at 33,886 (proposed §106.10). Though the rule purports to exempt sports and dorms from this mandate, it does not exempt bathrooms, locker rooms, gym class, overnight trips, sex-ed class, and much more. *See* 89 Fed. Reg. at 33,816, 33,819-21. The rule justifies this radical change on one ground: the Supreme Court's interpretation of Title VII in *Bostock v. Clayton County*, 590 U.S. 644 (2020). *See* 89 Fed. Reg. at 33,806-07. But as Chief Judge Sutton explained, that importation of *Bostock* into Title IX is illegal. *Tennessee*, 2024 WL 3453880, at *2-3. "As many jurists have explained," *Bostock* does not extend here because Title VII and Title IX "use materially different language," "serve different goals," and "have distinct defenses." *Id.* at *2-3. Chief Judge Sutton cited this Court's decision in *Adams*, which likewise refused to extend *Bostock* beyond Title VII. *See* 57 F.4th at 808. Like the Sixth Circuit, this Court

9

has consistently held that "the reasoning of *Bostock* 'applies only to Title VII.'" *Eknes-Tucker*, 80 F.4th at 1229.

The Department's unlawful attempt to redefine sex discrimination, as the Fifth and Sixth Circuits ruled, justify a preliminary injunction against the entire rule. That definition "implicates" "all" of the rule's other provisions, and the Department never "contemplated" during the rulemaking "the idea of allowing these provisions to go into effect with a different definition of sex discrimination." *Tennessee*, 2024 WL 3453880, at *4. Both circuits also faulted the Department for failing to tell the district court how the rest of the rule could possibly stand if this central definition falls. *See Louisiana*, 2024 WL 3452887, at *1-2; *Tennessee*, 2024 WL 3453880, at *4. Though Defendants did the exact same thing here (this section of their brief was virtually identical to the corresponding sections in their briefs in the other cases), the district court seemed to fault *Plaintiffs* for not raising this defense on the government's behalf. *See* D.Ct.Doc.58 at 30-32. That (and other) strange applications of forfeiture doctrine make it only clearer how much of an outlier the district court's decision is.

2. <u>Bathrooms</u> (§106.10 and §106.31). The rule requires schools to let males who identify as female use the bathrooms, locker rooms, and showers for females. It does this by adding gender identity (in §106.10) and explaining (in §106.31) that these facilities are *not* exempt from the general ban on sex discrimination. *See* 89 Fed. Reg. at 33,816, 33, 819-21. Discrimination based on gender identity, the rule explains, is allowed

only for the statutory exceptions identified in Title IX itself. *See id.* at 33,816-17, 33,819-21. Bathrooms are not included because they are not grounded in one of Title IX's statutory exceptions. Though the en banc Court held in *Adams* that "bathrooms" *are* grounded in the statutory exception for "living facilities," 57 F.4th at 815-17 (discussing 20 U.S.C. §1686), the Department "does not agree" and "declines to adopt the Eleventh Circuit's reasoning in *Adams*," 89 Fed. Reg. at 33,820-21. But now that *Chevron* is overruled, the Department is not allowed to disagree with this Court's authoritative interpretations of statutes—especially not *Adams*, which was grounded in principles of constitutional avoidance under the Spending Clause. *See* 57 F.4th at 815-17. The district court should have agreed, especially after it solicited supplemental briefs from the parties on this question. *See* D.Ct.Docs.34-35.

   3. <u>Expanded Definition of Harassment</u> (§106.2). The rule requires all schools to ban hostile-environment harassment, defined as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity." 89 Fed. Reg. at 33,884. This definition, all agree, is "broader" than the Supreme Court's authoritative definition in *Davis v. Monroe County Board of Education*. *See* 526 U.S. 629, 652 (1999) (schools violate Title IX if they are "deliberately indifferent" to harassment "so severe, pervasive, and objectively offensive that it denies its victims the equal access to education"). It deletes

11

*Davis*' "deliberate indifference" requirement. *Compare id.* at 33,889, with 526 U.S. at 650-51. It changes *Davis*' "severe *and* pervasive" requirement to a "severe *or* pervasive" requirement. *Compare* 89 Fed. Reg. at 33,884, *with* 526 U.S. at 652. And it lowers *Davis*' "denies" requirement to a "limits" requirement. *Compare* 89 Fed. Reg. at 33,884, *with* 526 U.S. at 652.

Even before *Chevron* was overruled, the Department had no authority to override the Supreme Court's authoritative interpretation of Title IX in *Davis*, since it was crafted to avoid constitutional concerns under the Spending Clause and the First Amendment. *See* 526 U.S. at 648-49, 652-53. Though *Davis* was a case about private lawsuits, not administrative enforcement, there is only one Title IX. The district court's contrary reasoning impermissibly gives the same words of the same statute two different meanings. *See Clark v. Martinez*, 543 U.S. 371, 382 (2005) (statutory text is not "a chameleon" whose "meaning [is] subject to change depending on the presence or absence of constitutional concerns in each individual case").

This Court's binding precedent confirms that the Department has no power to deviate from *Davis*. In *Cartwright*, this Court held that a public university with a virtually identical definition of harassment likely violated the First Amendment. 32 F.4th at 1114-15, 25. That ruling confirms that the Department had no authority to depart from *Davis*. And it independently dooms the rule under the Constitution, as several courts have recognized. *See Arkansas*, 2024 WL 3518588, at *17-18; *Tennessee*, 2024 WL

3019146, at *23; *Texas*, 2024 WL 3405342, at *8-9; *Kansas*, 2024 WL 3273285, at *13-15; *Louisiana*, 2024 WL 2978786, at *12-13.

\* \* \*

Finally, a brief word about the district court's assertion that Plaintiffs "forfeit[ed]" arguments. *E.g.*, D.Ct.Doc.58 at 15. That assertion cannot withstand even a casual glance at Plaintiffs' briefs in the district court, which are more comprehensive than any of the briefs filed in any of these cases. *See* D.Ct.Docs. 7-1, 38. It also won't matter on appeal. Defendants never argued forfeiture below—in their brief or at oral argument—so that argument is itself forfeited. *See, e.g.*, *Solomon v. Vilsack*, 763 F.3d 1, 13 (D.C. Cir. 2014) ("By failing to argue forfeiture or a failure to properly plead the claims before the district court, the Secretary has—in a word—forfeited his forfeiture argument here."). In fact, Defendants' opposition responds to every argument that Plaintiffs raised and acknowledges that they raised it.[4] And regardless, the district court "passed upon" all the relevant issues anyway, meaning they are fully preserved for this Court's review. *United States v. Williams*, 504 U.S. 36, 41 (1992); *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707-08 (D.C. Cir. 2009).

---

[4] *E.g.*, D.Ct.Doc.24 at 17 ("Plaintiffs argue that the Department's interpretation of Title IX [in §106.10] violates the APA because they think it is inconsistent with the statutory text"); *id.* at 24 ("Plaintiffs also challenge the Final Rule's provision in §106.31(a)(2)").

13

## CONCLUSION

To preserve the status quo, this Court should grant an administrative injunction barring Defendants from enforcing the rule in the plaintiff States by July 31, 2024. This Court should also set a briefing schedule for Plaintiffs' forthcoming motion for an injunction pending appeal.

Dated: July 30, 2024

Ashley Moody
  Attorney General
s/ *James H. Percival*
James H. Percival
  Chief of Staff
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for Florida*

Christopher M. Carr
  Attorney General
s/ *Stephen J. Petrany*
Stephen J. Petrany
  Solicitor General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Georgia*

Alan Wilson
  Attorney General
s/ *Joseph D. Spate*
Joseph D. Spate
  Assistant Deputy Solicitor General
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for South Carolina*

Respectfully submitted,

/s/ *Cameron T. Norris*
Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
cam@consovoymccarthy.com
tvaseliou@consovoymccarthy.com
czar@consovoymccarthy.com

*Counsel for Private Plaintiffs*

Steve Marshall
  Attorney General
s/ *Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
  Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Alabama*

**CERTIFICATE OF COMPLIANCE**

This motion complies with Rule 27(d)(2)(A) because it contains 3,456 words, excluding the parts that can be excluded. This motion also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font.

Dated: July 30, 2024          /s/   Cameron T. Norris

**CERTIFICATE OF SERVICE**

I filed this motion with the Court via ECF. I also served via e-mail a copy of this motion on all counsel of record.

Dated: July 30, 2024          /s/   Cameron T. Norris