No. 24-12444-G

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

STATE OF ALABAMA, et al.,
*Plaintiffs-Appellants*,

v.

U.S. SECRETARY OF EDUCATION, et al.
*Defendants-Appellees*,

On Appeal from the United States District Court
for the Northern District of Alabama, No. 7:24-cv-533 (Axon, J.)

## REPLY IN SUPPORT OF PLAINTIFFS-APPELLANTS' <u>EMERGENCY</u> MOTION FOR ADMINISTRATIVE INJUNCTION
## (RELIEF NEEDED BY <u>JULY 31, 2024</u>)

Steve Marshall
  *Attorney General*
Edmund G. LaCour Jr.
  *Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
cam@consovoymccarthy.com

[Additional counsel listed
at end of brief]

*Counsel for Plaintiffs-Appellants*

INTRODUCTION

Time is short: Plaintiffs need administrative relief today because the rule goes into effect tomorrow—the date when, according to now *nine*[*] courts, the States will suffer substantial irreparable harm. So Plaintiffs will make only four brief points. Courts can enter administrative injunctions to stop imminent irreparable harm while they sort out a request for a broader injunction pending appeal. Though this Court doesn't need to prejudge the merits of that broader request, all it needs to know to justify buying more time is that *nine* courts have rejected every argument Defendants make. And this case is not somehow different: The government's newfound interest in the district court's rogue assertions of "delay" and "forfeiture" are disappointing, since it knows it forfeited those arguments, this case doesn't somehow uniquely present them, and those assertions are perhaps the *most* lawless part of the decision below. Finally, this Court should not entertain Defendants' suggestion of a "partial" injunction at this very early stage. It should simply preserve the status quo by briefly enjoining the rule's enforcement in Alabama, Florida, Georgia, and South Carolina.

**1. Administrative Injunction.** Defendants' apparent confusion about administrative injunctions is surprising, since its lawyers seek them all the time. *E.g.*, *United*

---

[*] Just today, another district court enjoined the entire rule in Oklahoma, the plaintiff State there. *Oklahoma v. Cardona*, No. 5:24-cv-461, Doc. 48 (W.D. Okla. July 31, 2024).

*States v. U.S. Sugar Corp.*, Doc. 7-1 at 1-2, 24, No. 22-2806 (3d Cir. Sept. 29, 2022). As DOJ often notes, an administrative injunction gives courts "'breathing space'" to decide the larger forthcoming request for an injunction pending appeal. Br. of U.S. i/s/o 14-day Inj., *U.S. v. Booz Allen*, No. 1:22-cv-1603, Doc. 226-1 at 4 (D. Md. Oct. 14, 2022) (quoting *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1077 (D.C. Cir. 1981)). Though administrative relief is often used to safeguard a court's future jurisdiction, it's also used to "minimize harm while an appellate court deliberates." *United States v. Texas*, 144 S.Ct. 797, 798 (2024) (Barrett, J., concurring). And here, both concerns exist: This Court obviously cannot decide whether Plaintiffs were entitled to a "stay of the Final Rule's effective date" once that date passes. D.Ct.Doc.58 at 1. And letting that effective date arrive would inflict irreparable harm on Plaintiffs, while freezing it over a short briefing window would inflict nothing remotely comparable on Defendants. *See* Mot. (CA11 Doc.6-1) at 9-12.

This relief is *more* appropriate in APA cases like this one, not less. Section 705 of the APA allows a "reviewing court" on "appeal" to "postpone the effective date of" a rule "to prevent irreparable harm," 5 U.S.C. §705—exactly the circumstances here. So even if the government were right that some unexplained distinction between administrative stays and administrative injunctions exists, *cf.* Opp. (CA11 Doc.13) at

7-8, the APA authorizes even *broader* temporary relief than Plaintiffs seek. Courts often "stay" entire agency rules pending appeal. *E.g.*, *West Virginia v. EPA*, 577 U.S. 1126 (2016). So they can certainly enjoin agency officials for a short time from enforcing rules only with respect to the plaintiffs. *E.g.*, *Career Colleges & Sch. of Texas v. Dep't of Educ.*, 98 F.4th 220, 233 (5th Cir. 2024) ("this court granted a temporary administrative injunction limited to [plaintiff] and its members").

**2. The Rule's Track Record.** The government doesn't deny that six (now seven) district courts preliminarily enjoined the whole rule in other States, and two of those injunctions were upheld by the Fifth and Sixth Circuits. *See* Mot.1 & n.1. That track record alone proves that the merits of Plaintiffs' claims are strong enough for temporary relief. Especially because the government just rehashes the same arguments those courts rejected. In each case, the courts held that the rule's redefinition of sex discrimination was unlawful and that this defect justified a temporary injunction of the whole rule. *Compare* Opp.9, *with, e.g.*, *Tennessee*, 2024 WL 3453880, at *2-4. In each case, the courts rejected Defendants' arguments for why the rule imposes no irreparable harm on States, students, and schools. *Compare* Opp.7, *with, e.g.*, *Tennessee v. Cardona*, 2024 WL 3019146, at *41-42 (E.D. Ky. June 17). And in most of the cases, the courts held that the rule's harassment definition creates conflicts with the First

3

Amendment that the agency didn't reasonably consider. *Compare* Opp.9, *with, e.g., Tennessee*, 2024 WL 3019146, at *20-27.

And these other courts weren't even bound by this Court's en banc decision in *Adams*. The district court was, yet it somehow upheld the parts of the rule that say schools cannot make students who assert a different gender identity use the bathroom that corresponds with their sex. *E.g.*, D.Ct.Doc.58 at 42-43, 46-48, 61-63. *Adams* clearly holds—under Title IX, in a case brought by a "transgender boy"—that schools can do precisely that. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 800 (11th Cir. 2022) (en banc). Even the Department, during the rulemaking, conceded that its rule rejects this Court's reasoning in *Adams*. *See* 89 Fed. Reg. at 33,819-21. That the district court somehow upheld this part of the rule, in a case brought in this circuit, is flabbergasting.

**3. This Case Isn't Different**. The notion that there's something about this case that warrants a different outcome from the others is a fiction. *Cf.* Opp.6-10. If there were any doubts, the government filed essentially the same opposition below as it filed in response to those other preliminary-injunction motions. *See* Mot.10. It could because Plaintiffs raised at least the same claims as those other cases (and more claims than most of them). Plaintiffs proved the same compliance and other costs as those

4

other cases and proved them the same way—through unrebutted declarations, including from the state officials in charge of education. Mot.6.

Though it nods to them, the government does not seriously defend the district court's assertions of forfeiture. Those assertions are disconnected from the briefs, inconsistent with the law, and troublingly one-sided. The government never denies that the briefing here was comprehensive, including overlength briefs on both sides plus two supplemental briefs requested by the district court. Mot.11, 13. And the government never denies that *it* was responsible for the lengthened briefing schedule, Mot.7, or that it never argued forfeiture (or delay) below, Mot.13.

The States here, just like the ones in the seven other cases, will suffer immediate, irreparable harm if this Court doesn't intervene today. The government tries to downplay their harms, noting that the district court said they didn't establish them. Opp.5, 7. But the district court admitted that there *would* be irreparable harm if the rule is likely invalid, as nine courts have held. *See* D.Ct.Doc.58 at 119; *Abbot v. Perez*, 585 U.S. 579, 603 n.17 (2018) ("inability to enforce" state laws is "irreparable"). And instead of crediting unrebutted testimony that the compliance costs will be enormous, Mot.6, the district court wrongly asserted that the States didn't say "what the compliance costs will be," D.Ct.Doc.58 at 121, even though the rule itself admits that they will total at least "$4.6 million to $18.8 million," 89 Fed. Reg. at 33,851, 33,861. And,

of course, both the rule itself and Plaintiffs said what those costs are. To name a few:

- "time to review requirements and revise policies and procedures to align with [the rule's] requirements." *Id.* at 33,851; *e.g.*, D.Ct.Doc. 7-2 ¶16; D.Ct.Doc. 7-3 ¶11.
- "time" and money "reading and understanding the regulations; revising policies; publishing notices of nondiscrimination; training Title IX Coordinators; updating training materials;" "conduct[ing] additional training"; and more. 89 Fed. Reg. at 33,851, 33,548; *e.g.*, D.Ct.Doc. 7-2 ¶16; D.Ct.Doc. 7-3 ¶11.
- "an increase in Title IX complaints" the schools must administer, a "10 percent increase in the number of investigations" they must conduct, an "increase" in the "supportive measures" they must provide, and an "increase" in "responsiveness to all reports and complaints of sex discrimination." 89 Fed. Reg. at 33,483, 33,492, 33,850, 33,862, 33,868-69; *e.g.*, D.Ct.Doc. 7-2 ¶17; D.Ct.Doc. 7-3 ¶12.
- "costs associated with litigation." 89 Fed. Reg. at 33,851 (definition of harassment), 33,858 (inclusion of gender identity), 33,876 (enforcement procedures); *e.g.*, D.Ct.Doc. 7-2 ¶18; D.Ct.Doc. 7-3 ¶13.

These estimates are conservative. And regardless whether or when the government *enforces* the rule against the States, these costs of coming into compliance with it are immediate, irreparable, and alone sufficient to justify interim relief. *See Georgia v. President of the U.S.*, 46 F.4th 1283, 1302 (11th Cir. 2022).

**4. Scope of Relief**. This Court should not limit the administrative injunction to "the provisions of the Rule that the plaintiffs actually challenged." Opp.10. This argument makes little sense because Plaintiffs challenged the *whole* rule as arbitrary and capricious, and their harms stem from the *whole* rule. Though some provisions might be lawful if they were passed on their own, the whole injures the States by requiring

6

large expenditures of time and money, *Arkansas v. Dep't of Educ.*, 2024 WL 3518588, at *20 (E.D. Mo. July 24), and the Department's arbitrary-and-capricious reasoning renders the rule "invalid in its entirety," *Tennessee*, 2024 WL 3019146, at *43; *accord Kansas v. Dep't of Educ.*, 2024 WL 3273285, at *18 (D. Kan. July 2) (same).

Hence why, when Defendants made this same argument for "partial" relief to the Sixth and Fifth Circuits, both circuits rejected it. *See Tennessee*, 2024 WL 3453880; *Louisiana*, 2024 WL 3452887. Both circuits explained that, even if only the new definition of sex discrimination in §106.10 were illegal, that defective provision is not severable and thus warrants an injunction against the entire rule. As Chief Judge Sutton put it, that provision is incorporated in every other substantive provision of the rule, and nowhere in the rulemaking did the Department contemplate or do any "cost-benefit analysis" on the rule going forward without that definition. *Tennessee*, 2024 WL 3453880, at *3-4. A partial rollout of the rule shortly before the school year begins, both courts found, would also *increase* the irreparable harm to the States. *Louisiana*, 2024 WL 3452887, at *2; *Tennessee*, 2024 WL 3453880, at *4.

But this Court should not be expected to resolve the proper scope of relief today. An administrative injunction ensures that this Court can resolve that question with more time and fuller briefing later, without imposing the irreparable harms that will befall Plaintiffs if the rule goes into effect in the interim. (Administrative relief

7

also lets this Court rule with the benefit of the Supreme Court's resolution of this question, which could come as early as today. *See* Mot.7 n.2.) Defendants also do not tell this Court what it should do if it buys their argument—which provisions it should administratively enjoin and which ones it shouldn't. That omission should deter this Court from devising partial relief in this "emergency" posture. *Tennessee*, 2024 WL 3453880, at *4; *Louisiana*, 2024 WL 3452887, at *2. But for the record, the district court found that Plaintiffs have standing to challenge (and thus are injured by) every provision they argued was illegal. D.Ct.Doc.58 at 22-28. The specific provisions that Plaintiffs argued were illegal are proposed 34 C.F.R.

- §106.10 (definition of sex discrimination)
- §106.31(a)(2) (de minimis provision)
- §106.2 (definition of harassment)
- §106.2 (definition of complaint)
- §106.44-.46 (rollbacks of procedural protections)
- §106.6(b) (preemption)
- §106.6(e) (FERPA)

This Court should, at a minimum, administratively enjoin those provisions.

## CONCLUSION

To preserve the status quo, this Court should grant an administrative injunction today that bars Defendants from enforcing the rule in the plaintiff States.

| | |
|---|---|
| Dated: July 31, 2024 | Respectfully submitted, |

Steve Marshall
  Attorney General
s/ *Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
  Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Alabama*

Christopher M. Carr
  Attorney General
s/ *Stephen J. Petrany*
Stephen J. Petrany
  Solicitor General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Georgia*

Alan Wilson
  Attorney General
s/ *Joseph D. Spate*
Joseph D. Spate
  Assistant Deputy Solicitor General
1000 Assembly Street
Columbia, SC 29201

/s/ *Cameron T. Norris*
Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
cam@consovoymccarthy.com
tvaseliou@consovoymccarthy.com
czar@consovoymccarthy.com

*Counsel for Private Plaintiffs*

Ashley Moody
  Attorney General
s/ *James H. Percival*
James H. Percival
  Chief of Staff
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for Florida*

9

(803) 734-3371
josephspate@scag.gov

*Counsel for South Carolina*

## CERTIFICATE OF COMPLIANCE

This reply complies with Rule 27(d)(2)(C) because it contains 1,913 words, excluding the parts that can be excluded. This motion also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font.

Dated: July 31, 2024    /s/   Cameron T. Norris

## CERTIFICATE OF SERVICE

I filed this reply with the Court via ECF, which will email a copy of this reply to all counsel of record.

Dated: July 31, 2024    /s/   Cameron T. Norris