# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

STATE OF ALABAMA, et al.,
*Plaintiffs-Appellants,*

v.

U.S. SECRETARY OF EDUCATION, et al.,
*Defendants-Appellees.*

Appeal from the U.S. District Court for the
Northern District of Alabama, No. 7:24-cv-533 (Axon, J.)

## MOTION FOR INJUNCTION PENDING APPEAL

Steve Marshall
 *Attorney General*
Edmund G. LaCour Jr.
 *Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

[Additional counsel listed at end]

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Appellants certify that the following have an interest in the outcome of this appeal:

1. Alabama, State of, *Plaintiff-Appellant*

2. Attorney General's Office of South Carolina

3. Axon, Annemarie Carney, *U.S. District Court Judge*

4. Bachus Brom & Taylor LLC

5. Bernstein, C'Zar, *Attorney for Private Plaintiffs-Appellants*

6. Binnall Law Group

7. Boynton, Brian

8. Brown, Lisa

9. California, State of, *Amicus*

10. Cardona, Miguel, in his official capacity as Secretary of Education, *Defendant-Appellee*

11. Carr, Christopher M., *Attorney for Plaintiff-Appellant Georgia*

12. Consovoy McCarthy PLLC

13. Florida, State of, *Plaintiff-Appellant*

14. Flynn, Shawn M., *Attorney for Amicus Stop Abusive and Violent Environments*

15. Georgia Department of Law

16. Georgia, State of, *Plaintiff-Appellant*

17. Goldfarb, Jon C., *Attorney for Amici States of New Jersey, California, and Pennsylvania*

18. Independent Women's Law Center, *Plaintiff-Appellant*

19. Independent Women's Network, *Plaintiff-Appellant*

20. Kopplin, Rebecca, *Attorney for Defendants-Appellee*

21. Lacour, Jr., Edmund, *Attorney for Plaintiff-Appellant Alabama*

22. Marcus, Stephanie R.

23. Marshall, Steve, *Attorney for Plaintiff-Appellant Alabama*

24. McKasson, Lindsay R., *Attorney for Amicus Stop Abusive and Violent Environments*

25. Miller, Edward A. R., *Attorney for Amicus Stop Abusive and Violent Environments*

26. Moody, Ashley, *Attorney for Plaintiff-Appellant Florida*

27. Myers, Steven A., *Attorney for Defendants-Appellee*

28. New Jersey, State of, *Amicus*

29. Norris, Cameron, *Attorney for Private Plaintiffs-Appellants*

30. North, Benjamin F., *Attorney for Amicus Stop Abusive and Violent Environments*

31. Office of the Attorney General of Alabama

32. Office of the Attorney General of Florida

33. Parents Defending Education, *Plaintiff-Appellant*

34. Patterson, Melissa N., *Attorney for Defendants-Appellee*

35. Pennsylvania, State of, *Amicus*

36. Percival II, James H., *Attorney for Plaintiff-Appellant Florida*

37. Peters, David, *Attorney for Defendants-Appellee*

38. Petrany, Stephen J., *Attorney for Plaintiff-Appellant Georgia*

39. South Carolina, State of, *Plaintiff-Appellant*

40. Spate, Joseph D., *Attorney for Plaintiff-Appellant South Carolina*

41. Speech First, Inc., *Plaintiff-Appellant*

42. Starcher, Jack, *Attorney for Defendants-Appellee*

43. Stop Abusive and Violent Environments, *Amicus*

44. Taylor, Bryan McDaniel, *Attorney for Non-Alabama Plaintiffs-Appellants*

45. The Miller Firm

46. United States Department of Education, *Defendant-Appellee*

47. Vaseliou, Thomas, *Attorney for Private Plaintiffs-Appellants*

48. Whitaker, Henry C., *Attorney for Plaintiff-Appellant Florida*

49. Wiggins Child Pantazis Fisher & Goldfarb

50. Wilson, Alan, *Attorney for Plaintiff-Appellant South Carolina*

Independent Women's Network, Independent Women's Law Center, Parents Defending Education, and Speech First have no parent corporation or corporation that owns 10% or more of their stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal. Per Circuit Rule 26.1-2(c), Appellants certify that the CIP contained in this motion is complete.

Dated: August 2, 2024                         */s/ Cameron T. Norris*
                                              Counsel for Plaintiffs-Appellants

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement .............. C-1 of 4

Introduction ................................................................................................................. 1

Background .................................................................................................................. 2

Argument .................................................................................................................... 6

    I.      Plaintiffs will likely win on appeal. ............................................................ 6

        A.     The rule's importation of gender identity is unlawful. ........................... 7

        B.     The rule's redefinition of sexual harassment is illegal. ....................... 10

        C.     The district court's statements about forfeiture are, if anything, independently reversible ........................................................................ 12

    II.     The remaining factors also favor Plaintiffs. ........................................... 15

    III.    This Court should enjoin the whole rule in the plaintiff States. .................... 18

Conclusion ................................................................................................................ 20

Certificate of Compliance ......................................................................................... 22

Certificate of Service ................................................................................................ 22

# INTRODUCTION

Plaintiffs need an injunction pending appeal because the district court refused to do what every other court has done: preliminarily enjoin the Department's Title IX rule. That sweeping rule is subject to seven preliminary injunctions that freeze the whole rule in 22 States, and the Department's attempts to stay those injunctions have been rejected by two circuits. All these courts agree on three basic things: The rule's new definition of "sex discrimination" illegally reads *Bostock*'s interpretation of Title VII into Title IX. Without that definition, the rest of the rule cannot stand. And unless the rule is stopped from going into effect, it will irreparably harm the States.[1]

This Court is unlikely to affirm the district court's aberration. Plaintiffs thoroughly briefed the rule's flaws, proved irreparable harm with unrebutted evidence, and moved rapidly to get judgment before the rule went into effect on August 1. The only thing unusual about this case is how many issues are resolved by existing circuit precedent. Even the Department concedes that the rule's mandate on bathrooms is "contrary" to this Court's en banc decision in *Adams v. School Board of St. John's County*, 57

---

[1] *Tennessee v. Cardona*, 2024 WL 3453880 (6th Cir. July 17); *Louisiana v. DOE*, 2024 WL 3452887 (5th Cir. July 17); *Oklahoma v. Cardona*, 2024 WL 3609109 (W.D. Okla. July 31); *Arkansas v. DOE*, 2024 WL 3518588 (E.D. Mo. July 24); *Carroll ISD v. DOE*, 2024 WL 3381901 (N.D. Tex. July 11); *Texas v. United States*, 2024 WL 3405342 (N.D. Tex. July 11); *Kansas v. DOE*, 2024 WL 3273285 (D. Kan. July 2); *Tennessee v. Cardona*, 2024 WL 3019146 (E.D. Ky. June 17); *Louisiana v. DOE*, 2024 WL 2978786 (W.D. La. June 13).

F.4th 791 (11th Cir. 2022). 89 FR 33,474, 33,820-21 (Apr. 29, 2024). Yet the district court didn't even enjoin *that* provision.

Before the rule went into effect, it was preliminarily paused in 22 States and administratively paused here. Granting this motion means maintaining that status quo. Denying it means forcing four States to immediately bear all the costs of a rule that nine courts deemed illegal. This Court should enjoin Defendants from enforcing the rule in Alabama, Florida, Georgia, and South Carolina "pending further order of this Court." CA11-Doc.19.

## BACKGROUND

The Title IX rule was published on April 29—"three years" after President Biden took office and two years after its proposal, with "multiple delays" along the way. *Louisiana*, 2024 WL 3452887, at *3; 87 FR 41,390 (July 12, 2022). Though the 423-page rule imposes dozens of new mandates and radically transforms American education, the Department set its effective date for August 1, giving federally funded schools just three months to comply. 89 FR 33,548-49. Three central provisions matter most here.

**Sex Discrimination (§106.10)**. Title IX starts with a general ban on discrimination "on the basis of sex." 20 U.S.C. §1681(a). The rule broadens that ban's "Scope" by creating a new definition of sex discrimination. 34 C.F.R. §106.10. Sex discrimination, it says, necessarily "includes discrimination on the basis of … gender identity." *Id.* The Department's sole justification for this change is the Supreme Court's interpretation of Title VII in *Bostock*. 89 FR 33,802, 33,804-11.

**De Minimis Harm (§106.31(a)(2))**. Title IX's general ban on sex discrimination has always had exceptions—both in the statute, *e.g.*, 20 U.S.C. §1686 (living facilities), and in longstanding regulations, *e.g.*, 34 C.F.R. §106.33 (bathrooms); §106.41 (sports). The rule's de minimis provision "clarif[ies]" how the new definition of sex discrimination in §106.10 applies to those exceptions. 89 FR 33,528. Even within them, it says, schools generally cannot prevent participation "consistent with the person's gender identity." 34 C.F.R. §106.31(a)(2). That kind of strict sex separation is allowed only for the statutory exceptions, the regulations that enforce the statutory exceptions, and sports. *Id.*

Consider some "examples." 89 FR 33,528. No statutory exception covers classes. So under the rule, schools must let males who identify as female attend the sex-ed class for females and wrestle and box females in gym class. 89 FR 33,816; *contra* 34 C.F.R. §106.34(a)(1)-(3). A statutory exception does cover living facilities, 20 U.S.C. §1686, but not rooming arrangements on overnight trips. So under the rule, schools must let males who identify as females share a room with females. And according to the Department, the statutory exception for living facilities does not cover bathrooms and locker rooms; so males who identify as females must be allowed to use the bathroom, undress, and shower with females. 89 FR 33,816; *contra* 34 C.F.R. §106.33. On this point, the Department acknowledges that the rule is "contrary" to *Adams* and "declines to adopt the Eleventh Circuit's reasoning." 89 FR 33,820-21.

**Harassment (§106.2).** In *Davis v. Monroe County Board of Education*, the Supreme Court interpreted Title IX's ban on sex discrimination to cover schools that are "deliberately indifferent" to sexual harassment so "severe, pervasive, and objectively offensive" that it "denies" education. 526 U.S. 629, 650-52 (1999). The Department's current rules adopt this *Davis* standard "verbatim." 85 FR 30,026, 30,036 (May 19, 2020). But the new rule adopts a "broader standard." 89 FR 33,498. Schools now must ban sexual harassment that, "based on the totality of the circumstances," is "so severe *or* pervasive" that it "*limits or* denies" education. 34 C.F.R. §106.2 (emphases added). The rule also deletes *Davis*'s requirement that the school be "deliberately indifferent." 89 FR 33,889 (34 C.F.R. §106.44(f)(1)).[2]

The Department concedes that the rule as a whole, and each of its major provisions, will impose costs on the States. Their schools will spend resources on "reading and understanding the regulations; revising policies; publishing notices of nondiscrimination; training Title IX Coordinators; updating training materials; and other compliance-based costs." 89 FR 33,851. The Department estimates that "inclusion of the additional forms of sex discrimination, including sex-based harassment," will "increase"

---

[2] The rule has other innovations that at least one court has found unlawful, *Texas*, 2024 WL 3405342, at *9-14, though they aren't the focus of this motion. The rule's grievance procedures repeal protections for the accused, like the right to a live hearing with cross-examination and the right to not have a single official investigate, adjudicate, and punish. 34 C.F.R. §§106.45-.46. These changes "have been almost universally condemned, including by the ACLU." R.1 ¶79. The rule also contains certain pregnancy-related provisions. *E.g.*, 34 C.F.R. §106.40(b)(4).

the "number of investigations" schools must conduct by as much as "10 percent." *Id.* at 33,851, 33,858. The Department also "acknowledged" added "costs associated with litigation," since these new provisions could get schools sued. *Id.* Overall, the new rule "increases costs by $14.3 million in the first year" if schools spend just "12 hours" on compliance. *Id.* at 33,851.

Once it came out, the rule was challenged by States, schools, nonprofits, and students across the country. Plaintiffs here are four States and four associations suing on behalf of students. They filed their complaint the same day the rule was published. R.1. After digesting that lengthy rule, assembling 13 declarations, and drafting a 49-page brief, Plaintiffs moved for a preliminary injunction nine days later. R.7–7-14. Plaintiffs then quickly found the Department's lawyers and negotiated a schedule: In emails, the Department asked to file its opposition in June given the "number of issues" and "need for coordination," and Plaintiffs asked for June 5 so the losing party could "seek quick appellate relief." The parties agreed, and the district court approved their joint scheduling motion. R.13. Though neither party requested argument, R.13, the court set a hearing, R.18, which was pushed back five days to accommodate a long-planned family vacation, R.20. All told, Plaintiffs' motion was fully briefed on June 19, R.38, and fully argued on July 1, R.52, giving the district court over a month to decide before the rule became effective on August 1.

But despite seeing eight courts hold that the rule should be preliminarily enjoined, *see* R.50-51; R.53-54; R.57, the district court denied Plaintiffs' motion on July

30—just 36 hours before the effective date, R.58. Plaintiffs immediately appealed. R.60. After the district court quickly denied interim relief, R.64, Plaintiffs asked this Court for an administrative injunction to stop the rule from becoming effective before this motion could be resolved. CA11-Docs.6, 14. Defendants objected, denying that Plaintiffs faced irreparable harm and urging only a partial injunction. CA11-Doc.13 at 14-15. This Court entered a full administrative injunction on July 31. CA11-Doc.19.

## ARGUMENT

Injunctions pending appeal turn on likely success on appeal, irreparable harm, the balance of equities, and public interest. *AAER v. Fearless Fund Mgmt.*, 2023 WL 6520763, at *1 (11th Cir. Sept. 30). The same four factors govern stays pending appeal, *Nken v. Holder*, 556 U.S. 418, 426 (2009), and preliminary injunctions, *Speech First v. Cartwright*, 32 F.4th 1110, 1124 (11th Cir. 2022); so the nine decisions deciding injunctions and stays *against* the Department are highly persuasive. As these courts recognize, all four factors favor relief that preserves the pre-rule status quo.

### I. Plaintiffs will likely win on appeal.

"All three" judges in the Sixth Circuit, and at least seven more across the country, "agree" that the rule's three "central provisions" likely violate the APA. *Tennessee*, 2024 WL 3453880, at *3. This Court will likely reverse the district court's sole outlier decision, notwithstanding (or even because of) that court's bewildering discussion of forfeiture.

**A.      The rule's importation of gender identity is unlawful.**

Through a combination of §106.10 and §106.31(a)(2), the rule bans schools from requiring students to use the bathroom of their sex, rather than their gender identity. Plaintiffs thoroughly explained below why *Adams* forecloses that outcome. R.7-1 at 11, 21-26; R.34 at 3-4; R.38 at 8, 10-11. And the Department conceded that "Plaintiffs … challenge" this aspect of the rule. R.24 at 24. Every other court agrees that §106.31(a)(2) is illegal, and the Department isn't even asking appellate courts for a stay on it, *e.g.*, Stay-Appl.40, *Cardona v. Tennessee*, No. 24A79 (U.S. July 22, 2024). Though the district court deemed both provisions valid, R.58 at 36-55, it was incorrect.

*Adams* holds that "Title IX … permits separating the sexes when it comes to bathrooms," including when that practice "conflict[s] with a transgender person's gender identity." 57 F.4th at 814-15. Creating exceptions for gender identity would impermissibly create "dual protection under Title IX based on *both* sex and gender identity." *Id.* at 814. And if Title IX said otherwise, it would violate the Spending Clause's clear-statement rule. *Id.* at 815-17. *Adams* also stresses the Department's longstanding regulation on bathrooms, explains why that regulation allows strict sex separation, and holds that this regulation is validly rooted in Title IX's statutory exception for living facilities. *See id.* at 811-15. The Department agrees that *Adams* holds this, and that it has no authority to override a statutory exception. 89 FR 33,816-21. Yet the district court refused to admit that even *this* provision of the rule is likely invalid.

More broadly, as every other court has held, the rule's importation of *Bostock* into §106.10 "likely … exceeds the Department's authority." *Tennessee*, 2024 WL 3453880, at *2. Plaintiffs made that point extensively, discussing the differences between Title VII's and Title IX's text, context, history, and constitutional basis, while weaving in *Adams* and the other cases that have rejected the rule. *See* R.7-1 at 21-26, 28-30; R.38 at 9-17; R.50-57. The Department conceded that "Plaintiffs argue" that §106.10 "is inconsistent with the statutory text" because "*Bostock*'s reasoning does not apply to Title IX." R.24 at 17, 19, 24. The district court resolved this question too, R.58 at 37-55, just not persuasively.

The Department's reading of Title IX must be *clearly* right, which it isn't. Unlike Title VII, Title IX was passed under the Spending Clause; so it must incorporate gender identity "unambiguously." *Adams*, 57 F.4th at 815-16. But Title IX does not clearly embrace *Bostock*'s reasoning. *Bostock* itself refuses to "prejudge" whether its analysis governs "other federal … laws that prohibit sex discrimination." 590 U.S. 644, 681 (2020). This Court has favorably cited precedent holding that "the reasoning of *Bostock* 'applies only to Title VII.'" *Eknes-Tucker v. Governor*, 80 F.4th 1205, 1229 (11th Cir. 2023). And "many jurists"—as Chief Judge Sutton explained, citing *Adams*—have rejected *Bostock*'s application to Title IX. *Tennessee*, 2024 WL 3453880, at *2. Add to that number the nine jurists who have rejected it so far in cases involving the rule.

Chief Judge Sutton was right to cite *Adams*. Under that en banc decision, the rule's interpretation of Title IX is at least *likely* invalid. *Adams* holds that Title IX's

longstanding regulatory exceptions for bathrooms and sports let schools separate students by sex, regardless of gender identity. 57 F.4th at 812-17. The Department agrees. *See* 89 FR 33,820-21; R.24 at 20. But *Adams* goes on to say that, if *Bostock*'s analysis applied to Title IX, then those regulatory exceptions would be invalid as applied to transgender students. 57 F.4th at 814 n.7, 816-17. That result is unacceptable because those regulations were enacted shortly after Title IX, were solicited and approved by Congress, and thus "accurately reflect" Title IX's original meaning. *Grove City Coll. v. Bell*, 465 U.S. 555, 568 (1984). And the sports regulation interprets "Title IX's general prohibition against sex discrimination," *Adams*, 57 F.4th at 816-17, the same text that §106.10 purports to define.

 *Adams* says even more. It stresses that Title IX is concerned with "sex discrimination in education," and that "the school is not the workplace." *Id.* at 808, 811. It also highlights the "express statutory … carve-outs" that exist in Title IX but not Title VII. *Adams*, 57 F.4th at 811; *see* 20 U.S.C. §§1681(a)(1)-(9), 1686. Those carveouts—for things like dorms, Greek life, the military, and single-sex schools—reflect Congress's judgment that males and females *are* different and that separating them often *increases* educational opportunities for women. Title IX would fall apart if it accepted *Bostock*'s premise that males and females are "similarly situated" or that sex is "not relevant" across the educational context. *Bostock*, 590 U.S. at 657, 660. And given the Spending Clause's clear-statement rule, *Adams* rejects such attempts to revolutionize Title IX by

importing gender identity as "untenable." 57 F.4th at 816. So even if *Adams*'s holding did not foreclose §106.10 and §106.31(a)(2), its reasoning certainly does.

### B. The rule's redefinition of sexual harassment is illegal.

The rule's redefinition of harassment in §106.2 is likely illegal too. Plaintiffs argued below, as the Department conceded, that the rule's "harassment definition … is inconsistent with the definition in *Davis*." R.24 at 39; *see* R.7-1 at 36-38, 40-41; R.38 at 17-18. Plaintiffs also argued, as the Department also acknowledged, that this definition "conflicts with the First Amendment," as proven by "*Cartwright*." R.24 at 41-43. Plaintiffs explained, with detailed quotes, why the definition that the rule makes schools adopt is no narrower than the definition that *Cartwright* deemed facially unconstitutional. *See* R.7-1 at 38-39, 43-45; R.38 at 18-19. The district court just disagreed. R.58 at 67-84. But it was wrong, per all the other courts to consider §106.2. *Arkansas*, 2024 WL 3518588, at *17-18; *Tennessee*, 2024 WL 3019146, at *23; *Kansas*, 2024 WL 3273285, at *13-15; *Oklahoma*, 2024 WL 3609109, at *7-8.

The Department is right that its harassment definition is "broader" than *Davis*. R.58 at 70; 89 FR 33,498. Among other things, it lowers *Davis*'s "denies" requirement to a "limits" requirement. *Compare* 89 FR 33,884, *with* 526 U.S. at 652. And it changes *Davis*'s "severe and pervasive" requirement to a "severe or pervasive" requirement. *Compare* 89 FR 33,884, *with* 526 U.S. at 652. Worse, the Department reads the "severe

or pervasive" language out entirely, insisting that its definition merely requires the harassment to have "some impact" on the student. 89 FR 33,508, 33,511.

But the Department is wrong that it has the power to contradict the Supreme Court. Even if *Davis* is just a case about private lawsuits for damages, the Court was not interpreting Title IX's (implied) private right of action for damages. The Court was interpreting Title IX's general ban on sex "discrimination." *See* 526 U.S. at 649-50. And its interpretation necessarily assigned that ban a "single" meaning. *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244, 2266 (2024). Even if the Court's concerns were not present when the Department enforces Title IX, rather than private plaintiffs, the same words in Title IX cannot have two meanings. "It is not at all unusual to give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation." *Clark v. Martinez*, 543 U.S. 371, 380 (2005). *Davis*'s "lowest common denominator … must govern." *Id.*

But *Davis*'s narrow definition of harassment was also necessary to avoid First Amendment concerns. In response to the dissent's concerns about "First Amendment rights," 526 U.S. at 682, the majority stressed the "very real limitations" in its definition, *id.* at 652. By requiring severity, pervasiveness, and denial, the *Davis* standard excludes mere "comments" and "name-calling," a "single" isolated "instance," or smaller harms like "a mere 'decline in grades.'" *Id.* at 652-53. In other words, it ensures that harassment policies stay limited to *conduct*, rather than sweeping in speech.

Hence why courts have held that, when public universities adopt harassment policies that go beyond *Davis*, they violate the First Amendment. *E.g.*, *Speech First v. Khator*, 603 F.Supp.3d 480, 482 & n.6 (S.D. Tex. 2022) (granting injunction solely because "the [harassment] policy does not comport with the standard adopted" in *Davis*). This Court evaluated one of those policies in *Cartwright*. That policy's definition of harassment had the same core features as the Department's rule: "severe *or* pervasive," "unreasonably interferes with, *limits*, deprives, or alters," and "totality of the circumstances." 32 F.4th at 1114-15 (emphases added). To the extent they differ, the Department's policy is broader. 89 FR 33,511 (requiring only "some impact"). But their relative breadth is not the key point. The Department concedes that its definition reaches speech, *e.g.*, *id.* at 33,516, 33,493 ("verbal" acts); *id.* at 33,505 ("speech"), including controversial speech like a student repeatedly refusing to use another student's preferred pronouns, *Tennessee*, 2024 WL 3019146, at *23. And under *Cartwright*, discriminatory-harassment policies that reach speech necessarily impose "viewpoint discriminatory" restrictions on that speech. 32 F.4th at 1126. Such policies are facially unconstitutional "*per se*," *id.*, and the Department has no power to adopt or coerce them.

## C. The district court's statements about forfeiture are, if anything, independently reversible.

When the Department opposed the administrative injunction, it suggested that the district court independently denied a preliminary injunction based on "plaintiffs'

'conclusory and underdeveloped' arguments." CA11-Doc.13 at 14. That isn't true. If it were, the district court would have abused its discretion.

Though Plaintiffs were confused and disappointed by the district court's many criticisms, the district court never said those criticisms were a sufficient basis to deny the preliminary injunction. And most of the arguments it flags are arguments that Plaintiffs never tried to make, or arguments that are not relevant to this motion. *See* R.58 at 15-16. Of the arguments that are relevant to this motion, the district court understood, and addressed, each of them. *See* R.58 at 40-45 (*Bostock*), 49-50 (bathrooms), 69 (*Davis* and *Cartwright*). Those "passed upon" issues are all fully preserved on appeal. *United States v. Williams*, 504 U.S. 36, 41 (1992); *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707-08 (D.C. Cir. 2009).

If the district court did deny the preliminary injunction on this independent ground, it would have abused its discretion. The notion that Plaintiffs' briefs were inadequate cannot withstand even a cursory review of those documents, which tackled more issues, made more arguments, and cited more authorities than perhaps any other briefs in these cases. *See* R.7-1; R.38. The district court understood the arguments, *see* R.58 at 13-20, and addressed them in a 122-page opinion. The district court also had the benefit of the six other courts that issued decisions in this case, two of which Plaintiffs briefed and four of which Plaintiffs sent to the court as soon as they issued. *See* R.38; R.50, 53-54, 57 (*Kansas*, *Texas*, *Carroll*, *Arkansas*, Fifth, and Sixth Circuits).

Even the district court's more granular criticisms misapply forfeiture law. It didn't appreciate that forfeiture applies to claims, not arguments in support of claims. *Citizens United v. FEC*, 558 U.S. 310, 330-31 (2010). That the district court did not think Plaintiffs' arguments or cases supported its claims does not mean that Plaintiffs didn't raise them. *Cf., e.g.*, R.58 at 43 (*Adams*), 74-76 (*Cartwright*). The district court also violated party presentation by ignoring that forfeiture is itself forfeitable. *Solomon v. Vilsack*, 763 F.3d 1, 13 (D.C. Cir. 2014); *cf. United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) (violating "the principle of party presentation … is an abuse of discretion" (cleaned up)). And here, the Department not only never mentioned forfeiture—in its brief or at oral argument—but it also *conceded* in its opposition that Plaintiffs had made every claim. *Supra* I.A-B. The district court's application of forfeiture was also, regrettably, one-sided. Applying forfeiture differently to the losing party to shield a questionable opinion from reversal is an abuse—not a use—of discretion. *See Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021).[3]

---

[3] To name a few examples: Plaintiffs were faulted for not *preemptively* raising and defeating severability in their "initial brief," while the Department "clearly raised" the issue in its opposition, R.58 at 30, 36, where it gave the same two-sentence analysis that both the Fifth and Sixth Circuits held was inadequate, *see infra* III. Plaintiffs were also faulted for "avoid[ing]" §106.31(a)(2) because they mostly referred to "the rule" after they first referenced that bulky citation. R.58 at 48. But when the Department failed to make *any argument* for how §106.31(a)(2) could be valid under *Adams*, *see* R.24 at 24-28, the court asked for supplemental briefing on that question, R.27.

## II. The remaining factors also favor Plaintiffs.

If the rule becomes effective, Plaintiffs will suffer at least three irreparable harms: Sovereign harms because the rule conflicts with the States' statutes. *Abbott v. Perez*, 585 U.S. 579, 603 n.17 (2018); *see* R.1 ¶96; R.7-2 ¶14; R.7-4 ¶8; R.7-8 ¶9; R.7-10 ¶10. Constitutional harms because the rule requires schools to adopt harassment policies that chill students' speech. *Cartwright*, 32 F.4th at 1128; *e.g.*, R.7-13 ¶¶13-19; R.7-12 ¶¶12-25; R.7-11 ¶¶9-21. And compliance harms because the rule imposes regulatory burdens on the States' schools, losses that damages can't compensate given the federal government's sovereign immunity. *Georgia v. President*, 46 F.4th 1283, 1302 (11th Cir. 2022); *West Virginia v. DOT*, 59 F.4th 1124, 1149 (11th Cir. 2023). Those harms would be even greater today: Lifting the administrative injunction would *immediately* force schools to come into compliance with the rule, in the *middle* of the school year, in a legal environment with overlapping and now inconsistent injunctions. *See* R.58 at 111-12.

The district court's discussion of irreparable harm is irrelevant. On an injunction pending appeal, this Court must make its "own" equitable judgment. *Trump v. IRAP*, 582 U.S. 571, 580 (2017). And the district court's analysis does not affect Plaintiffs' likelihood of success on appeal. Though that court had "doubts" and "question[s]," R.58 at 111-12, it didn't deny the preliminary injunction for lack of irreparable harm, irrespective of the merits. It assumed that the rule was likely valid. *See* R.58 at 113, 119-22. Because the rule is likely illegal, that analysis can't be affirmed.

The district court was wrong anyway. Plaintiffs did not brief their constitutional harms in a "single sentence." R.58 at 112. They explained why the rule's definition of harassment chills students' speech at length, R.7-1 at 36-46; R.38 at 17-20, before invoking the settled principle that chilled speech is irreparable, R.7-1 at 56; R.38 at 31; *see Cartwright*, 32 F.4th at 1128 (making the same point in a single sentence).

The States' compliance harms were also amply supported and undisputed. Plaintiffs submitted nine declarations from top educational officials in each of the four States, who testified that the rule would cost their schools time and money. *See* R.7-2– R.7-9; R.15. They discussed the time and money needed to, for example, review the rule, conform their policies, approve those policies, train their employees, and litigate. *E.g.*, R.7-2 ¶16. But their testimony wasn't even needed because the Department identifies and concedes these costs in the rule itself. *E.g.*, 89 FR 33,851, 33,548. "Curiously, the district court did not acknowledge the Department's concession." *Rest. L. Ctr. v. DOL*, 66 F.4th 593, 598 (5th Cir. 2023). Though it had "doubts" about Plaintiffs' evidence because it didn't give precise numbers for "what the compliance costs will be," R.58 at 112, 121, acting on those doubts would have been reversible error, *see Rest. L. Ctr.*, 66 F.4th at 600. For compliance costs, "'it is not so much the magnitude but the irreparability that counts.'" *Texas v. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016). And here, the Department never denies the "existence" of Plaintiffs' compliance costs or their inability "to recoup them." *Georgia*, 46 F.4th at 1302. The Department submitted no testimony at all, which is why Plaintiffs could "rest on the written submissions."

R.58 at 8; *see Transcon. Gas Pipe Line v. 6.04 Acres*, 910 F.3d 1130, 1169-70 (11th Cir. 2018).[4]

Nor could these harms be "call[ed] into question" by delay. *Cf.* R.58 at 111. Plaintiffs did not delay in this Court: Though the district court ruled only 36 hours before the effective date, Plaintiffs appealed, filed two emergency motions, and secured an administrative injunction in under 24 hours. Plaintiffs did not delay below either: They took zero days to sue (faster than five of the seven cases where courts *granted* relief). They took nine days to seek a preliminary injunction (faster than six of those cases). R.58 at 110-11. And they negotiated a schedule that had the Department's opposition filed June 5 and Plaintiffs' reply filed June 19 (faster than five of those cases). The Department asked for that schedule, and Plaintiffs' acquiescence was basic professionalism, not sanctionable delay. Hence why the Department never made any "delay" argument below. It couldn't explain how Plaintiffs' compliance costs—which the rule *concedes*—are somehow disproven by a briefing schedule that ends six weeks before the effective date, instead of eight or ten.

Finally, the balance of equities and public interest favor Plaintiffs. The Department's interests are negligible because its (undemocratic) rule likely violates the (democratic) APA. *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021); *Louisiana*, 2024 WL 3452887, at *3. And the Department's "nebulous" harms are "far outweighed" by the

---

[4] Of the seven district courts that enjoined the rule, four held no hearing at all (*Oklahoma*; *Arkansas*; *Texas*; and *Louisiana*).

economic, sovereign, and constitutional harms to States, schools, and students. *Odebrecht Const. v. FDOT*, 715 F.3d 1268, 1289-90 (11th Cir. 2013). Besides, the Department's existing rules (plus state laws and policies banning sex discrimination in schools) will remain in place while the parties appeal. *Louisiana*, 2024 WL 3452887, at \*3. And that appeal can be expedited to further "mitigate any harm." *Tennessee*, 2024 WL 3453880, at \*5.

## III.   This Court should enjoin the whole rule in the plaintiff States.

When crafting its injunction pending appeal, this Court should model the administrative injunction and the relief that two circuits declined to stay. Specifically, the injunction should bar Defendants from enforcing the rule in Alabama, Florida, Georgia, and South Carolina. Because those States are plaintiffs here, that relief would not be universal or nationwide. But it would extend to the whole rule, at least for now.

As the Fifth and Sixth Circuits explained, temporary rulewide relief is appropriate for three main reasons. First, inseverability. The illegal provisions discussed above—§106.10's sex-discrimination definition, §106.31(a)(2)'s de minimis provision, and §106.2's harassment definition—are the rule's "central provisions." *Tennessee*, 2024 WL 3453880, at \*3; *accord Louisiana*, 2024 WL 3452887, at \*1 ("three key provisions at the [rule's] heart"). The rule's severability provisions aren't sufficient; the Department never "contemplate[d] enforcement of the Rule without *any* of the core provisions." *Tennessee*, 2024 WL 3453880, at \*4. The definition of sex discrimination alone "touch[es] every

substantive provision," and the rule's "cost-benefit analyses" never "contemplated the idea of" the rule's other provisions "go[ing] into effect with a *different* definition of sex discrimination." *Id.* at *3-4. Second, the equities. Partial relief would make it impossible for schools to "comply" with the rule or "train" their employees, and it would "escalate" or even "double" their costs. *Id.* at *4; *Louisiana*, 2024 WL 3452887, at *2. Third, the nature of temporary relief. The goal here is to "maintain the status quo," not to craft a final injunction, and only rulewide relief does that. *Id.* Specific questions about the scope of relief can be addressed later, outside of this "emergency" posture. *Tennessee*, 2024 WL 3453880, at *4.

The district court's discussion of severability, R.58 at 29-36, is a distraction. This Court must use its "own" judgment when crafting *its* injunction pending appeal. *Trump*, 582 U.S. at 580. And the district court's analysis of severability does not affect Plaintiffs' likely success on appeal. If the rule is illegal but severable, that's still a win for Plaintiffs; this Court would *reverse* the district court and order it to preliminarily enjoin the illegal provisions. And the central provisions of the rule are not severable, for all the reasons that the Sixth and Fifth Circuits gave.

Nor did Plaintiffs do anything wrong by responding to the government's severability argument in their reply, instead of preemptively raising and refuting severability in their "initial brief." R.58 at 30. Plaintiffs did not "challenge only parts" of the rule. R.58 at 30. Like the other States, they "sought to overturn the entire Rule." *Louisiana*, 2024 WL 3452887, at *1; *e.g.*, R.7-1 at 48 ("whole rule"); R.7-1 at 46 ("entire rule"); R.38

at 15 ("entire rule"). Their initial brief showed that they were entitled to that relief by explaining why the rule's central provisions are invalid, R.7-1 at 20-27, 36-39, 46-55; why the agency's reasoning made the whole rule arbitrary and capricious, R.7-1 at 28-35, 40-46, 46-55; and why the appropriate remedy would be rule-wide relief, R.7-1 at 57-59. The forfeiture rules "'do not require a litigant to anticipatorily rebut all potential arguments his adversary may raise.'" *Zurich Am. Ins. v. Arch Ins.*, 20 F.4th 250, 257 n.3 (5th Cir. 2021). Tellingly, *none* of the plaintiffs in the cases where courts enjoined the rule mentioned severability in their opening briefs.

In fact, both the Fifth and Sixth Circuits faulted *the government* for forfeiting severability by giving the argument only "two conclusory sentences" at the end of its district-court brief. *Louisiana*, 2024 WL 3452887, at *1; *accord Tennessee*, 2024 WL 3453880, at *4. In other words, it carried the burden on this issue in the district court. *See Awad v. Ziriax*, 670 F.3d 1111, 1132 n.16 (10th Cir. 2012) (government "'waived'" the "issue of severability" because "argument consisted of one sentence"). Because the government submitted those same two sentences here, R.24 at 69, it's the only party with a forfeiture problem.

## CONCLUSION

This Court should enjoin Defendants, pending further order of the Court, from enforcing the rule in the plaintiff States.

Dated: August 2, 2024

Steve Marshall
  Attorney General
s/  Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
  Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Alabama*

Ashley Moody
  Attorney General
s/ Henry C. Whitaker
Henry C. Whitaker
  Solicitor General
James H. Percival
  Chief of Staff
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
henry.whitaker@ myfloridalegal.com


*Counsel for Florida*

Respectfully submitted,

/s/ Cameron T. Norris
Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
cam@consovoymccarthy.com
tvaseliou@consovoymccarthy.com
czar@consovoymccarthy.com

*Counsel for Private Plaintiffs*

Christopher M. Carr
  Attorney General
s/ Stephen J. Petrany
Stephen J. Petrany
  Solicitor General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Georgia*

Alan Wilson
  Attorney General
s/ Joseph D. Spate
Joseph D. Spate
  Assistant Deputy Solicitor General
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for South Carolina*

## CERTIFICATE OF COMPLIANCE

This motion complies with Rule 27 because it contains 5,195 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: August 2, 2024                                        */s/ Cameron T. Norris*

## CERTIFICATE OF SERVICE

I e-filed this brief, which will email everyone requiring notice.

Dated: August 2, 2024                                        */s/ Cameron T. Norris*