# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————

STATE OF ALABAMA, et al.,

Plaintiffs-Appellants,

v.

U.S. SECRETARY OF EDUCATION, et al.,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Northern District of Alabama

———————————

## OPPOSITION TO MOTION
## FOR INJUNCTION PENDING APPEAL

———————————

*Of Counsel:*

LISA BROWN
  *General Counsel*
  *U.S. Department of Education*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

MELISSA N. PATTERSON
JACK STARCHER
STEVEN A. MYERS
DAVID L. PETERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1673*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendants-Appellees

certify that the following have an interest in the outcome of this appeal:

Alabama, State of

Alaska, State of

Arkansas, State of

Attorney General's Office of South Carolina

Axon, Annemarie Carney

Bachus Brom & Taylor LLC

Bailey, Andrew

Binnall Law Group

Binnall, Jesse

Bird, Brenna

Boynton, Brian

Brown, Lisa

California, State of

Cardona, Miguel

Consovoy McCarthy PLLC

Coleman, Russell

Citizens Defending Freedom

Drummond, Gentner F.

Florida, State of

Flynn, Shawn M.

Fitch, Lynn

Formella, John M.

Georgia Department of Law

Georgia, State of

Griffin, Tim

Goldfarb, Jon C.

Hilgers, Michael T.

Hill, Bridget

Idaho, State of

Independent Women's Law Center

Independent Women's Network

Indiana, State of

Iowa, State of

Jackley, Marty J.

Kansas, State of

Kentucky, Commonwealth of

Knudsen, Austin

Kobach, Kris W.

Kopplin, Rebecca

Labrador, Raul R.

LaCour, Jr., Edmund Gerard

Louisiana, State of

Marshall, Steve

Matheny, Justin L.

McKasson, Lindsay R.

Miller, Edward A. R.

Mississippi, State of

Missouri, State of

Miyares, Jason S.

Montana, State of

Morrisey, Patrick

Murrill, Liz

Myers, Steven A.

Nebraska, State of

New Hampshire, State of

New Jersey, State of

Norris, Cameron Thomas

North, Benjamin F.

North Dakota, State of

Office of the Attorney General of Alabama

Office of the Attorney General of Florida

Ohio, State of

Oklahoma, State of

Parents Defending Education

Patterson, Melissa N.

Paxton, Ken

Pennsylvania, State of

Percival II, James H.

Peters, David L.

Petrany, Stephen J.

Reyes, Sean D.

Rokita, Theodore E.

South Carolina, State of

Spate, Joseph D.

Speech First, Inc.

Skrmetti, Jonathan

South Dakota, State of

Starcher, Jack

Stewart, Scott G.

Stop Abusive and Violent Environments

Taylor, Bryan McDaniel

Taylor, Treg

Tennessee, State of

Texas, State of

The Miller Firm

U.S. Department of Education

Utah, State of

Vaseliou, Thomas S.

Virginia, Commonwealth of

West Virginia, State of

Wiggins Child Pantazis Fisher & Goldfarb

Wrigley, Drew H.

Wyoming, State of

Yost, Dave

**TABLE OF CONTENTS**

**Page**

INNTRODUCTION AND SUMMARY ....................................................................... 1

STATEMENT ........................................................................................................... 3

      A.     Title IX and the Final Rule.......................................................... 3

      B.     Prior Proceedings ........................................................................ 5

ARGUMENT ............................................................................................................ 8

I.     Plaintiffs did not establish a likelihood of success on the merits of their claims. ....................................................................................................... 8

      A.     *Section 106.10.* ........................................................................... 9

      B.     *Section 106.31(a)(2)*................................................................... 12

      C.     *Section 106.2.* ............................................................................ 15

II.    Plaintiffs fail to establish irreparable harm. .......................................... 18

III.   The equities weigh against an injunction. ............................................. 20

IV.   At a minimum, any injunction should be narrowly tailored. .............. 21

CONCLUSION ...................................................................................................... 23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# INTRODUCTION AND SUMMARY

Title IX prohibits sex discrimination in federally funded education programs and activities. "Congress gave the statute a broad reach" to cover a "wide range of intentional unequal treatment." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). Congress also authorized the Department of Education to issue rules to effectuate the statute's prohibition on sex discrimination.

In April 2024, the Department issued a rule making various amendments to its Title IX regulations. *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (Rule). Those amendments do many things, ranging from revising recordkeeping requirements to guaranteeing access to lactation spaces for breastfeeding students. Plaintiffs did not challenge most of those changes below.

Before this Court, plaintiffs' request for an injunction pending appeal challenges only three discrete Rule provisions and, even then, only their application to particular factual contexts involving transgender individuals. Mot. for Inj. Pending Appeal 2-4 (Aug. 2, 2024) (Mot.). First, plaintiffs challenge § 106.10, which recognizes that gender-identity discrimination is necessarily a form of sex discrimination. Second, they challenge § 106.31(a)(2), which provides that, unless permitted by Congress, schools may not differentiate on the basis of sex in a way that causes a person more than de minimis harm; as relevant here, it means that individuals must be permitted to use restrooms consistent with their gender identity because

preventing access consistent with gender identity causes such harm. Finally, plaintiffs challenge § 106.2's definition of hostile-environment harassment, which recognizes that individuals are subjected to such harassment when they experience unwelcome sex-based conduct that is "subjectively and objectively offensive" and "so severe or pervasive that it limits or denies" their ability to participate in an educational program.

In a comprehensive, 122-page opinion denying preliminary relief, the district court repeatedly faulted plaintiffs for their "conclusory and underdeveloped" legal arguments. Dkt. No. 58, at 8 (Op.). Nothing in plaintiffs' submissions to this Court cures that fundamental defect or demonstrates that the district court abused its discretion in declining to enter a preliminary injunction—an equitable remedy never awarded as of right. Nor does the fact that *other* courts have enjoined the Rule based on *other* plaintiffs' showings excuse these plaintiffs' failure—both here and below—to carry their burden of developing the evidence and presenting the legal argument that the district court needed to evaluate their request for injunctive relief. And plaintiffs still have not shown that they will suffer irreparable harm during the pendency of this appeal absent injunctive relief. The Court should therefore deny plaintiffs' motion. And at an absolute minimum, any injunction should be far more limited than plaintiffs propose.

**STATEMENT**

**A.      Title IX and the Final Rule**

Title IX provides that "[n]o person in the United States shall, on the basis of

sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial

assistance." 20 U.S.C. § 1681(a). "Congress gave the statute['s]" prohibition on sex

discrimination "a broad reach," *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175

(2005), and authorized the Department to "issu[e] rules, regulations, or orders of

general applicability … consistent with achievement of the objectives of the statute,"

20 U.S.C. § 1682.

The Department exercised that authority in promulgating the Rule, which

makes a variety of changes to the current Title IX regulations. 89 Fed. Reg. at 33,882-

96. Among other things, the Rule streamlines administrative requirements related to

Title IX coordinators, 34 C.F.R. § 106.8(a); revises recipients' notice of

nondiscrimination and record-keeping requirements, *id.* § 106.8(c), (f); ensures access

to lactation spaces for breastfeeding students, *id.* § 106.40(b)(3)(v); and clarifies

recipients' obligations with respect to retaliation, *id.* §§ 106.2, 106.71.[1]

In this litigation, plaintiffs challenge other provisions of the Rule. Section

106.10 describes the scope of prohibited sex discrimination under Title IX. It

---

[1] Unless otherwise noted, citations are to the regulations as amended by the
challenged Rule, which appear at 89 Fed. Reg. 33,882-96.

provides that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity," 89 Fed. Reg. at 33,886, "because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female,'" *id.* at 33,802 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 655 (2020)).

Separately, § 106.31(a)(2) details when separation or differentiation on the basis of sex constitutes prohibited discrimination, explaining that Title IX permits "different treatment or separation on the basis of sex" only insofar as such differential treatment or separation does not "subject[] a person to more than de minimis harm." 89 Fed. Reg. at 33,887. Section 106.31(a)(2) further explains that "prevent[ing] a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex." *Id.* The Rule recognizes, however, that Congress specified certain contexts in which a school may permissibly differentiate on the basis of sex, even though cognizable harm may result. *See id.* at 33,886; *see, e.g.*, 20 U.S.C. § 1681(a)(6) (fraternity or sorority membership); *id.* § 1686 (sex-separate living facilities).[2]

---

[2] The Rule does not alter the existing athletics regulation addressing sex-separate teams, *see* 34 C.F.R. § 106.41(b), which is the subject of a separate rulemaking. *See* 89 Fed. Reg. at 33,817.

And § 106.2 defines (among many other terms) "[h]ostile environment harassment" as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (*i.e.*, creates a hostile environment)." 89 Fed. Reg. at 33,884.

## B.     Prior Proceedings

Plaintiffs are Alabama, Florida, Georgia, and South Carolina, as well as four membership organizations. Plaintiffs challenge the Rule's treatment of gender identity in contexts such as restrooms and pronouns, as well as a few provisions governing grievance procedures. *See* Dkt. No. 7-1, at 1-2 (PI Mot.) (complaining about the Rule's effect on "preferred pronouns" and "women's bathrooms, locker rooms, and showers" (quotation omitted)); *id.* at 37-46 (addressing grievance procedures). Plaintiffs sought preliminary injunctive relief.

On July 30, the district court denied plaintiffs' motion, repeatedly explaining that plaintiffs' legal arguments were "conclusory and under developed." Op. 8; *accord, e.g.*, *id.* at 14 (plaintiffs' obfuscation "serves no appropriate purpose and intentionally burdens the court"); *id.* at 15 (declining to "concoct arguments where Plaintiffs have fallen short"); *id.* at 39 (plaintiffs "do not trouble themselves with presenting an argument"); *id.* at 63 (plaintiffs' argument "presented only in legal conclusions"); *id.* at 85 (plaintiffs "have not adequately raised" arguments); *id.* at 105 (highlighting

plaintiffs' "failure to address" numerous key points); *id.* at 115 (declining to "make Plaintiffs' argument … for them").

The court nevertheless addressed plaintiffs' challenges and found them unlikely to succeed. Addressing § 106.10, the court agreed with plaintiffs that "[t]he word 'sex' as used in Title IX is unambiguous and refers only to biological sex." Op. 37. It explained, however, that plaintiffs "do not trouble themselves with presenting an argument on how § 106.10 redefines the word 'sex.'" *Id.* at 39. Rejecting plaintiffs' contention that § 106.10 was inconsistent with *Adams ex rel. Kasper v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc), the district court stated that "the issue presented in *Adams* was whether the word 'sex' included 'gender identity,' not whether sex discrimination includes discrimination based on sexual orientation or transgender status." *Id.* at 44.

With respect to § 106.31(a)(2), the district court found that "Plaintiffs do not explain their position" that it is contrary to law. Op. 50. The court also rejected the contention that the provision is arbitrary and capricious, explaining that plaintiffs' arguments were "not that the Department exceeded the zone of reasonableness, but rather, that [p]laintiffs disagree as a policy matter." *Id.* at 64. The court further explained that the Rule adequately accounted for issues related to privacy, safety, compliance, and parental rights. *Id.* at 64-67.

As to § 106.2's hostile-environment standard, the court explained that the Department was not bound by *Davis ex rel. LaShonda D. v. Monroe County Board of*

*Education*, 526 U.S. 629 (1999), which "did not address the harassment standard Title

IX imposes on school administrators to maintain their Title IX funding." Op. 70.

And it held that § 106.2 likely did not violate the First Amendment, explaining that

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1124 (11th Cir. 2022), did not counsel

otherwise. *Id.* at 74-76.[3]

The district court further held that plaintiffs failed to establish irreparable harm.

It found that in light of the statutory scheme, "denial of funding is not imminent."

Op. 111. Plaintiffs could not rely on constitutional injuries, as they "do not clearly

argue, much less show, a substantial likelihood of success on the merits" of any

constitutional claim. *Id.* at 113. While the states complained about the Rule's

preemptive effect, most failed to identify, with specificity, statutes that actually

conflict with the Rule. *Id.* at 114-19. And as to the limited provisions that do conflict,

plaintiffs were unlikely to "succe[ed] on the merits of their argument that the relevant

parts of the Final Rule are unlawful." *Id.* at 119. Finally, plaintiffs could not rely on

asserted compliance costs, as they "offer no evidence of what the compliance costs

will be." *Id.* at 121.

Although the district court determined that no relief was warranted, it still

addressed severability. Op. 29-36. It recognized that plaintiffs sought an injunction

as to "the entirety of the Final Rule, even though they challenge only parts of it." *Id.*

---

[3] The court also rejected plaintiffs' arguments concerning grievance procedures, Op. 94-109, but plaintiffs raise no objection to that ruling here, *see* Mot. 4 n.2.

at 30. But even though "Plaintiffs bear the burden of establishing their entitlement to this extraordinary relief," they "did not even attempt to shoulder this burden in their initial brief." *Id.* at 30-31. Although the district court ultimately did not enter relief, it "assume[d] that the regulations in the Final Rule are severable." *Id.* at 36 (citing severability provisions).

Plaintiffs appealed and sought an injunction pending appeal or an administrative injunction. Dkt. Nos. 60, 63. The district court denied the motion, finding that plaintiffs' arguments "merely repeat their arguments in their motion for a preliminary injunction." Dkt. No. 64, at 5. Plaintiffs thereafter sought and obtained an administrative injunction from this Court. Order (July 31, 2024).

## ARGUMENT

In determining whether to grant an injunction pending appeal, this Court considers (1) the likelihood of success on appeal; (2) whether the applicant will suffer irreparable injury absent an injunction; (3) the balance of hardships to other parties; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000). Each factor weighs against an injunction pending appeal.

## I. Plaintiffs did not establish a likelihood of success on the merits of their claims.

In seeking equitable relief pending appeal, plaintiffs challenge only certain provisions of the Rule as applied to gender-identity discrimination—the scope of

prohibited discrimination in § 106.10; the de minimis harm standard in § 106.31(a)(2); and the hostile-environment standard in § 106.2. The district court correctly concluded that plaintiffs were unlikely to prevail on their challenges to any of those provisions.

## A.    *Section 106.10.*

The district court correctly held that plaintiffs' arguments challenging § 106.10 were either conclusory and unsubstantiated or wrong. Section 106.10 describes the scope of Title IX's prohibition against sex discrimination, explaining that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity," 89 Fed. Reg. at 33,886, "because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female,'" *id.* at 33,802 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 655 (2020)).

That provision follows directly from the statute's plain text and reflects a straightforward application of *Bostock*'s reasoning. There, the Court confronted Title VII's provision making it unlawful "for an employer … to discriminate against any individual … because of such individual's … sex." 590 U.S. at 655 (quoting 42 U.S.C. § 2000e-2(a)(1)). The Court explained that Title VII's "because of" language "incorporates the 'simple' and 'traditional' standard of but-for causation." *Id.* at 656-57 (quotation omitted). And "sex is necessarily a but-for cause" of discrimination on

the basis of sexual orientation or gender identity "because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* at 660, 661 (emphasis omitted).

*Bostock*'s reasoning applies with equal force to Title IX's prohibition on discrimination "on the basis of sex." 20 U.S.C. § 1681. Title IX imposes a causation standard no more stringent than but-for causation under Title VII. And as *Bostock* made clear, "sex is necessarily a but-for cause" of discrimination on the basis of sexual orientation and gender identity. 590 U.S. at 661 (emphasis omitted). A school, no less than an employer, engages in sex discrimination when it "penalizes a person … for traits or actions that it tolerates" in persons identified as a different sex "at birth." *Id.* at 660. None of plaintiffs' arguments calls that conclusion into question. Plaintiffs assert that § 106.10 somehow redefines sex, but the district court was well within its discretion to disregard plaintiffs' conclusory, unexplained argument. Op. 39-40. In any event, as *Bostock* made clear, gender-identity discrimination is necessarily *also* sex discrimination, even accepting that "sex" refers to "biological distinctions between male and female." 590 U.S. at 655.

Title IX's statutory exceptions do not suggest a different understanding of sex discrimination. *See* Mot. 8-9. Title VII also contains statutory exceptions, *see* 42 U.S.C. § 2000e-2(e) (bona fide qualifications), and has long been understood to allow certain forms of sex separation like "sex-segregated bathrooms, locker rooms, and

dress codes," yet *Bostock* nonetheless held that gender-identity discrimination is necessarily a form of sex discrimination. 590 U.S. at 681. As the district court correctly observed, this Court's decisions in *Adams ex. rel. Kasper v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc), and *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205(11th Cir. 2023), do not preclude § 106.10's reliance on *Bostock*. Op. 42-45. The *Adams* majority acknowledged that "*Bostock* held that discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex," but stated that conclusion "is not in question in this appeal." 57 F.4th at 808-09 (quotation omitted). *Eknes-Tucker* is similarly inapposite. That case concerned the meaning of the Equal Protection Clause, not Title IX. Op. 44-45; *see Eknes-Tucker*, 80 F.4th at 1228-29 (distinguishing *Bostock* by observing that "[t]he Equal Protection Clause contains none of the text that the Court interpreted" there). And nothing in *Eknes-Tucker* otherwise suggests that *Bostock*'s reasoning is limited to Title VII.

Finally, plaintiffs are wrong that § 106.10 is somehow suspect under the Spending Clause. Mot. 8. As already explained, discrimination on the basis of gender identity is necessarily a form of sex discrimination covered by Title IX's unambiguous text even on the understanding that the statute refers to biological differences between men and women. And Title IX places recipients of federal funds clearly on notice that they must comply with the prohibition on any form of sex-based discrimination.

**B.**  *Section 106.31(a)(2).*

Section 106.31(a)(2) sets out the circumstances in which drawing sex-based distinctions constitutes prohibited discrimination. Title IX does not preclude all sex-based distinctions; rather, the statutory bar on "discrimination" prohibits only those distinctions that cause cognizable—*i.e.*, more than de minimis—harm. 89 Fed. Reg. at 33,815. At the same time, Congress recognized certain contexts, such as fraternity membership and living facilities, in which recipients may draw sex-based distinctions even when doing so causes cognizable harm. *Id.* at 33,816 (citing examples). Section 106.31(a)(2) effectuates Congress's choice by requiring that "recipient[s] must not provide sex-separate facilities or activities in a manner that subjects any person to legally cognizable injury … unless there is a statutory basis for allowing otherwise." *Id.* at 33,814.

Section 106.31(a)(2) also explains that preventing individuals from participating in education programs consistent with their gender identity subjects a person to cognizable harm. *See* 89 Fed. Reg. at 33,887. Accordingly, absent a recognized exception, recipients must permit individuals to participate in sex-separate programs or access sex-separate facilities that align with their gender identity. Applied to restrooms, the Rule explains that providing comparable sex-separate facilities generally does not violate Title IX because a cisgender male suffers no sex-based harm from being excluded from a comparable women's restroom, and vice versa. *Id.* at 89,818; *see also* 34 C.F.R. § 106.33. But as various courts have found, it violates

12

Title IX to bar transgender individuals from accessing restrooms that align with their gender identity because doing so *does* cause cognizable harm and because restrooms are not excepted from the statute's general nondiscrimination mandate. *See, e.g., A.C. ex rel. M.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023). Section 106.31(a)(2) thus effectuates Title IX's text by reflecting Congress's choice to exempt certain contexts from the statute's nondiscrimination mandate, without including any such exception for sex-separate restrooms.

Plaintiffs do not dispute that Title IX's nondiscrimination mandate generally prohibits sex distinctions that cause more than de minimis harm. Nor do they dispute that preventing individuals from accessing sex-separate restrooms consistent with their gender identity inflicts discriminatory harm. Instead, plaintiffs argue that § 106.31(a)(2) conflicts with this Court's decision in *Adams*, and that the district court thus erred in assessing the merits of their claims. Mot. 7-9. But plaintiffs never asserted below that § 106.31(a)(2) is contrary to law. Indeed, while plaintiffs insist that they "thoroughly explained below why *Adams* forecloses" § 106.31(a)(2)'s application to sex-separate restrooms, Mot. 7, that is not so: plaintiffs "avoid[ed] § 106.31(a)(2) throughout their brief, citing to it only once in their background section and providing explicit argument about it only in [their] argument that the treatment of

bathrooms is arbitrary or capricious." Op. 48.[4] The district court did not abuse its discretion in failing to afford plaintiffs injunctive relief based on an argument they did not make.

In any event, *Adams*—decided prior to the Rule's issuance—does not foreclose § 106.31(a)(2) generally, or its application to sex-separate restrooms specifically. In *Adams*, this Court recognized that 20 U.S.C. § 1686 "provides an express carve-out" to the statute's general nondiscrimination mandate "with respect to living facilities" and assumed that Title IX's regulations permitting sex-separate restrooms "implement[ed]" that statutory carve-out. *Adams*, 57 F.4th at 811 (citing 34 C.F.R. § 106.33); *see id.* at 814. The Court thus concluded that a policy preventing transgender students from accessing sex-separate restrooms that aligned with their gender identity "fit[] squarely within the carve-out" provided by § 1686 and, by extension, § 106.33. *Id.* at 811. But as the Department subsequently explained, it has never interpreted § 1686's carve-out to extend beyond living facilities "to any other aspects of a recipient's education program or activity… such as bathrooms, locker rooms, or shower facilities." 89 Fed. Reg. at 33,821. The Department's regulation regarding restrooms was promulgated under the statute's general nondiscrimination

---

[4] Plaintiffs argued only that § 106.31(a)(2) is arbitrary and capricious for, in their view, failing to address concerns related to privacy, compliance, and parental rights. But plaintiffs do not press that argument here, and for good reason: as the court below recognized, Op. 61-67, the Rule thoroughly addressed those concerns. 89 Fed. Reg. at 33,819-22.

mandate, 20 U.S.C. § 1681, not the living-facilities provision in § 1686. 89 Fed. Reg. at 33,821. Thus, *Adams'* assumptions regarding "the implementing regulations at th[e] time," Op. 42, do not control here. As § 106.31(a)(2) makes clear, there is no statutory exception that authorizes sex-separate restrooms; accordingly, an individual can be prevented from accessing such restrooms only if it does not cause more than de minimis harm. And again, plaintiffs never argued below that restrooms are "living facilities" under § 1686 or otherwise suggested that § 106.31(a)(2) is contrary to law.

C. *Section 106.2.*

Section 106.2 defines hostile-environment harassment as "[u]nwelcome" and "offensive" sex-based conduct "so severe or pervasive that it limits or denies a person's ability to participate" in a recipient's education program. 89 Fed. Reg. at 33,884. The Rule makes a handful of changes to the 2020 definition, which required unwelcome conduct to be "severe, pervasive, *and* objectively offensive" and applied only to conduct that "effectively denie[d] a person" access to an education program. 34 C.F.R. § 106.30(a) (2020) (emphasis added).

The standard announced in § 106.2 is hardly novel, however. It closely tracks the Department's "longstanding interpretation of Title IX" and accompanying "enforcement practice" before the 2020 amendments, as well as the standard applied under "numerous civil rights laws, including Title VII." 89 Fed. Reg. at 33,508; *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Plaintiffs nonetheless argue that § 106.2's changes to the 2020 definition—which was modeled on the standard for

private damages actions announced in *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999)—renders the Rule inconsistent with the First Amendment. The district court correctly rejected those arguments. Op. 67-85.

Plaintiffs' reliance on *Davis* is misplaced. In *Davis*, the Court addressed the standard for a private damages claim premised on hostile-environment harassment brought under Title IX's implied right of action. 526 U.S. at 650. Nothing in *Davis* suggested that such a standard controls in the distinct administrative enforcement context. To the contrary, the Court recognized that the standards would differ, explaining that "we are asked to do more than define the scope of the behavior that Title IX proscribes" in determining what conduct "support[s] a private suit for money damages." *Id.* at 639. The Court framed its inquiry as "the proper definition of 'discrimination' *in the context of a private damages action*." *Id.* at 649 (emphasis added). Indeed, the Court repeatedly cited the Department's then-applicable standard, *id.* at 647-48, 651, which—like § 106.2—defined prohibited sex-based harassment to include "severe, persistent, or pervasive" conduct, 62 Fed. Reg. 12,034, 12,034 (Mar. 13, 1997).

Plaintiffs are also wrong that § 106.2's departure from *Davis* raises First Amendment concerns. As the district court explained, "*Davis* did not adopt the standard for sex-based harassment to avoid constitutional concerns," Op. 72; rather, the standard reflects appropriate limits on Title IX's implied cause of action, *Davis*, 526 U.S. at 639. Plaintiffs, moreover, cite no authority suggesting that the pre-2020

16

standard applied by the Department in enforcement actions, which was broader than *Davis*, contravened the First Amendment. Also, courts—including this one—have applied an analogous standard in the Title VII context for years "without raising any First Amendment concerns." 89 Fed. Reg. at 33,506; *see Harris*, 510 U.S. at 21 (applying a severe "or" pervasive standard to harassing speech, despite parties raising First Amendment objections); *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1335 (11th Cir. 2023) (per curiam) (applying severe "or" pervasive standard); *Rowles v. Curators of the Univ. of Mo.*, 983 F.3d 345, 352, 355 (8th Cir. 2020) (rejecting challenge to standard nearly identical to § 106.2). That makes sense: the government can ensure that classrooms, like workplaces, are free from sex-based "intimidation, ridicule, and insult" without governing every "utterance," *Harris*, 510 U.S. at 21 (quotation omitted), and while safeguarding the right of individuals to engage in protected speech.

Plaintiffs also vastly overread this Court's decision in *Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022), which nowhere suggested that harassment "policies that reach speech necessarily" are unconstitutional, Mot. 12. Instead, this Court held invalid a "staggeringly broad" and non-exhaustive harassment policy that, among other things, extended to conduct based on "a long list of characteristics," including "political affiliation"; covered a wide array of conduct, including any "that may be humiliating"; and "reache[d] not only a student's own speech, but also her conduct 'encouraging,' 'condoning,' or 'failing to intervene' to stop another student's

speech." *Speech First*, 32 F.4th at 1115, 1125 (citation omitted). Section 106.2 has none of those features. It defines prohibited harassment in terms of "specific and required elements," 89 Fed. Reg. at 33,506, "using language with common usage and understanding" in the antidiscrimination context, *Rowles*, 983 F.3d at 358. Section 106.2 thus raises none of the overbreadth concerns at issue in *Speech First*.[5]

## II. Plaintiffs fail to establish irreparable harm.

After devoting a scant two paragraphs to the topic in their preliminary injunction motion, *see* PI Mot. 46-47, plaintiffs have still made no showing that they face irreparable harm absent injunctive relief. They are therefore (1) unlikely to succeed on appeal, as "[a] showing of irreparable harm is the *sine qua non* of injunctive relief," *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quotation omitted); and (2) separately ineligible for an injunction pending appeal, *e.g.*, *Touchston*, 234 F.3d at 1132.

Plaintiffs cannot argue, *see* Mot. 15, that the Rule "intrudes on [their] sovereign authority to enforce [their] own law" "simply because" it preempts conflicting state laws, as it is "black-letter law" that such preemption does not amount to irreparable injury. *Florida v. HHS*, 19 F.4th 1271, 1291 (11th Cir. 2021) (citation omitted).

---

[5] Plaintiffs do not argue—as they did below—that § 106.2 is arbitrary or capricious. Op. 76-84. That too makes sense, since the Rule more than satisfies the "exceedingly deferential" standard of arbitrary-and-capricious review. *VHV Jewelers, LLC v. Wolf*, 17 F.4th 109, 114 (11th Cir. 2021) (quotation omitted); *see* 89 Fed. Reg. at 33,497-509.

Indeed, "to conclude otherwise would mean that a state would suffer irreparable injury from all … federal laws with preemptive effect." *Id.* at 1292.  Beyond that, many of the purportedly conflicting state laws or policies plaintiffs invoke are perfectly consistent with the Rule.  *See* Op. 113-14.  And in any event, any conflict with state laws would not justify enjoining the enforcement of regulations that plaintiffs have not established a likelihood of showing are invalid.

Plaintiffs also cannot justify their request for emergency relief based on purported constitutional harms to plaintiff associations' members.  *See* Mot. 15.  Plaintiffs' arguments about the Rule's supposed infringement of individual rights were woefully "insufficient to carry the burden of clearly establishing an imminent and irreparable injury."  Op. 112 (quotation and alteration omitted).  Plaintiffs do nothing to bolster those unsupported and conclusory arguments here, and they certainly do not identify any individual who would suffer immediate harm while the parties litigate this appeal.

Finally, plaintiffs' invocation of compliance costs, Mot. 15, fares no better.  As the district court observed, while plaintiffs refer generally to such costs, they "offer no evidence of what the compliance costs will be."  Op. 121.  Plaintiffs still have not done so; indeed, they rely on the same generic declarations that the district found insufficient.  Nor do plaintiffs explain how any costs relate to their overall budgets.  Absent such showings, courts routinely reject claims of irreparable harm.  *See Pennsylvania v. DeVos*, 480 F. Supp. 3d 47, 68 (D.D.C. 2020) (denying injunction as to

2020 Title IX Rule); *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 304 (S.D.N.Y. 2020) (same). Plaintiffs evidently believe that even a cent of compliance costs is sufficient to constitute irreparable harm, Mot. 15, but that theory could place every challenge to a federal regulation in an emergency posture. That is not and has not ever been the law.

## III. The equities weigh against an injunction.

The remaining factors tilt decisively towards the Department. Students and teachers throughout the plaintiff states have an interest in the protections provided by the Rule—the vast majority of which plaintiffs do not challenge. Those interests are particularly pronounced here because the Rule effectuates Title IX's goals of "avoid[ing] the use of federal resources to support discriminatory practices [and] provid[ing] individual citizens effective protection against those practices." *Cannon v. University of Chi.*, 441 U.S. 677, 704 (1979). No one disputes that preventing discrimination serves a compelling public interest. By contrast, plaintiffs would suffer no cognizable harm from leaving the Rule in force during this appeal—and regardless, any such harm would be dramatically outweighed by the government's interest in stamping out sex discrimination and ensuring all students' access to federally funded educational opportunities. *Cf. Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008) (public interest in naval training "outweighed" irreparable injury to wildlife).

## IV. At a minimum, any injunction should be narrowly tailored.

Finally, if this Court were to enter injunctive relief, any injunction should apply only to the Rule provisions that the plaintiffs challenge and that are the source of cognizable harm plaintiffs attempt to assert. As the parties seeking preliminary relief, it was and is plaintiffs' burden to justify the scope of any injunction. And as the district court recognized, Op. 30, plaintiffs bear the burden of justifying a departure from the Rule's clear instruction that its provisions are "intended to operate independently of each other," such that "the potential invalidity of one provision should not affect the other provisions." 89 Fed. Reg. at 33,848; *see also* 34 C.F.R. §§ 106.9, 106.16, 106.48.

Plaintiffs fail to meet this burden. To start, there is no justification for enjoining the numerous provisions that plaintiffs do not even challenge, many of which have nothing to do with gender-identity discrimination—such as provisions concerning Title IX coordinators, 34 C.F.R. § 106.8(a); recipients' notice of nondiscrimination and record-keeping obligations, *id.* § 106.8(c), (f); access to lactation spaces, *id.* § 106.40(b)(3)(v); and prohibitions on retaliation, *id.* §§ 106.2, 106.71.

Even as to the challenged provisions, § 106.10's scope of prohibited discrimination causes plaintiffs no harm because they nowhere contend that they wish to discriminate against transgender individuals simply for being transgender, as by barring a transgender student from participation in band or student government.

Instead, plaintiffs' purported injuries focused on sex separation in restrooms (the subject of a different Rule provision) or athletics (the subject of a different rulemaking). PI Mot. 19 (discussing restrooms): *id.* at 21 (athletics); Mot. 3 (addressing "bathrooms and locker rooms"). There is no basis for enjoining § 106.10, which on its own causes plaintiffs no injury.

As to § 106.2, plaintiffs' claims of irreparable harm focused on the definition of hostile-environment harassment, and specifically its application to alleged gender-identity discrimination. PI Mot. 1-2 (complaining about the Rule's effect on "preferred pronouns"); Mot. 12 (same). Thus, any injunction as to § 106.2 should extend only to its application of that definition to alleged gender-identity discrimination. At the very most, then, any injunction should be limited to the following provisions of the 2024 Rule: (i) 34 C.F.R. 106.31(a)(2) and (ii) the hostile-environment harassment standard in 34 C.F.R. 106.2 as applied to discrimination on the basis of gender identity.

# CONCLUSION

The Court should deny the motion for an injunction pending appeal.

Respectfully submitted,

*Of Counsel:*

LISA BROWN
*General Counsel*
*U.S. Department of Education*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

MELISSA N. PATTERSON
JACK E. STARCHER
STEVEN A. MYERS
*/s/ David L. Peters*
DAVID L. PETERS
*Attorneys, Appellate Staff*
*Civil Division, Room 7209*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1673*

August 2024

**CERTIFICATE OF COMPLIANCE**

This opposition complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,198 words. It also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ David L. Peters*
David L. Peters

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2024, I electronically filed the foregoing

opposition with the Clerk of the Court for the United States Court of Appeals for the

Eleventh Circuit by using the appellate CM/ECF system.  Participants in the case are

registered CM/ECF users, and service will be accomplished by the appellate

CM/ECF system.

*/s/ David L. Peters*
David L. Peters