No. 24-12444

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

STATE OF ALABAMA, et al.,

Plaintiffs–Appellants,

v.

U.S. SECRETARY OF EDUCATION, et al.,

Defendants–Appellees.

On Appeal from an Order of the United States District Court
for the Northern District of Alabama, Western Division
Case No. 7:24-cv-00533-ACA, Hon. Annemarie Carney Axon

**BRIEF OF ORGANIZATIONS SERVING PREGNANT AND
PARENTING STUDENTS AS *AMICI CURIAE* SUPPORTING
APPELLEES**

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Counsel for *Amici Curiae*

Aug. 5, 2024

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rules 26.1-1 and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, and firms with any known interest in the outcome of this case.

1. Axon, Hon. Annemarie Carney – United States District Judge

2. Binnall, Jesse R. – Counsel for Amicus Curiae Citizens Defending Freedom

3. Bernstein, C'Zar David – Counsel for Plaintiff-Appellant

4. Cardona, Miguel in his official capacity as U.S. Secretary of Education – Defendant-Appellee

5. Citizens Defending Freedom – Amicus Curiae

6. Davy, Jim – Counsel for captioned Amici Curiae

7. Flynn, Shawn M. – Trial Counsel for Trial Amicus Curiae Stop Abusive and Violent Environments

8. Generation Hope – Amicus Curiae

9. Goldfarb, Jon C. – Trial Counsel for Trial Amicus Curiae State of California, State of New Jersey, and State of Pennsylvania

10. Independent Women's Law Center – Plaintiff-Appellant

11. Independent Women's Network – Plaintiff-Appellant

12. Justice + Joy National Collaborative – Amicus Curiae

13. Kopplin, Rebecca – Counsel for Defendant-Appellee

14. LaCour, Edmund Gerard Jr. – Counsel for Plaintiff-Appellant

15. Marshall, Steven – Counsel for Plaintiff-Appellant

16. McKasson, Lindsay R. – Trial Counsel for Trial Amicus Curiae Stop Abusive and Violent Environments

17. Miller, Edward – Trial Counsel for Trial Amicus Curiae Stop Abusive and Violent Environments

18. Mommies in the D – Amicus Curiae

19. Myers, Steven A. – Counsel for Defendant-Appellee

20. National Nurse-Led Care Consortium – Amicus Curiae

21. Norris, Cameron Thomas – Counsel for Plaintiff-Appellant

22. North, Benjamin F. – Trial Counsel for Trial Amicus Curiae Stop Abusive and Violent Environments

23. Parents Defending Education – Plaintiff-Appellant

24. Patterson, Melissa – Counsel for Defendant-Appellee

25. Percival, James Hamilton II. – Counsel for Plaintiff-Appellant

26. Peters, David – Counsel for Defendant-Appellee

27. Petrany, Stephen John – Counsel for Plaintiff-Appellant

28. Spate, Joseph David – Counsel for Plaintiff-Appellant

29. Speech First, Inc. – Plaintiff-Appellant

30. State of Alabama – Plaintiff-Appellant

31. State of California – Trial Amicus Curiae

32. State of Florida – Plaintiff-Appellant

33. State of Georgia – Plaintiff-Appellant

34. State of New Jersey – Trial Amicus Curiae

35. State of Pennsylvania – Trial Amicus Curiae

36. State of South Carolina – Plaintiff-Appellant

37. Starcher, Jack – Counsel for Defendant-Appellee

38. Stop Abusive and Violent Environments – Trial Amicus Curiae

39. Taylor, Bryan M. – Counsel for Plaintiff-Appellant

40. U.S. Breastfeeding Committee – Amicus Curiae

41. U.S. Department of Education – Defendant-Appellee

42. Vaseliou, Thomas Samuel – Counsel for Plaintiff-Appellant

43. Whitaker, Henry Charles – Counsel for Plaintiff-Appellant

*Amici* Justice + Joy National Collaborative, Mommies in the D, Generation Hope, the U.S. Breastfeeding Committee, and the National Nurse-Led Care Consortium are nonprofit organizations. They have no parent corporations, and no publicly held corporation owns any portion of any of them. No publicly traded company or corporation has an interest in the outcome of this appeal.

/s/ Jim Davy

Jim Davy

# TABLE OF CONTENTS

**Page(s)**

Certificate of Interested Persons and Corporate Disclosure Statement.................................................................................... i

Table of Authorities.................................................................. v

Introduction .............................................................................. 1

Argument .................................................................................. 3

I. The Rule is essential to ensure that pregnant and postpartum students can access education. ...................... 3

II. The Rule protects the health of students and their pregnancies. ..................................................................... 7

III. The portions of the Rule protecting pregnant and postpartum students should go into effect because they are unchallenged and severable............................................ 11

Conclusion............................................................................... 12

Certificates............................................................................. 15

Appendix of Amici Curiae .................................................... 1a

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*K Mart Corp.* v. *Cartier, Inc.*,
486 U.S. 281 (1988) .............................................................. 11

**Statutes and Regulations**

20 U.S.C. § 1681 ....................................................................... 1
34 C.F.R. § 106.40................................................ 2, 3, 4, 5, 7, 8, 9, 10, 12
34 C.F.R. § 106.40(b) (2000) ...................................................... 1
45 C.F.R. § 86.40(b) (1975) ................................................... 1, 10
*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (codified at 34 C.F.R. § 106.40) ............................. 2, 12

**Other Authorities**

Andrew Sum et al., *The Consequences of Dropping Out of High School* (Oct. 2009) ............................................................................. 6
*Choosing Wisely Recommendation #307*, Am. Acad. of Fam. Physicians ........................................................................................... 11
Cynthia Costello, Inst. for Women's Pol'y Rsch., *Pathways to Postsecondary Education for Pregnant and Parenting Teens* (May 2014) .................................................................................... 6
Dep't of Health & Hum. Res., *The Business Case for Breastfeeding* (2008) .................................................................................... 4
*Ensuring Healthy Births Through Prenatal Support*, Ctr. Am. Progress (Jan. 31, 2020) ......................................................................... 8
Lindsey Rechlin Cruse et al., Inst. for Women's Pol'y Research, *Investing in Single Mothers' Higher Education* (Dec. 2019) ................ 7
Louisville Dep't of Pub. Health and Wellness, *Pregnant Workers Health Impact Assessment* (2019) ......................................................... 7
*Postpartum*, Cleveland Clinic (Feb. 27, 2024) ............................... 9
Rebecca A. Krukowski et al., Correlates of Early Prenatal Care Access Among U.S. Women: Data from the Pregnancy Risk Assessment Monitoring System (PRAMS), 26 Maternal and Child Health J. 328 (2022) .................................................................................... 8
*Recommendation and Benefits*, Ctrs. for Disease Control and Prevention (Mar. 17, 2023) ....................................................................... 4

## INTERESTS OF THE AMICI CURIAE[1]

*Amici* Justice + Joy National Collaborative, Mommies in the D, Generation Hope, the U.S. Breastfeeding Committee, and the National Nurse-Led Care Consortium are organizations that support pregnant and parenting students in school to ensure no student must face an impossible choice between their education and their family. U.S. Department of Education's new Title IX regulations strengthen and clarify the law's protections for pregnant and postpartum students. Accordingly, *Amici* have an interest in the new pregnancy-related provisions going into effect. More information about *Amici* may be found in the appendix of this brief.

## INTRODUCTION

Since 1975, the federal agencies that Congress tasked with enforcing Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, have promulgated regulations protecting pregnant and postpartum students' educations. *See, e.g.*, 34 C.F.R. § 106.40(b) (2000); 45 C.F.R. § 86.40(b) (1975). Nonetheless, these students continue to face discrimination. Some schools, for example, deny pregnant students basic accommodations that ensure they can pursue their studies without

---

[1] *Amici* file this brief with the consent of the Parties. *Amici*'s counsel authored this brief, no party's counsel authored the brief in whole or in part, and no person has contributed any money toward this brief.

risking their and their pregnancies' health, evict them from university housing, or exclude them from classes postpartum.

Among other provisions, the new Title IX regulations ("the Rule") clarify and strengthen protections for pregnant and postpartum students. *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474, 33,887–88 (Apr. 29, 2024) (codified at 34 C.F.R. § 106.40). For example, the Rule adds the following three key new provisions:

- Schools must offer pregnant and postpartum students "reasonable modifications," such as larger desks and permission to use the restroom, *id.* at 33,887 (codified at 34 C.F.R. § 106.40(b)(3)(ii));
- Schools must provide lactation spaces and breaks to express milk, *id.* at 33,887–88 (codified at 34 C.F.R. §§ 106.40(b)(3)(ii), (v));
- Schools must notify pregnant students of their rights to modifications, leaves of absence, lactation space, and more, *id.* at 33,887 (codified at 34 C.F.R. §§ 106.40(b)(2), (b)(3)(i)).

Each of these provisions offers new protections absent from prior regulations, which did not expressly require schools to offer reasonable modifications, did not even mention lactation spaces, and did not provide for affirmative notice to students of their pregnancy-related rights. *See* 34 C.F.R. § 106.40 (2000).

Plaintiff-Appellants did not and do not challenge these new portions of the Rule. *See generally* Doc. 25. Yet they ask this Court to enjoin the entire Rule pending appeal. *See id.* at 18-20. This Court should not do so, so that pregnant and postpartum students, among others, may benefit from the Rule in time for the new school year.

## ARGUMENT

## I. The Rule is essential to ensure that pregnant and postpartum students can access education.

The Rule's pregnancy provisions are essential to ensure pregnant and postpartum students can learn and thrive at school. All three key new protections protect these students' access to education. And in so doing, the Rule also reduces costs to the public.

1. *Reasonable accommodations.* The Rule protects pregnant and postpartum students by requiring schools to provide them reasonable accommodations (or "modifications") necessary to pursue their educations. 34 C.F.R. § 106.40(b)(3)(ii). "Reasonable modifications may include, but are not limited to … breaks during class to … eat[], drink[], or use the restroom; intermittent absences to attend medical appointments; … rescheduling of tests and examinations; … allowing a student to … keep water nearby; …[or] a larger desk." 34 C.F.R. § 106.40(b)(3)(ii)(C).

In *Amici*'s experience, even modest accommodations can ensure that pregnancy does not imperil a student's education. Without the Rule's

new protections, pregnant and postpartum students' educations have too often been disrupted or derailed. For example, Student A. experienced a life-threatening miscarriage, during which she missed an examination at her post-secondary institution. Rather than permit her to reschedule the exam as a reasonable accommodation, her school assigned her a failing grade.[2] Student B. requested pregnancy accommodations for months but received no substantive response from school administrators. She eventually gave up and left school, incurring a bill for "withdrawing."

2. *Lactation spaces and breaks.* The Rule also protects postpartum students' educations by requiring educational institutions to provide a clean, private, non-bathroom lactation space, as well as reasonable breaks to express milk or nurse. 34 C.F.R. §§ 106.40(b)(3)(ii), (v). Major medical organizations in the United States unanimously recommend breastfeeding, given the well-established health benefits for both parent and child. *See Recommendation and Benefits*, Ctrs. for Disease Control and Prevention (Mar. 17, 2023), https://perma.cc/TK62-Q82Q. To ensure they will be able to produce enough milk to feed their child, lactating students need regular breaks throughout the day to express milk. Dep't of Health & Hum. Res., *The Business Case for Breastfeeding* 5 (2008), https://owh-wh-d9-dev.s3.amazonaws.com/s3fs-public/documents/

---

[2] *Amici*'s expertise comes directly from experiences of their and their partners' clients. *Amici* share all the stories referenced in this brief through sequentially-lettered pseudonym initials with the permission of the referenced clients.

bcfb_easy-steps-to-supporting-breastfeeding-employees.pdf. If they do not pump or nurse their child regularly, lactating students can quickly lose their milk supply and experience complications, including infection. *Id.* So, for students to nurse or express milk, their schools must provide an appropriate space and sufficient time to do so. The Rule requires just that. 34 C.F.R. §§ 106.40(b)(3)(ii), (v).

In *Amici*'s experience, without the Rule, schools often decline to provide students effective lactation accommodations, if any. That forces upon students the impossible choice between their education and providing milk for their baby. For example, when Student C.'s school declined to allow her to pump at school, she dropped out.

3. *Notification of rights.* Prior Title IX regulations provided some limited protections for pregnant and postpartum students. *See* 34 C.F.R. § 106.40. But, in *Amici*'s experience, those protections had little force because students did not know their rights. The Rule addresses this problem by requiring schools to give pregnant students clear, affirmative notice of their rights under the law, helping ensure that students can access these rights in practice. 34 C.F.R. §§ 106.40(b)(2), (b)(3)(i)) (requiring detailed notice to pregnant students of their rights to modifications, lactation space, leaves of absence, and more).

For example, schools often fail to reinstate students who require a leave of absence to recover from serious pregnancy complications, childbirth, or postpartum depression to their prior academic status. Prior

regulations prohibited that practice. 34 C.F.R. § 106.40(b)(5) (2000). But in *Amici*'s experience, few students knew that, leaving them vulnerable to mistreatment. During her pregnancy, for instance, Student D. requested to attend her college classes remotely after her doctor placed her on bedrest. Rather than offering her modifications or placing her on medically necessary leave, Student D.'s school told her that her only option was to withdraw, and that there was no guarantee that she would be readmitted once she was ready to return after giving birth. By requiring schools to inform pregnant and postpartum students of their right to reinstatement following leave, the Rule safeguards students from misinformation.

4. *Public financial impact.* By protecting pregnant and postpartum students' access to education, the Rule also protects the public fisc. Currently, only about half of teenage mothers earn a high school diploma by age twenty-two, compared to 90% of girls who do not have a child as a teen. Cynthia Costello, Inst. for Women's Pol'y Rsch., *Pathways to Postsecondary Education for Pregnant and Parenting Teens*, at v (May 2014), https://files.eric.ed.gov/fulltext/ED556724.pdf. Only 2% of teen mothers seventeen and younger graduate college by age thirty. *Id.*

The lifetime cost to taxpayers when a student is pushed out of high school exceeds $292,000. Andrew Sum et al., *The Consequences of Dropping Out of High School* 15 (Oct. 2009), https://repository.library. northeastern.edu/downloads/neu:376324. By contrast, single mothers

who complete their bachelor's degree save the state over $40,000 each in public assistance. Lindsey Rechlin Cruse et al., Inst. for Women's Pol'y Research, *Investing in Single Mothers' Higher Education* 15 (Dec. 2019), https://iwpr.org/wp-content/uploads/2020/07/R600_Investing-in-Single-Moms-National.pdf.

## II. The Rule protects the health of students and their pregnancies.

The Rule's three key new pregnancy provisions are also essential to safeguard the health of students—and their ability to carry their pregnancies to term.

1. *Reasonable accommodations.* The Rule's new requirement that schools provide reasonable accommodations—and that they do so regardless of whether they provide those accommodations to other students—promotes health. *See* 34 CF.R. § 106.40(b)(3)(ii)(A). For example, permissions to eat or drink during class are essential to retain a healthy amount of amniotic fluid, and restroom breaks are necessary to reduce urinary tract infections and the associated risk of preeclampsia and preterm birth. Louisville Dep't of Pub. Health and Wellness, *Pregnant Workers Health Impact Assessment* 21 (2019), https://louisvilleky.gov/center-health-equity/document/pregnant-workers-hia-final-02182019pdf.

Yet schools often deny students basic modifications necessary for health. Student E. was told by her professor that it "wouldn't be fair to

the other students in class" to let her take additional bathroom breaks—a common excuse expressly rejected by the Rule, 34 C.F.R. § 106.40(b)(3)(ii)(A). Student F. was diagnosed with a high risk of life-threatening hemorrhage and requested a parking spot so she could drive to medical care if specific warning symptoms emerged. Her school refused. Student G. requested information about what chemicals she would be exposed to in a chemistry lab, since certain chemicals could pose a risk to her pregnancy. Her professor would not do so, forcing Student G. to choose between her education and the health of her pregnancy.

The Rule also identifies intermittent time off for healthcare appointments as a reasonable accommodation. 34 C.F.R. § 106.40(b)(3)(ii). That is essential to ensure pregnant and postpartum access to critical medical care, such as pre- and post-natal appointments, and avoid health risks. This care vastly improves health outcomes. *Ensuring Healthy Births Through Prenatal Support*, Ctr. Am. Progress (Jan. 31, 2020), https://www.americanprogress.org/article/ensuring-healthy-births-prenatal-support/. But nearly one in ten pregnant patients struggle to access vital first-trimester prenatal care because they cannot get time off of work or school. Rebecca A. Krukowski et al., *Correlates of Early Prenatal Care Access Among U.S. Women: Data from the Pregnancy Risk Assessment Monitoring System*, 26 Maternal & Child Health J. 328, 337 (2022). The Rule's reasonable modification provision

therefore promotes the health of pregnant students and their pregnancies.

2. *Lactation spaces and breaks.* The Rule also protects students' and their babies' health by enabling students to nurse or express milk. By requiring schools to provide postpartum students the space and time they need to pump, 34 C.F.R. §§ 106.40(b)(3)(ii), (v), the Rule ensures postpartum students, and their new babies, the health benefits of breastfeeding, *see supra* p. 4.

Without the Rule, schools often decline to provide students effective lactation accommodations, causing them to lose their supply or develop health compilations. For example, Student H. developed mastitis, a painful inflammation of the breast tissue, due to her inability to express milk in the extremely limited time between her law school classes in the weeks following her child's birth.

3. *Notification of rights.* The Rule also promotes students' health, and the health of their pregnancies, by ensuring they know about their rights, including their right to leaves of absence, reinstatement, and reasonable modifications. 34 C.F.R. §§ 106.40(b)(2), (3)(i).

Leave to recover from childbirth is associated with lower rates of infant and child mortality, as well as improved maternal health outcomes. *Postpartum*, Cleveland Clinic (Feb. 27, 2024), https://my. clevelandclinic.org/health/articles/postpartum; *Paid Parental Leave, Statement of Policy*, Am. Coll. of Obstetricians & Gynecologists (July

2016), https://www.acog.org/clinical-information/policy-and-position statements/statements-of-policy/2020/paid-parental-leave. Title IX regulations have long included a provision to offer leave for as long as medically necessary for postpartum students. 45 C.F.R. § 86.40(b)(5) (1975). In practice, however, students have struggled to access time off because of a lack of awareness of their right to it—and of their right to full reinstatement upon their return. The Rule, for the first time, requires schools to clearly inform students of their rights to leaves of absence and to reinstatement. 34 C.F.R. §§ 106.40(b)(2), (3)(i).

The Rule's requirement that schools clearly inform students of their rights to leaves of absence will make a critical difference for many students. For example, when Student I. asked her school about time off to recover from childbirth, she was incorrectly informed that Title IX only covered pregnancy and that postpartum leave was only available if she had a disabling complication. Student J.'s school refused to discuss a plan for childbirth recovery while she was pregnant, and days after she gave birth, the school told her she had to return for exams. As a result, Student J. could not take the time off that her doctor recommended after a complicated pregnancy and birth.

Likewise, Student K. wanted just two weeks off to deliver and recover from childbirth, but her college informed her that taking that time was against policy, and that if she missed as little as two days she could fail her classes. So Student J.—like some other pregnant

students—induced labor to avoid missing class. Induction without medical indication can increase the risk of complications including hemorrhage, cesarean birth, fetal stress, and negative impacts on future pregnancies. *Choosing Wisely Recommendation #307*, Am. Acad. of Fam. Physicians, https://perma.cc/N7XF-EADQ. The Rule mitigates the risks of these harms, ensuring healthier students, healthier pregnancies, and healthier babies.

## III. The portions of the Rule protecting pregnant and postpartum students should go into effect because they are unchallenged and severable.

The District Courts was right that Plaintiff-Appellants failed to carry their burden when they failed to provide any argument, in their initial brief, as to why they were entitled to an injunction of the full Rule. *See* Dist. Ct. Op. at 30. But even if the Court reaches these arguments, it should decline to enjoin 34 C.F.R. § 106.40 because it does not depend in any way on the outcome of litigation over the challenged provisions.

Where there is "no indication that the regulation would not have been passed but for its inclusion," a challenged regulatory provision is severable from the rest of a rule. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988). There is no such indication here. The Department specifically "confirm[ed] that … the potential invalidity of one provision should not affect the other provisions" because "each of the provisions …

serve an important, related, but distinct purpose" and "is intended to operate independently." 89 Fed. Reg. at 33848.

The nature of the Plaintiff-Appellants' challenge only confirms this. Plaintiffs' object to the Rule's inclusion of gender identity discrimination within 34 C.F.R. § 106.10's definition of "sex discrimination." *See* Doc. 25 at 2-3. They call their disputed provisions "central" to the entire rule. *Id.* at 6. But the substantive provisions discussed in this brief do not depend in any way upon gender identity's inclusion in the definition of sex discrimination. In fact, they do not require the definitions in 34 C.F.R. § 106.10 at all. A separate part of the Rule includes a distinct definition of "pregnancy or related conditions," 34 C.F.R. § 106.2, which Plaintiff-Appellants have not challenged. And, prior to the Rule, the Department's Title IX regulations did not include any definition of sex discrimination analogous to 34 C.F.R. § 106.10's—an absence that did not prevent those earlier regulations from providing pregnancy-related protections, *see supra* p. 1. Accordingly, the substantive sections discussed here do not depend on Plaintiff-Appellants' disputed scope of sex discrimination in other parts of the Rule and are not intertwined with the challenged provisions.

## CONCLUSION

The Court should deny the Plaintiff-Appellant's motion for an injunction pending appeal.

Respectfully submitted,

 /s/ Jim Davy

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Counsel for *Amici Curiae*

August 5, 2024

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), I certify that this brief:

(i) complies with the type-volume limitation of Rule 29(a)(5) because it contains 2,592 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 16.87, set in Century Schoolbook 14-point type.

/s/ Jim Davy

Jim Davy

**CERTIFICATE OF SERVICE**

I certify that on August 5, 2024, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Jim Davy

Jim Davy

# APPENDIX

**Justice + Joy National Collaborative** (formerly the "National Crittenton Foundation") is a national nonprofit organization that supports the wellbeing of girls and young women, including pregnant and parenting youth. It regularly convenes direct service providers from thirty states, who provide support to pregnant and parenting teens on the margins, many of whom have survived abuse, violence or neglect.

**Mommies in the D** is a Michigan nonprofit organization dedicated to empowering young mothers, aged fourteen to twenty-two, by establishing nurturing and growth-centered environments. By educating young mothers on the importance of prenatal visits, developmental stages of children, and breastfeeding support, they aim to support young mothers in their social, economic, and emotional development so they can achieve their personal and parenting goals.

**Generation Hope** is a national nonprofit whose mission is to ensure all student parents have the opportunity to succeed, experience economic mobility, and build wealth. It provides wrap-around services to young parents and their children, including mentoring, tuition assistance, tutoring, career preparation, and mental health support.

**The U.S. Breastfeeding Committee** ("USBC") is a national non-profit coalition bringing together 140 organizations that support the USBC mission to create a landscape of breastfeeding support across the United States. USBC is committed to ensuring that all families in the U.S.—including postpartum students—have the support and resources they need to achieve their breastfeeding goals in the communities where they live, learn, and work.

**The National Nurse-Led Care Consortium ("NNCC")** is a national nonprofit whose mission is to advance nurse-led healthcare through policy and programming to reduce health disparities and meet primary care and wellness needs, including those of pregnant, postpartum, and parenting students. NNCC has a longstanding relationship with community-based organizations empowering young people and students in their parenting journeys, particularly in support of their ongoing educational needs. Public health nursing services provided by NNCC facilitate access to medical care, developmental support services, breastfeeding support, and peer support groups for parents and parents-to-be, including many students.