No. 24-12444-G

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

STATE OF ALABAMA, et al.,
　　　　*Plaintiffs-Appellants*,

v.

U.S. SECRETARY OF EDUCATION, et al.,
　　　　*Defendants-Appellees*.

Appeal from the U.S. District Court for the
Northern District of Alabama, No. 7:24-cv-533 (Axon, J.)

# REPLY IN SUPPORT OF MOTION FOR
# INJUNCTION PENDING APPEAL

Steve Marshall
　*Attorney General*
Edmund G. LaCour Jr.
　*Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

[Additional counsel listed at end]

*Counsel for Plaintiffs-Appellants*

No. 24-12444-G, *Alabama v. U.S. Sec'y of Educ.*

# CERTIFICATE OF INTERESTED PERSONS

Per Circuit Rule 26.1, Appellants certify that the CIP in their initial motion, as modified by the CIPs of Appellees and amici, are complete.

| | |
|---|---|
| Dated: August 7, 2024 | /s/ *Cameron T. Norris* |
| | Counsel for Plaintiffs-Appellants |

C-1 of 1

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................................ C-1

Introduction & Summary of Argument ........................................................................ 1

Argument ........................................................................................................................ 1

    I.    Plaintiffs will likely win. ................................................................................ 2

        A.    §106.31(a)(2) and §106.10 ................................................................ 2

        B.    §106.2 ................................................................................................. 4

        C.    "Forfeiture" ....................................................................................... 6

    II.    The other factors favor Plaintiffs. .............................................................. 7

    III.    This Court's relief should mirror its administrative injunction. ........... 9

Conclusion ..................................................................................................................... 11

Certificate of Compliance ............................................................................................ 13

Certificate of Service .................................................................................................... 13

## INTRODUCTION & SUMMARY OF ARGUMENT

The Department's Title IX rule is currently enjoined in all 26 States that challenged it. Why should it suddenly (and fully) go into force in only four of those States before its legality is resolved? The Department cannot justify that arbitrary disparity. These four States didn't uniquely "delay" (an argument the Department won't defend). These States didn't have uniquely inferior briefs or evidence (an argument the Department didn't make below and won't try to prove here). And these States didn't face uniquely unfavorable precedent. The opposite: *Adams* forecloses the rule's treatment of bathrooms, and it fatally undermines the rule's definition of sex discrimination. Hence why the other courts that froze the rule cited *Adams* as persuasive. *E.g.*, *Tennessee v. Cardona*, 2024 WL 3453880, at *2 (6th Cir.).

This circuit should be the *last* place where the Department can immediately enforce its rule, not the first and only outlier. This Court should preserve the status quo by converting its administrative injunction into an injunction pending appeal.

## ARGUMENT

The Department agrees that the standards for injunctions pending appeal, stays pending appeal, and preliminary injunctions are the same. Opp.8. So the nine injunctions and stays that it's lost so far are directly on point. Mot.1-2 & n.1. Like those courts, this Court should pause the rule while the parties litigate "this important case." *Adams v. Sch. Bd. of St. Johns Cnty.*, 3 F.4th 1299, 1326 (Pryor, C.J., dissenting), *vacated*, 57 F.4th 791 (11th Cir. 2022) (en banc).

1

## I. Plaintiffs will likely win.
### A. §106.31(a)(2) and §106.10

As the Department seems to anticipate, Opp.22, it cannot possibly avoid an injunction against §106.31(a)(2). Under *Adams*, Title IX cannot force schools to let individuals "use restrooms consistent with their gender identity." Opp.1. The Department says *Adams* only "assumed" that the longstanding regulation on bathrooms (which allows strict sex separation) is a valid interpretation of the statutory carveout for living facilities. Opp.14. But *Adams* held it, 57 F.4th at 815, and the rule concedes that "*Adams* … held" it, 89 FR 33,820-21. Regardless, the Department ignores *Adams*' alternative holding under the Spending Clause. *See* 57 F.4th at 815-17. Schools were never given sufficient "notice" that strictly sex-separated bathrooms could "violat[e] Title IX." *Id.* at 816. The Department cannot impose that result by reclassifying what Title IX "authoriz[es]" as prohibited "discrimination" against transgender individuals—a move that *Adams* also rejects. *Id.* at 814 n.7; *accord id.* at 814 (rejecting the "dual protection" this reading would give transgender individuals). Tellingly, the Department's only authority approving its approach to bathrooms is a Seventh Circuit decision that concedes it "split[s]" with "*Adams*." *A.C. v. Metro. Sch. Dist.*, 75 F.4th 760, 770-71 (2023).

While *Adams* forecloses the rule's treatment of bathrooms, its reasoning also dooms the rule's definition of sex discrimination. The Department doesn't dispute that, under *Adams*, it cannot import gender identity into Title IX unless it surmounts "the Spending Clause's required clear-statement rule." 57 F.4th at 815-16. Though it claims

2

that Title IX is "unambiguous," Opp.11, that's plainly false. The Sixth Circuit, seven district courts, and 23 state amici disagree. Mot.1 n.1; CA11-Doc.26-1. Indeed, *Bostock*'s application to Title IX has "split" the circuits. *Louisiana v. DOE*, 2024 WL 2978786, at *10 & n.49 (W.D. La.). In this circuit, binding caselaw not only refuses to extend *Bostock* to the Constitution. *Cf.* Opp.11. But its reasoning repels *any* attempt to apply *Bostock* to "a different law" than Title VII or "a different factual context" than employment. *Eknes-Tucker v. Governor*, 80 F.4th 1205, 1228-29 (11th Cir. 2023); *accord Adams*, 57 F.4th at 808 (education and employment are different).

The Department largely ignores *Adams*' on-point reasoning about "Title IX's general prohibition against sex discrimination." 57 F.4th at 816. Even if the Department were correct that its bathroom regulation interprets that general prohibition, Opp.14-15, *Adams* holds that this longstanding regulation *allows* strict sex separation—powerful evidence that Title IX's original meaning rejects *Bostock*, Mot.8-9. The Department also ignores *Adams*' concern that importing *Bostock* would contradict the longstanding regulation on sports. Mot.9. And it barely addresses footnote 7, where *Adams* explains how importing "*Bostock*" would make a mess of Title IX's statutory carveouts, 57 F.4th at 814 n.7, which are "unlike" anything in Title VII, *id.* at 811. Under the Department's view, Congress banned males who identify as females from attending Girls State or joining a sorority, 20 U.S.C. §1681(a)(6)-(7), but gave those males a federal right to shower and undress with females. Opp.12-13. No rational Congress would draw those lines. The carveouts instead reflect Congress' judgment that males and females are not

3

"similarly situated" across the educational context, Mot.9, a point that the Department's focus on "but-for causation" simply misses, Opp.10.

### B. §106.2

Though the Department thinks it's "not bound" by the Supreme Court's definition of harassment in *Davis*, Opp.6, that argument will likely fail. Now that *Chevron* is overruled, agencies cannot interpret statutes differently from courts. *Loper Bright v. Raimondo*, 144 S.Ct. 2244, 2273 (2024). Courts declare a statute's "single" meaning, *id.* at 2266; and if that meaning is narrowed to avoid some concern, that "limiting construction" does not disappear in contexts where that concern isn't present, *Clark v. Martinez*, 543 U.S. 371, 380 (2005). So it doesn't matter whether *Davis* interpreted Title IX "'in the context of a private damages action.'" Opp.16. What matters is that *Davis* interpreted Title IX. "*Davis* … relied on the text of Title IX," especially the word "'discrimination.'" *Jackson v. Birmingham BOE*, 544 U.S. 167, 173-74 (2005). It had to, since only the "'clear terms of the statute'" could have satisfied the Spending Clause. *Id.* at 183. *Davis* used Title IX's terms to define when students' harassment becomes the school's discrimination, and the "very real limitations" in its definition honor "practical realities" that "Congress" wouldn't have ignored. 526 U.S. at 651-53. The Department cannot "impose more sweeping liability than [*Davis*] read[s] Title IX to require" by regulation, any more than private litigants can by lawsuit. *Id.* at 652; *see Oklahoma v. Cardona*, 2024 WL 3609109, at *7-8 (W.D. Okla.).

Separately, the harassment definition likely violates the First Amendment. The Department doesn't dispute that schools (including public universities) must adopt the rule's broader definition and punish students who violate it. Mot.10-11. The Department also doesn't deny that its definition reaches speech, or that its coverage of "offensive" and "discriminat[ory]" harassment is viewpoint-discriminatory, 34 C.F.R. §106.2; *see* Mot.12. So even if the harassment policy that was enjoined in *Cartwright* were broader, *but see* R.7-1 at 44, 38-39; R.38 at 18-19 (it wasn't), both policies are facially unconstitutional, *Cartwright*, 32 F.4th at 1126. This problem isn't theoretical. The Department never denies that its definition punishes students for refusing to use "preferred pronouns," Mot.12, itself a fatal constitutional flaw, *Tennessee v. Cardona*, 2024 WL 3019146, at *15-27 (E.D. Ky.).

The Department cannot take refuge in its pre-2020 guidance or in Title VII. *Cf.* Opp.15-18. Though *Davis* cited that guidance for two unrelated points, 526 U.S. at 647-48, 651, the Court never approved its definition of harassment, *see* R.38 at 18. In fact, *Davis* adopted a narrower definition. Its definition was intentionally narrower than Title VII, too, because "schools are unlike the adult workplace." 526 U.S. at 651. Though the Department says "no authority" suggests these broader standards "contravened the First Amendment," Opp.16-17, the Department ignores its own finding that schools who used these standards "infringed on constitutionally protected speech," 85 FR 30,164-65 & nn.738-39; *accord id.* at 30,151-52, 30,162-63.

5

### C.     "Forfeiture"

The Department's opposition puts to rest the mystifying charge that Plaintiffs didn't adequately brief arguments below. The Department doesn't argue that the district court independently denied a preliminary injunction on this ground. Mot.13. And the Department doesn't argue that forfeiture matters on appeal, apparently agreeing that it forfeited forfeiture, that the district court misapplied forfeiture, and that all relevant issues were reached and preserved anyway. Mot.13-14; *see Merritte v. Kessel*, 561 F. App'x 546, 548 & n.1 (7th Cir. 2014) (district court abused its discretion by giving plaintiff's submissions a "cramped reading" where the government "'waived waiver' by not arguing it"). As the Department concedes, the district court complained about the briefs but "nevertheless addressed plaintiffs' challenges" on the merits. Opp.6.

Though the Department sometimes quotes the district court, it never tries to *defend* the notion that Plaintiffs forfeited any claim. It never cites its own briefs below, where it understood and responded to Plaintiffs' arguments. Mot.7-8, 10, 12-14. And though it wants this Court to think the "*other*" cases challenging the rule were different, Opp.2, it doesn't cite those dockets, show how those plaintiffs briefed the issues, or discuss what evidence those plaintiffs submitted. Plaintiffs compare favorably. *E.g.*, *Oklahoma*, No. 5:24-cv-461 (W.D. Okla.) (no declarations submitted from state officials).

Plaintiffs are confident that, if this Court looked at their briefs below, it would be as confused as they were with the district court's criticisms. Even here, the Department doesn't suggest that Plaintiffs forfeited their challenges to §106.10 and §106.2. *See*

6

Opp.9-11, 15-18. And though it says Plaintiffs "never asserted below that §106.31(a)(2) is contrary to law," Opp.13, Plaintiffs repeatedly asserted that the rule's treatment of bathrooms is contrary to *Adams*, *e.g.*, R.7-1 at 21-25, 15; R.38 at 8, 10-12, 16; R.34 at 3; *see also* Tr.53:6 (GOVERNMENT: "Plaintiffs talk a lot about bathrooms and locker rooms"). The Department agreed below, R.24 at 24, spending four pages responding to Plaintiffs' "statutory" challenges to §106.31(a)(2), R.24 at 25-28. True, Plaintiffs think the rule addresses bathrooms through a combination of §106.10 and §106.31(a)(2), *see* R.7-1 at 14, while the Department thinks the rule addresses bathrooms only in §106.31(a)(2), *see* R.58 at 46-48, 56. But Plaintiffs didn't forfeit anything by refusing to accept the Department's framing. The rule, after all, says that §106.31(a)(2) gives "examples" of the conduct that §106.10 "prohibit[s]." 89 FR 33,528.

## II. The other factors favor Plaintiffs.

Though one irreparable injury would be enough, Plaintiffs have at least three. The Department wisely abandons the district court's concerns about "delay." Mot.17. And the arguments that the Department does make misstate the law, record, or both.

Without continued injunctive relief, the rule will inflict irreparable compliance harms. Though the Department mentions Plaintiffs' "declarations," Opp.19, it continues to ignore that *its own rule* concedes and quantifies the States' compliance burdens. Mot.4-5, 16-17. Far from a "cent," Opp.20, even the rule puts the costs at $14.3 million dollars—plus lost time, added investigations, and more litigation. Mot.4-5. Plaintiffs

7

confirmed these harms in their ten declarations from state officials, but no testimony was even needed. Invalid federal regulations "'almost *always*'" produce irreparable compliance costs. *Rest. L. Ctr. v. DOL*, 66 F.4th 593, 597 (5th Cir. 2023). And this Court has already rejected the Department's argument that "[o]rdinary compliance costs" aren't irreparable. *Georgia v. President*, 46 F.4th 1283, 1302 (11th Cir. 2022). What matters is the costs' unrecoverability, which the Department concedes. *Id.*

The rule will inflict sovereign harms too. The Department concedes that it purports to preempt, at least, the bathroom laws in Alabama and Florida and the harassment laws in Alabama and Georgia. R.58 at 119, 121; R.1 ¶96 (Ga. Code Ann. §20-4-11.1(a)(5)). Though preemption harms might not count when the agency likely "had the authority to issue the [challenged] rule," *Florida v. HHS*, 19 F.4th 1271, 1292 (11th Cir. 2021), the Department likely lacks that authority here.

The rule will also inflict constitutional harms. The Department doesn't deny that chilled speech is famously irreparable. Mot.15. Though it says Plaintiffs "do not identify any individual" whose speech will be chilled, Opp.19, the Department never made that "identification" argument below. Had it, Plaintiffs would have highlighted their associations' unrebutted declarations, which identify specific members, reveal what they want to say, and explain why that speech will be chilled once their schools must adopt the rule's harassment definition. *E.g.*, R.7-13 ¶¶13-18; R.7-12 ¶¶14-23; R.7-11 ¶¶10-14, ¶20. No more "identification" was required. *AAER v. Fearless Fund*, 103 F.4th 765, 772-73 (11th Cir. 2024).

8

As for the other factors, the Department abandons the notion that temporary injunctions against federal regulations inflict "sovereign" harm. Mot.17-18. Though it claims an interest in "preventing discrimination," Opp.20, the Department has no interest in preventing discrimination "unlawfully," *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021). And the added risk of discrimination during an expedited appeal is "speculative." *Odebrecht Const. v. FDOT*, 715 F.3d 1268, 1288 (11th Cir. 2013). The Department denies that the States will discriminate, *see* Opp.21-22, and it cites no evidence that the current rules couldn't stop discrimination, Mot.18. True, an injunction will let schools keep males out of female spaces. But far from discrimination, that result furthers an "important governmental objective" and protects "privacy" interests of "'constitutional'" magnitude. *Adams*, 57 F.4th at 804-05.

### III. This Court's relief should mirror its administrative injunction.

This Court's injunction should be state-specific and rulewide. The Department again seeks an injunction limited to "§106.32(a)(2)" and "§106.2 as applied to … gender identity." Opp.22. When the Department asked for that limitation in its opposition to the administrative injunction, *see* CA11-Doc.13 at 15, this Court refused. And when the Department asked for that limitation in its various stay motions, every court refused. As Plaintiffs explained, relying on the Fifth and Sixth Circuits, the Department's requested limitation has "three" main defects. Mot.18-19. The Department's opposition addresses none of them.

9

The Department wrongly assumes that only two provisions of the rule are invalid. But Plaintiffs will argue on appeal (when they get more words) that other provisions are unlawful, Mot.4 n.2, and that the whole rule is arbitrary and capricious, *e.g.*, *Tennessee*, 2024 WL 3019146, at *31-36. And Plaintiffs proved here that the whole rule falls because §106.10 is unlawful and inseverable. Mot.18-19. As Chief Judge Sutton explained, that definition is fully illegal; it controls the scope of every other substantive provision; and the Department never contemplated or justified the rule without it. *Tennessee*, 2024 WL 3453880, at *3-4. The Fifth and Sixth Circuits rightly faulted the Department for failing to argue otherwise, after the Department gave the point only a few lines of briefing with generic citations to the rule's severability provisions. *Id.* at *4; *Louisiana*, 2024 WL 3452887, at *1-2. Given another chance, the Department *does the exact same thing here.* *See* Opp.21. This Court shouldn't do the quintessentially executive work of "rewriting" the Department's rule for it, especially in this emergency posture. *Louisiana*, 2024 WL 3452887, at *2. For example, enjoining §106.32(a)(2) but not §106.10 could have unanticipated consequences by eliminating the one provision that exempts sports from the rule's importation of gender identity. *See* 34 C.F.R. §106.31(a)(2) (excepting §106.41(b)).

The Department's approach is also inequitable. Though it keeps insisting that Plaintiffs "challenge" only certain provisions of the rule, *e.g.*, Opp.21, what it means is that Plaintiffs identified certain provisions as illegal. But Plaintiffs challenged, and are injured by, the whole rule. Mot.19-20. The rule's inseverable training, recordkeeping,

10

notice, and other mandates all inflict compliance costs on Plaintiffs, *cf.* Opp.21, and those costs will grow once §106.10 expands Title IX's overall scope. They will grow even costlier if this Court lets a confusing, partial, temporary version of the rule take effect, all of a sudden, after school has started—as the Fifth and Sixth Circuits held, Plaintiffs explained, and the Department never refutes. Mot.15, 19. Only rulewide relief would do what a temporary injunction is supposed to do: preserve the status quo while the parties litigate. *Louisiana*, 2024 WL 3452887, at *2.

## CONCLUSION

Defendants should be enjoined pending appeal from enforcing the rule in Alabama, Florida, Georgia, and South Carolina.

Dated: August 7, 2024

Steve Marshall
  Attorney General
s/ *Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
  Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Alabama*

Ashley Moody
  Attorney General
s/ *Henry C. Whitaker*
Henry C. Whitaker
  Solicitor General
James H. Percival
  Chief of Staff
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
henry.whitaker@ myfloridalegal.com

*Counsel for Florida*

Respectfully submitted,

/s/ *Cameron T. Norris*
Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
cam@consovoymccarthy.com
tvaseliou@consovoymccarthy.com
czar@consovoymccarthy.com

*Counsel for Private Plaintiffs*

Christopher M. Carr
  Attorney General
s/ *Stephen J. Petrany*
Stephen J. Petrany
  Solicitor General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Georgia*

Alan Wilson
  Attorney General
s/ *Joseph D. Spate*
Joseph D. Spate
  Assistant Deputy Solicitor General
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for South Carolina*

12

## CERTIFICATE OF COMPLIANCE

This motion complies with Rule 27 because it contains 2,591 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font (with 16-point and 15-point headers).

Dated: August 7, 2024                                             /s/ *Cameron T. Norris*

## CERTIFICATE OF SERVICE

I e-filed this brief, which will email everyone requiring notice.

Dated: August 7, 2024                                             /s/ *Cameron T. Norris*