No. 24-12444

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

STATE OF ALABAMA, et al.,

*Plaintiffs-Appellants,*

v.

UNITED STATES SECRETARY OF EDUCATION, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Alabama
The Honorable Annemarie Carney Axon
Case No. 7:24-cv-533-ACA

**BRIEF OF CHRISTIAN EDUCATORS ASSOCIATION
INTERNATIONAL AND FEMALE ATHLETES UNITED AS
*AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS'
MOTION FOR INJUNCTION PENDING APPEAL**

James A. Campbell
Jonathan A. Scruggs
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org

John J. Bursch
Natalie D. Thompson*
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
nthompson@ADFlegal.org

*Counsel for Amici Curiae*

*Alabama, et al. v. U.S. Secretary of Education, et al.*,
No. 24-12444

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, the undersigned certifies her belief that the Certificate of Interested Persons filed with Plaintiffs-Appellants' motion for injunction pending appeal is complete, subject to the following amendments:

1. Alliance Defending Freedom – Counsel for *Amici Curiae*

2. Campbell, James A. – Counsel for *Amici Curiae*

3. Christian Educators Association International – *Amicus Curiae*

4. Female Athletes United – *Amicus Curiae*

5. Bursch, John J. – Counsel for *Amici Curiae*

6. Scruggs, Jonathan A. – Counsel for *Amici Curiae*

7. Thompson, Natalie D. – Counsel for *Amici Curiae*

The undersigned will enter this information in the Court's web-based CIP contemporaneously with filing this brief.

*Amici curiae* Female Athletes United (FAU) and Christian Educators are nonprofit organizations, do not have a parent corporation, and do not issue stock. Neither is aware of any publicly owned corporation, not a party to the appeal, with a financial interest in the outcome of this case.

*Alabama, et al. v. U.S. Secretary of Education, et al.*,
No. 24-12444

/s/ *Natalie D. Thompson*

Natalie D. Thompson*
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
nthompson@ADFlegal.org

*Practicing under the supervision
of D.C. bar members while
application is pending.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

INTEREST OF *AMICI CURIAE* AND STATEMENT OF ISSUES.........1

SUMMARY OF ARGUMENT ....................................................................4

ARGUMENT ...............................................................................................4

I.      The Rule's new definition of "sex-based discrimination" in 34
        C.F.R. § 106.10 is contrary to law......................................................4

II.     The Rule's new de-minimis-harm provision in 34 C.F.R.
        § 106.31(a)(2) is contrary to law.........................................................8

III.    The Rule infringes on First Amendment rights. ...........................11

CONCLUSION .........................................................................................13

CERTIFICATE OF COMPLIANCE..........................................................14

CERTIFICATE OF SERVICE..................................................................15

# TABLE OF AUTHORITIES

## Cases

*Adams ex rel. Kasper v. School Board of St. Johns County*,
   57 F.4th 791 (11th Cir. 2022) ................................................. passim

*Arkansas v. United States Department of Education*,
   No. 4:24-CV-636 (E.D. Mo. July 24, 2024) ...................................... 2

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) .................................................................... 4, 5

*Carroll Independent School District v. United States Department of Education*,
   __ F. Supp. 3d __, 2024 WL 3381901 (N.D. Tex. July 11, 2024) ..... 2

*Kansas v. United States Department of Education*,
   2024 WL 3273285 (D. Kan. July 2, 2024) .................................... 2, 3

*Louisiana v. United States Department of Education*,
   2024 WL 2978786 (W.D. La. June 13, 2024) .................................. 2

*Louisiana v. United States Department of Education*,
   2024 WL 3452887 (5th Cir. July 17, 2024) ..................................... 2

*Muldrow v. City of St. Louis*,
   144 S. Ct. 967 (2024) .................................................................... 8

*Neal v. Board of Trustees of California State Universities*,
   198 F.3d 763 (9th Cir. 1999) .......................................................... 9

*Oklahoma v. Cardona*,
   No. 5:24-CV-00461 (W.D. Okla. July 31, 2024) .............................. 2

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022) ..................................................... 11

*Stollings v. Texas Tech University*,
   2021 WL 3748964 (N.D. Tex. Aug. 25, 2021) .................................. 7

*Tennesse v. Cardona*,
  2024 WL 3453880 (6th Cir. July 17, 2024) .................................... 2

*Tennessee v. Cardon*a,
  __ F. Supp. 3d __, 2024 WL 3019146 (E.D. Ky. June 17,
  2024) ............................................................................................. 2, 3, 8

*Texas v. Cardona*,
  __ F.Supp.3d __, 2024 WL 2947022 (N.D. Tex. June 11, 2024) ...... 8

*Texas v. EEOC*,
  633 F. Supp. 3d 824 (N.D. Tex. 2022) ............................................. 7

*Texas v. United States*,
  2024 WL 3405342 (N.D. Tex. July 11, 2024) .................................. 2

## Statutes

20 U.S.C. § 1681 ..................................................................................... 6, 9

20 U.S.C. § 1686 ..................................................................................... 5

## Other Authorities

Antonin Scalia & Bryan A. Garner, *Reading Law: The
  Interpretation of Legal Texts* (2012) ................................................. 9

John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387
  (2003) ............................................................................................... 10

John F. Manning, *What Divides Textualists from Purposivists?*,
  106 Colum. L. Rev. 70 (2006) ........................................................... 9

Samuel L. Bray, *The Mischief Rule*, 109 Geo. L.J. 967 (2021) ................ 9

## Regulations

34 C.F.R. § 106.31 ................................................................................... 6

34 C.F.R. § 106.32 ................................................................................... 6

34 C.F.R. § 106.33 ................................................................................... 6

34 C.F.R. § 106.34 ................................................................................... 6

iii

34 C.F.R. § 106.37 ...................................................................6

34 C.F.R. § 106.41 ...................................................................6

87 Fed. Reg. 41,390 (July 12, 2022) .........................................6

89 Fed. Reg. 33,474 (Apr. 29, 2024) ................................. passim

## INTEREST OF *AMICI CURIAE*\*
## AND STATEMENT OF ISSUES

Christian Educators Association International is an organization for Christian teachers and educators. It seeks to protect its members' constitutional and statutory rights to speak, work, and live by their faith while pursuing excellence in teaching. Through strategic initiatives, training, support, and legal coverage, Christian Educators works to encourage, equip, connect, and protect its members.

Christian Educators has members throughout the country who teach at public schools and who believe that sex is binary and people should cherish their sex, not seek to reject it. Many of its members share the religious belief that sex is an immutable characteristic and want to express that belief. Under the Rule, educators face potential punishment for expressing their beliefs, even outside of school, chilling protected speech in all aspects of their lives. Members also do not want to share restrooms and other private spaces with colleagues and students of the opposite sex because they believe this is inappropriate.

Female Athletes United was formed to defend equal opportunity, fairness, and safety in women's and girls' sports. FAU has members in the plaintiff states who participate on women's sports teams at schools

---

\* No counsel for a party authored this brief in whole or in part; no one, other than *amici* and their counsel, made a monetary contribution for its preparation or submission; and all parties have consented to its filing.

governed by Title IX. FAU members oppose allowing males to compete in women's sports because males have inherent physical advantages that make competing against them unfair and unsafe for female athletes. They also oppose being forced to share private spaces with males. FAU members want to advocate for women's sports, to explain the enduring physical differences between males and females, and to express the view that sex is real, binary, and unchangeable.

This Court's decision on the motion is significant to *amici* for two reasons. *First*, *amici* are among the plaintiffs that have successfully challenged the Rule in other jurisdictions, where court after court has issued the very relief that the district court here refused. *See Tennessee v. Cardon*a, 2024 WL 3019146 (E.D. Ky. June 17, 2024), *stay denied*, No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024); *Kansas v. U.S. Dep't of Educ.*, No. 5:24-CV-4041, 2024 WL 3273285 (D. Kan. July 2, 2024). The court below is the sole outlier. *See Oklahoma v. Cardona*, No. 5:24-CV-00461 (W.D. Okla. July 31, 2024), ECF 48; *Arkansas v. U.S. Dep't of Educ.*, No. 4:24-CV-636 (E.D. Mo. July 24, 2024), ECF 54; *Texas v. United States*, No. 2:24-cv-86, 2024 WL 3405342 (N.D. Tex. July 11, 2024); *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, 2024 WL 3381901 (N.D. Tex. July 11, 2024); *Louisiana v. U.S. Dep't of Educ.*, No. 3:24-CV-00563, 2024 WL 2978786 (W.D. La. June 13, 2024), *stay denied*, No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024). An

injunction from this Court would strengthen the consensus that the Rule is likely contrary to law.

*Second*, an injunction from this Court would protect *amici*'s members who live and work in the plaintiff states or travel there for interscholastic events. Christian Educators' members in the states of Alabama, Florida, Georgia, and South Carolina, who are not protected from the Rule's harms, *see Tennessee*, 2024 WL 3019146, at *44, would be protected by this Court's injunction. As to FAU, the *Kansas* injunction protects members at their own schools, but not at away games or meets. *See Kansas*, 2024 WL 3273285, at *20. This Court's injunction would provide that protection.

## SUMMARY OF ARGUMENT

For the past three years, administrative agencies have reimagined Title IX based on *Bostock v. Clayton County*, 590 U.S. 644 (2020). First, they issued "interpretations" and "guidance" documents declaring that *Bostock*'s reasoning applies to Title IX and mandating that sex-specific spaces and programs like locker rooms and sports teams be assigned based on gender identity. The Government repeatedly made that argument in courts across the country. This Court correctly rejected it two years ago. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 811–17 (11th Cir. 2022) (en banc). That precedent controls here—yet the district court waved it away. *Amici* write to underscore the Rule's unlawfulness in light of Title IX's text, structure, and context.

## ARGUMENT

## I.    The Rule's new definition of "sex-based discrimination" in 34 C.F.R. § 106.10 is contrary to law.

As this Court has explained, in 1972, the word "sex" referred to biological differences, not "gender identity." *Adams*, 57 F.4th at 813. Numerous other courts have agreed. *See supra* at 2. Yet the Rule says "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. 33,474, 33,886 (Apr. 29, 2024) (to be codified at 34 C.F.R. § 106.10). That is because,

the Department concludes, "sex discrimination" under Title IX "includes any discrimination that depends in part on consideration of a person's sex." *Id.* at 33,803. That is incorrect, as this Court concluded in *Adams* and many courts have since agreed.

**A.** Title IX forbids only *sex-based* discrimination in "any education program" (like classrooms and sports), whereas Title VII forbids discrimination directed against any individual based on various traits (like race and religion) "with respect to … employment." So Title IX's text contemplates unique aspects of sex-based distinctions in unique educational spaces. In contrast, Title VII treats an individual's sex in employment like race and religion, where none of these factors are "relevant." *Bostock*, 590 U.S. at 660.

The textual differences don't stop there. "Title IX and its implementing regulations prohibit discrimination on the basis of sex, but they also explicitly permit differentiating between the sexes in certain instances." *Adams*, 57 F.4th at 814. The Rule rejects this Court's holding. Beyond that, even the Department recognizes it cannot impose its gender-identity mandate on school "housing." 89 Fed. Reg. at 33,821. But its logic ignores the significance of the "living facilities" provision, 20 U.S.C. § 1686, which is no mere exception, but a rule of construction that informs the meaning of "discrimination."

On top of that, Title IX repeatedly allows schools to "treat[] males and females comparably as groups." *Bostock*, 590 U.S. at 665 (rejecting

this reading of Title VII). The statute exempts "father-son or mother-daughter activities" so long as "opportunities for reasonably comparable activities [are] provided for students of [both sexes]." 20 U.S.C. § 1681(a)(8). Housing for each sex must be "[c]omparable in quality and cost to the student." 34 C.F.R. § 106.32(b)(ii); *see also id.* § 106.32(c)(2) (similar). "[T]oilet, locker room, and shower facilities" must likewise be comparable. 34 C.F.R. § 106.33. And schools must "provide equal athletic opportunity for members of both sexes," *id.* § 106.41(c), but need not provide exactly the same sports or teams to boys and girls, *id.* § 106.41(b). The list goes on. *See, e.g., id.* § 106.31(c); *id.* § 106.34(b)(2); *id.* § 106.37(c). All this shows that *Bostock*'s logic cannot be transported into Title IX. The opposite reading would mean all these long-standing regulations violate Title IX's statutory text.

Even the Rule recognizes this difference, but only as to athletics. *See* 87 Fed. Reg. 41,390, 41,538 (July 12, 2022); *accord* 89 Fed. Reg. at 33,818. The Rule observes that prior regulations "have always permitted" sex distinctions in athletics. 89 Fed. Reg. at 33,819. But that is true of many other regulatory contexts too, like "toilet, locker room, and shower facilities." 34 C.F.R. § 106.33. And "biological sex is the sole characteristic on which [such regulations] and the privacy interests guiding [them] are based." *Adams*, 57 F.4th at 803 n.6.

All these regulations show that Title IX is not blind to sex—the Department's reading is wrong. Title IX calls for schools to recognize

6

that when it comes to matters of privacy and physical differences, boys and girls are not similarly situated.

**B.** Even if *Bostock*'s but-for-causation rationale applies to Title IX, the Rule goes too far in defining "sex-based discrimination" to include considerations like "sex stereotypes," "gender identity" and "sex characteristics." Multiple courts have recognized that Bostock did not create any new protected classes. *Texas v. EEOC*, 633 F. Supp. 3d 824, 831 (N.D. Tex. 2022); *Stollings v. Texas Tech Univ.*, No. 5:20-CV-250-H, 2021 WL 3748964, at *10 (N.D. Tex. Aug. 25, 2021). But the Rule's new definition does just that, elevating "gender identity" and other characteristics to protected-class status under Title IX.

Section 106.10 does not merely explain what the Department understands "sex" to mean, it defines "sex-based *discrimination*." Redefining Title IX's core rule with additional attributes contradicts the statute. That ignores *Adams*, where this Court explained that the Government's position would prohibit schools "from installing or enforcing the otherwise permissible sex-based carve-outs when the carve-outs come into conflict with a transgender person's gender identity." *Adams*, 57 F.4th at 814. That impermissible reading would "establish dual protection under Title IX based on *both* sex and gender identity when gender identity does not match sex." *Id.* That is contrary to law even under *Bostock*, and it conflicts with this Court's precedent in *Adams*.

## II.    The Rule's new de-minimis-harm provision in 34 C.F.R. § 106.31(a)(2) is contrary to law.

"[T]he biological differences between the sexes" are the basis for sex-based distinctions in private spaces. *Adams*, 57 F.4th at 809. And "'safeguarding … equal educational opportunities for men and women necessarily requires differentiation and separation' of the sexes at times." *Tennessee*, 2024 WL 3019146, at *9 (quoting *Texas v. Cardona*, 2024 WL 2947022, at *32 (N.D. Tex. June 11, 2024)). Yet the Rule equates these distinctions to "discrimination." 89 Fed. Reg. at 33,887. This too is contrary to law.

Section 106.31(a)(2)'s new form of discrimination is textually impermissible. Its new de-minimis-harm language appears nowhere in Title IX. Its reasoning is circular: "more than de minimis harm" is "legally cognizable injury," 89 Fed. Reg. at 33,814, and an injury is cognizable under Title IX if it "impose[s] more than de minimis harm," *id.* at 33,811. And its new form of discrimination is available based on gender identity alone. *Id.* at 33,887. That "add[s] words" and "impose[s] a new requirement" that Title IX does not include. *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024). And far from employing an "objective standard," the Rule says harm is cognizable only if it implicates a person's "subjective, deep-core sense of self." *Compare* 89 Fed. Reg. at 33,815, *with id.* at 33,809; *see also Muldrow*, 144 S. Ct. at 974–75

8

(explaining that an elevated harm showing leads to subjective evaluations of what counts as "significant").

This result undermines Title IX's textually identified purpose: to ensure no person is "denied the benefits of … any education program" on the basis of sex. 20 U.S.C. § 1681. Of course, that includes women and seeks to stop "discrimination against women in education." *Neal v. Bd. of Trs. of Cal. State Univs.*, 198 F.3d 763, 766 (9th Cir. 1999). By allowing gender identity to trump sex-based privacy protections, the new standard makes it impossible for students (particularly female students) to "participat[e] in" or receive "the benefits of" educational programs. 20 U.S.C. § 1681.

Courts should prefer "textually permissible interpretation[s] that further[] rather than obstruct[] the document's purpose …" Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012) (explaining presumption-against-ineffectiveness canon); *see also* Samuel L. Bray, *The Mischief Rule*, 109 Geo. L.J. 967, 968–76 (2021) (explaining how textualists can consider "the problem to which the statute was addressed, and also the way in which the statute is a remedy for that problem."); John F. Manning, *What Divides Textualists from Purposivists?*, 106 Colum. L. Rev. 70, 84 (2006) ("[T]extualists recognize that the relevant context for a statutory text includes the mischiefs the authors were addressing."). The de-minimis-harm standard falters at this most basic level.

9

It is also absurd. Under the Rule's logic, Congress *intended* schools to inflict legally cognizable harm. 89 Fed. Reg. at 33,818. That would mean Congress cared more about distinguishing "Boy Scouts" from "Girl Scouts" than preserving privacy in showers and locker rooms. This cannot be right. All this underscores that the Rule contradicts not just Title IX's text, purpose, and structure, but common sense too. *See* John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2461 (2003) ("[B]ecause people typically try to choose words to effect their desired ends, textual interpretation that accounts for contextual social usage, including colloquial usage, should eliminate … absurdity.").

The Rule also threatens women's sports. First, § 106.10 broadly redefines sex discrimination throughout the Rule to include gender identity. Second, § 106.11 makes clear that "this part," including § 106.10, "applies … to all sex discrimination occurring under a recipient's education program or activity …" Third, § 106.31(a)(2) exempts only § 106.41(b), not § 106.41(a), which bans sex discrimination in athletics. In short, § 106.10's general rule redefining sex-based discrimination applies to athletics. Indeed, the Government argued just last year that *Bostock* requires gender identity to control in Title IX athletics based on provisions that the Rule does not alter. Br. for the U.S. as Amicus Curiae in Supp. of Pl.-Appellant and Urging Reversal 27–28, *B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 541 (4th Cir. 2024), 2023 WL 2859726.

10

### III. The Rule infringes on First Amendment rights.

The Rule violates First Amendment freedoms. Among other things, it creates an amorphous, "broader standard" for hostile-environment claims. 89 Fed. Reg. at 33,498. Harassment need only be severe *or* pervasive. Complainants need not show "any particular harm" or denial to an educational program. *Id.* at 33,511. Harassment can be anything students consider "unwelcome" or that "limits" their ability to benefit. *Id.* at 33,884. And the Rule's harassment definition applies to speech online or outside the country. *Id.* at 33,535, 33,886.

The Rule forces students and teachers to use inaccurate pronouns and avoid saying sex is binary. Even the Rule admits that "misgendering" can be considered illegal harassment. 89 Fed. Reg. at 33,516. Plus, that harassment need not be severe. *Id.* at 33,498. Likewise, the Rule applauded punishing a student for wearing a t-shirt saying, "THERE ARE ONLY TWO GENDERS," because that speech "invades the rights of others." *Id.* at 33,504. So *amici*'s members reasonably fear that nearly anything they say—inside or outside the school setting—about sex or gender could be construed as sex stereotyping or harassment. This Court's precedent invalidates harassment definitions like this one. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1114–15, 1125 (11th Cir. 2022).

These harms are far from speculative. Just recently, the Government argued that a school policy requiring teachers to use

gender-neutral titles like "teacher" or "coach," but not honorifics and pronouns based on gender identity, creates a hostile environment under an equivalent standard. Statement of Interest of the U.S. of Am., *Wood v. Fla. Dep't. of Educ.*, No. 4:23-cv-00526, 2024 WL 3380723 (N.D. Fla. June 27, 2024); *see* 89 Fed. Reg. at 33,500 (stating the Title VII standard "aligns closely with the definition of hostile environment sexual harassment" the Rule applies to Title IX). The Department cannot now ignore the chill on protected speech.

*    *    *

As *amici* States ably explain, the Rule is inconsistent with the clear-statement rule, the major-questions doctrine, and other canons of construction required by the Constitution itself. Br. of States of Mississippi, et al. as Amici Curiae (11th Cir. Aug. 2, 2024), ECF 26-2 at 1–7. *Amici* here agree. The Rule is contrary to law.

## CONCLUSION

This Court should issue an injunction pending appeal.

Dated: August 7th, 2024

James A. Campbell
Jonathan A. Scruggs
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org

Respectfully submitted,

*/s/ Natalie D. Thompson*

John J. Bursch
Natalie D. Thompson*
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
nthompson@ADFlegal.org

*Practicing under the supervision
of D.C. bar members while bar
application is pending.*

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word-count limitation of Fed. R. App. P. 29(a)(5) because, according to the word-count feature of the program used to prepare it and excluding the items listed in Fed. R. App. P. 32(f), it contains 2,599 words and does not exceed 2,600 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

*/s/ Natalie D. Thompson*

Natalie D. Thompson
*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2024, I electronically filed the foregoing brief with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that counsel for all parties in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Natalie D. Thompson*

Natalie D. Thompson
*Counsel for Amici Curiae*