No. 24-12444

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE ELEVENTH CIRCUIT

———————————

STATE OF ALABAMA, et al.,

Plaintiffs-Appellants,

v.

U.S. SECRETARY OF EDUCATION, et al.,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Northern District of Alabama

———————————

### BRIEF FOR APPELLEES

———————————

*Of Counsel:*

LISA BROWN
*General Counsel*
*U.S. Department of Education*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

MELISSA N. PATTERSON
JACK STARCHER
DAVID L. PETERS
STEVEN A. MYERS
*Attorneys, Appellate Staff*
*Civil Division, Room 7232*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8648*

*State of Alabama v. U.S. Secretary of Education*, No. 24-12444

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendants-Appellees

certify that the following have an interest in the outcome of this appeal:

Alabama, State of

Alaska, State of

American Civil Rights Project

Arkansas, State of

Attorney General's Office of South Carolina

Axon, Annemarie Carney

Bachus Brom & Taylor LLC

Bailey, Andrew

Bernstein, C'Zar David

Binnall, Jesse

Binnall Law Group

Bird, Brenna

Boynton, Brian

Brown, Lisa

California, State of

Cardona, Miguel

Christian Educators Association International

*State of Alabama v. U.S. Secretary of Education*, No. 24-12444

Citizens Defending Freedom

Coleman, Russell

Consovoy McCarthy PLLC

Davy, Jim

Drummond, Gentner F.

Faer, Laura L.

Female Athletes United

Fitch, Lynn

Florida, State of

Flynn, Shawn M.

Formella, John M.

Generation Hope

Georgia Department of Law

Georgia, State of

Griffin, Tim

Goldfarb, Jon C.

Hilgers, Michael T.

Hill, Bridget

Idaho, State of

Independent Women's Law Center

*State of Alabama v. U.S. Secretary of Education*, No. 24-12444

Independent Women's Network

Indiana, State of

Iowa, State of

Jackley, Marty J.

Justice + Joy National Collaborative

Kansas, State of

Kentucky, State of

Knudsen, Austin

Kobach, Kris W.

Kopplin, Rebecca

Labrador, Raul R.

LaCour, Jr., Edmund Gerard

Louisiana, State of

Marshall, Steve

Matheny, Justin L.

McKasson, Lindsay R.

Miller, Edward A. R.

Mississippi, State of

Missouri, State of

Miyares, Jason S.

*State of Alabama v. U.S. Secretary of Education*, No. 24-12444

Mommies in the D

Montana, State of

Morenoff, Dan

Morrisey, Patrick

Murrill, Liz

Myers, Steven A.

National Nurse-Led Care Consortium

Nebraska, State of

New Hampshire, State of

New Jersey, State of

Norris, Cameron Thomas

North, Benjamin F.

North Dakota, State of

Office of the Attorney General of Alabama

Office of the Attorney General of Florida

Ohio, State of

Oklahoma, State of

Parents Defending Education

Patterson, Melissa N.

Paxton, Ken

*State of Alabama v. U.S. Secretary of Education*, No. 24-12444

Pennsylvania, State of

Percival II, James H.

Peters, David L.

Petrany, Stephen J.

Reyes, Sean D.

Riehl, Christina

Rokita, Theodore E.

South Carolina, State of

South Dakota, State of

Spate, Joseph D.

Speech First, Inc.

Skrmetti, Jonathan

Spate, Joseph David

Starcher, Jack

Stewart, Scott G.

Stop Abusive and Violent Environments

Taylor, Bryan McDaniel

Taylor, Treg

Tennessee, State of

Texas, State of

*State of Alabama v. U.S. Secretary of Education*, No. 24-12444

The Miller Firm

Thompson, Natalie

U.S. Breastfeeding Committee

U.S. Department of Education

U.S. Secretary of Education

Utah, State of

Vaseliou, Thomas S.

Virginia, State of

West Virginia, State of

Whitaker, Henry Charles

Wiggins Child Pantazis Fisher & Goldfarb

Wrigley, Drew H.

Wyoming, State of

Yost, Dave

## STATEMENT REGARDING ORAL ARGUMENT

The Court will hear argument on December 18, 2024.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION ........................................................3

STATEMENT OF THE ISSUE ...............................................................4

STATEMENT OF THE CASE ................................................................4

    A.    Title IX and the Rule ................................................................4

    B.    Prior Proceedings ......................................................................7

    C.    Related Proceedings .................................................................10

    D.    Standard of Review .................................................................11

SUMMARY OF ARGUMENT ............................................................. 12

ARGUMENT ....................................................................................... 17

I.    Plaintiffs Are Unlikely to Prevail on the Merits. .................................. 17

    A.    The Supreme Court's Order Denying an Emergency Stay Does Not Control This Appeal ...................................................17

    B.    Gender-Identity Discrimination Is Necessarily Sex Discrimination. ..................................................................18

    C.    Section 106.31(a)(2)'s De Minimis Harm Standard Effectuates Title IX's Text and Structure. ........................................24

    D.    The Rule's Hostile-Environment Harassment Standard Is Lawful and Raises No First Amendment Concerns. ................................33

II.    The Remaining Factors Weigh Against Preliminary Relief. ................................. 41

    A.    The District Court Did Not Clearly Err in Finding that Plaintiffs Failed to Establish Irreparable Harm. ........................................41

    B.    The Equities and Public Interest Weigh Against an Injunction. ..............43

III.    At a Minimum, Any Injunction Should Be Narrowly Tailored...........................44

CONCLUSION ......................................................................................................... 52

## TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s)**

*A.C. ex rel. M.C. v. Metropolitan Sch. Dist. of Martinsville,*
  75 F.4th 760 (7th Cir. 2023) ............................................................. 21

*Adams ex rel. Kasper v. School Bd. of St. Johns Cty.,*
  57 F.4th 791 (11th Cir. 2022) .................................... 8, 14, 22, 30, 31

*Arnold, Constable & Co. v. United States,*
  147 U.S. 494 (1893) ........................................................................ 23

*Bostock v. Clayton County,*
  590 U.S. 644 (2020) ............................. 2, 5, 6, 12, 19, 20, 21, 22, 23, 24, 49

*Burlington N. & Santa Fe Ry. Co. v. White,*
  548 U.S. 53 (2006) ..................................................................... 25, 27

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ........................................................................ 44

*Cannon v. University of Chi.,*
  441 U.S. 677 (1979) ........................................................................ 44

*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.,*
  526 U.S. 629 (1999) ....................................................... 9, 15, 35, 36, 37

*Department of Educ. v. Louisiana,*
  144 S. Ct. 2507 (2024) ........................................................ 11, 17, 51, 52

*Doe v. Samford Univ.,*
  29 F.4th 675 (11th Cir. 2022) ....................................................... 20, 48

*Dream Defs. v. Governor of Florida,*
  57 F.4th 879 (11th Cir. 2023) ....................................................... 39, 40

*Dunn v. Commodity Futures Trading Comm'n,*
  519 U.S. 465 (1997) ........................................................................ 29

*Eknes-Tucker v. Governor of Alabama,*
  80 F.4th 1205 (11th Cir. 2023) ........................................................ 22

*Florida v. Department of Health & Human Servs.,*
  19 F.4th 1271 (11th Cir. 2021) ..................................................... 16, 42

*Gateway City Church v. Newsom*,
141 S. Ct. 1460 (2021) ................................................................................. 18

*Gebser v. Lago Vista Indep. Sch. Dist.*,
524 U.S. 274 (1998) ............................................................................... 35, 37

*Gill v. Whitford*,
585 U.S. 48 (2018) ......................................................................................... 16

*Grabowski v. Arizona Bd. of Regents*,
69 F.4th 1110 (9th Cir. 2023) ...................................................................... 21

*Grimm v. Gloucester Cty. Sch. Bd.*,
972 F.3d 586 (4th Cir.), *as amended* (Aug. 28, 2020) ................................. 21

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993) ................................................................................... 34, 35

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005) ................................................................. 1, 2, 4, 24, 28, 33

*Kocsis v. Florida State Univ. Bd. of Trs.*,
788 F. App'x 680 (11th Cir. 2019) ............................................................... 20

*Members of the City Council of the City of L.A. v. Taxpayers for Vincent*,
466 U.S. 789 (1984) ...................................................................................... 40

*Mendoza v. Borden, Inc.*,
195 F.3d 1238 (11th Cir. 1999) .................................................................... 34

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ................................................................................. 25, 28

*New York v. U.S. Dep't of Educ.*,
477 F. Supp. 3d 279 (S.D.N.Y. 2020) .......................................................... 43

*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*,
896 F.2d 1283 (11th Cir. 1990) ......................................................... 41, 42-43

*Ohio v. EPA*,
144 S. Ct. 2040 (2024) .................................................................................. 48

*Parents Defending Educ. v. Olentangy Local Sch. Dist. Bd. of Educ.*,
109 F.4th 453 (6th Cir. 2024) ...................................................................... 40

*Pennsylvania v. DeVos,*
   480 F. Supp. 3d 47 (D.D.C. 2020) ................................................. 43

*Robinson v. Attorney Gen.,*
   957 F.3d 1171 (11th Cir. 2020) ...................................................18

*Rowles v. Curators of the Univ. of Mo.,*
   983 F.3d 345 (8th Cir. 2020) ...................................................... 39

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
   547 U.S. 47 (2006) .................................................................... 38

*Seminole Tribe of Fla. v. Florida,*
   517 U.S. 44 (1996) .................................................................... 23

*Speech First, Inc. v. Cartwright,*
   32 F.4th 1110 (11th Cir. 2022) ......................................... 9, 40, 41

*SunTrust Bank v. Houghton Mifflin Co.,*
   268 F.3d 1257 (11th Cir. 2001) ................................................. 51

*Swain v. Junior,*
   961 F.3d 1276 (11th Cir. 2020) ................................................. 11

*Threat v. City of Cleveland,*
   6 F.4th 672 (6th Cir. 2021) ....................................................... 28

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ......................................................... 41, 43, 44, 51

*Yelling v. St. Vincent's Health Sys.,*
   82 F.4th 1329 (11th Cir. 2023) .................................................. 34

**Statutes:**

Civil Rights Act of 1964, tit. VII:
   42 U.S.C. § 2000e-2(a)(1) ..................................................... 5, 20
   42 U.S.C. § 2000e-2(e) ............................................................. 23

Education Amendments of 1972, tit. IX:
   20 U.S.C. § 1681 ...................................................................... 31
   20 U.S.C. § 1681(a) ..................................... 4, 18, 20, 22, 25, 27, 48
   20 U.S.C. § 1681(a)(6)(A) .............................................. 6, 26, 28
   20 U.S.C. § 1681(a)(6)(B) ........................................................ 26

20 U.S.C. § 1682 ........................................................................... 4
20 U.S.C. §§ 1682-1683 ................................................................. 5
20 U.S.C. § 1686 ................................................................. 4, 6, 14

Education Amendments of 1974,
Pub. L. No. 93-380, tit. VIII, pt. D, § 844, 88 Stat. 484, 612 ..................... 26

20 U.S.C. § 1234(g)(a) .................................................................. 5

28 U.S.C. § 1292(a)(1) .................................................................. 3

28 U.S.C. § 1331 ........................................................................ 3

**Regulatory Materials:**

34 C.F.R. § 100.7(a)-(d) ............................................................... 5

34 C.F.R. § 100.8(a) .................................................................... 5

34 C.F.R. § 106.2 ................................................ 7, 33, 34, 38, 44, 45

34 C.F.R. § 106.6(d) ................................................................... 35

34 C.F.R. § 106.8(a) .................................................................... 5

34 C.F.R. § 106.8(a) (2020) ........................................................... 47

34 C.F.R. § 106.8(c) .................................................................... 5

34 C.F.R. § 106.8(c) (2020) ........................................................... 47

34 C.F.R. § 106.8(d) (2020) ........................................................... 47

34 C.F.R. § 106.8(f) .................................................................... 5

34 C.F.R. § 106.9 ...................................................................... 46

34 C.F.R. § 106.10 ............................................................. 6, 19, 44

34 C.F.R. § 106.16 ..................................................................... 46

34 C.F.R. § 106.30(a)(2) (2020) ...................................................... 34

34 C.F.R. § 106.31(a)(2) ....................................... 6, 26, 32, 44, 49

34 C.F.R. § 106.32 ................................................................................ 31

34 C.F.R. § 106.33 ............................................................................ 27, 30

34 C.F.R. § 106.34(a)(2) ....................................................................... 30

34 C.F.R. § 106.40(b) ............................................................................ 45

34 C.F.R. § 106.40(b)(3)(v) .................................................................... 5

34 C.F.R. § 106.44 .................................................................................. 5

34 C.F.R. § 106.44(j)(2) ......................................................................... 45

34 C.F.R. §§ 106.45-106.46 ................................................................ 5, 45

34 C.F.R. § 106.48 ................................................................................. 46

34 C.F.R. § 106.57(e)(2) ......................................................................... 5

34 C.F.R. § 106.71 ................................................................................. 45

34 C.F.R. § 106.71(a) (2020) ................................................................. 47

40 Fed. Reg. 24,128 (June 4, 1975) ....................................................... 31

45 C.F.R. § 86.1 (1975) .......................................................................... 47

45 C.F.R. § 86.3(a)-(b) (1975) ............................................................... 47

45 C.F.R. § 86.4(a) (1975) ...................................................................... 47

45 C.F.R. § 86.6(a) (1975) ...................................................................... 47

45 C.F.R. § 86.9(a) (1975) ...................................................................... 47

45 C.F.R. § 86.9(c) (1975) ...................................................................... 47

45 C.F.R. § 86.36(a)-(c) (1975) .............................................................. 47

45 C.F.R. § 86.37(a)(2) (1975) ............................................................... 47

45 C.F.R. § 86.37(b) (1975) .................................................................... 47

45 C.F.R. § 86.38(a) (1975) .................................................................... 47

45 C.F.R. § 86.39 (1975) ................................................................ 47

45 C.F.R. § 86.51(a)(4) (1975) ...................................................... 47

45 C.F.R. § 86.53 (1975) ................................................................ 47

45 C.F.R. § 86.56(b) (1975) ........................................................... 47

45 C.F.R. § 86.59 (1975) ................................................................ 47

62 Fed. Reg. 12,034 (Mar. 13, 1997) ........................................... 36

Exec. Order No. 14,021, § 2(a),
    86 Fed. Reg. 13,803 (Mar. 8, 2021) ......................................... 5

*Nondiscrimination on the Basis of Sex in Education Programs or Activities*
    *Receiving Federal Financial Assistance*,
    85 Fed. Reg. 30,026 (May 19, 2020) ................................. 5, 37, 40

*Nondiscrimination on the Basis of Sex in Education Programs or Activities*
    *Receiving Federal Financial Assistance*,
    89 Fed. Reg. 33,474 (Apr. 29, 2024) ............ 1, 6, 7, 19, 21, 25, 26, 27, 28, 29, 30, 31,
                                32, 33, 34, 35, 37, 38, 39, 40, 45, 46, 47, 48

*Revised Sexual Harassment Guidance: Harassment of Students by School*
    *Employees, Other Students, or Third Parties*,
    66 Fed. Reg. 5512 (Jan. 19, 2001) .......................................... 33-34

**Rule:**

11th Cir. R. 27-1(g) .................................................................... 18

## INTRODUCTION

Title IX prohibits sex discrimination in federal funding recipients' education programs and activities. As the Supreme Court has made clear, "Congress gave the statute a broad reach" to cover a "wide range of intentional unequal treatment." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). Congress also authorized the Department of Education to issue rules to effectuate the statute's sweeping prohibition on sex discrimination.

In April 2024, the Department exercised that authority by issuing a rule that makes a variety of amendments to its Title IX regulations. *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (Rule). The Rule does many things, ranging from revising recordkeeping requirements to guaranteeing access to lactation spaces for breastfeeding students and employees. Only three provisions of the Rule—and, in particular, how those provisions apply to discrimination on the basis of gender identity—are relevant here.

The first provision (§ 106.10) clarifies that discrimination on the basis of gender identity is necessarily also discrimination "on the basis of sex." The second (§ 106.31(a)(2)) provides that schools "discriminate" under Title IX when they differentiate on the basis of sex in a way that causes a person more than de minimis harm absent a statutory basis; as relevant here, it means that individuals must be permitted to use restrooms consistent with their gender identity. And the third

(§ 106.2's definition of hostile-environment harassment) recognizes that unwelcome sex-based conduct that is "subjectively and objectively offensive" and "so severe or pervasive that it limits or denies" a person's ability to participate in or benefit from an educational program constitutes hostile-environment harassment. All three provisions effectuate Title IX's "broad" prohibition on sex discrimination, *Jackson*, 544 U.S. at 175, and all three are consistent with precedent of this Court and the Supreme Court.

Plaintiffs' challenges to these provisions are meritless. Section 106.10 flows directly from the plain text of Title IX and the reasoning of the Supreme Court's decision in *Bostock v. Clayton County*, which recognizes that it is "impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 590 U.S. 644, 660 (2020). That essential insight—which the Supreme Court held followed unambiguously from the plain meaning of the phrase "because of sex"—is not confined to Title VII and applies equally to Title IX's prohibition against discrimination "on the basis of sex." Section 106.31(a)(2) likewise follows directly from the text and structure of Title IX, as well as Supreme Court precedent: Unless Congress has indicated otherwise, it violates Title IX's general nondiscrimination mandate to treat a person differently on the basis of sex when that differential treatment injures them (*i.e.*, causes more than de minimis harm). And § 106.2's definition of hostile-environment harassment, which requires recipients to address unwelcome sex-based conduct that limits or denies

2

students an education free from sex discrimination, is consistent with the standards that courts—including this one—have long applied in the Title IX and Title VII contexts.

In a comprehensive, 122-page opinion denying preliminary relief, the district court repeatedly faulted plaintiffs for their "conclusory and underdeveloped" legal arguments. Dkt. No. 58, at 8.[1] Nothing in plaintiffs' submissions to this Court cures that fundamental defect or demonstrates that the district court abused its discretion in declining to enter a preliminary injunction—an equitable remedy never awarded as of right. Nor does the fact that other courts have enjoined the Rule based on other plaintiffs' showings excuse these plaintiffs' failure to carry their burden of developing evidence and presenting legal argument sufficient to justify such relief. The Court should therefore affirm the judgment of the district court. And at an absolute minimum, any injunction should be far more limited than plaintiffs propose.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the jurisdiction of the district court under 28 U.S.C. § 1331. Dkt. No. 1, at 4. The district court denied a preliminary injunction on July 30, 2024, Dkt. No. 58, and plaintiffs appealed that day, Dkt. No. 60. This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

---

[1] District court documents are cited as "Dkt. No. #, at #," where the page number refers to the CM/ECF pagination.

## STATEMENT OF THE ISSUE

In April 2024, the Department issued a rule making numerous amendments to its regulations implementing Title IX of the Education Amendments of 1972. Finding that plaintiffs were unlikely to succeed in demonstrating that the handful of amendments they challenged were unlawful and that plaintiffs had failed to demonstrate irreparable harm, the district court denied a preliminary injunction. The question presented is whether the district court abused its discretion.

## STATEMENT OF THE CASE

### A.    Title IX and the Rule

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Congress gave the statute['s]" prohibition on sex discrimination "a broad reach" subject only to a "list of narrow" statutory exceptions and exclusions. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 175 (2005); *see* 20 U.S.C. §§ 1681(a), 1686. Congress also authorized the Department to "issu[e] rules, regulations, or orders of general applicability … consistent with achievement of the objectives of the statute." 20 U.S.C. § 1682. And Congress established a detailed administrative enforcement scheme requiring the Department to first attempt to secure compliance through voluntary means before it may suspend or terminate

federal financial assistance.  *See id.* §§ 1234g(a), 1682-1683; *see also* 34

C.F.R. §§ 100.7(a)-(d), 100.8(a).

Since Title IX's enactment, the Department has promulgated regulations

implementing the statute's prohibition on sex discrimination, including in 2020.  *See*

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal*

*Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020).  One month after publication

of the 2020 rule, the Supreme Court held that the prohibition on discrimination

"because of … sex" in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-

2(a)(1), necessarily encompasses discrimination because of sexual orientation and

gender identity.  *See Bostock v. Clayton County*, 590 U.S. 644, 660 (2020).  Following

*Bostock*, the President directed the Department to review the 2020 rule and existing

guidance "for consistency with governing law."  Exec. Order No. 14,021, § 2(a), 86

Fed. Reg. 13,803, 13,803 (Mar. 8, 2021).

After an extensive public engagement process, the Department issued the Rule.

Among other things, the Rule streamlines requirements related to Title IX

Coordinators, 34 C.F.R. § 106.8(a); revises recipients' notice of nondiscrimination and

record-keeping requirements, *id.* § 106.8(c), (f); ensures access to lactation spaces for

breastfeeding students and employees, *id.* §§ 106.40(b)(3)(v), 106.57(e)(2); addresses a

recipient's response to sex discrimination, *id.* § 106.44; and provides recipients

additional flexibility regarding procedures to respond to claims of sex discrimination,

including sex-based harassment, *id.* §§ 106.45-106.46.

This appeal concerns other provisions of the Rule. Section 106.10 describes the scope of prohibited sex discrimination under Title IX. It provides that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 34 C.F.R. § 106.10. As the Department explained, "discrimination on each of those bases is sex discrimination because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female.'" 89 Fed. Reg. at 33,802 (quoting *Bostock*, 590 U.S. at 655).

Separately, § 106.31(a)(2) details when separation or differentiation on the basis of sex constitutes prohibited sex discrimination. It sets out the general principle that Title IX permits "different treatment or separation on the basis of sex" only to the extent that such differential treatment or separation does not "discriminate[] … by subjecting a person to more than de minimis harm." 34 C.F.R. § 106.31(a)(2). Section 106.31(a)(2) further provides that a policy or practice that "prevents a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex." *Id.* The provision recognizes, however, that Congress carved out certain contexts in which a school may permissibly differentiate on the basis of sex even though greater than de minimis harm may result. *Id.*; *see, e.g.*, 20 U.S.C. § 1681(a)(6)(A) (membership in fraternities or sororities); *id.* § 1686 (maintenance of sex-separate living facilities).

6

Finally, § 106.2 defines many terms, including "[s]ex-based harassment." 34 C.F.R. § 106.2. One form of such harassment is "[h]ostile environment harassment," defined as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (*i.e.*, creates a hostile environment)." *Id.* Section 106.2 explains that "[w]hether a hostile environment has been created is a fact-specific inquiry that includes consideration" of several enumerated factors. *Id.*

Nothing in the Rule alters the existing regulation regarding sex-separate athletic teams, which is the subject of a separate rulemaking. *See* 89 Fed. Reg. at 33,817.

## B.    Prior Proceedings

Plaintiffs are Alabama, Florida, Georgia, and South Carolina, as well as four membership organizations. Plaintiffs challenged the Rule's treatment of gender identity as it applies to contexts such as restrooms and pronouns, as well as a few provisions governing grievance procedures. *See* Dkt. No. 7-1, at 10-11 (complaining about the Rule's effect on "preferred pronouns" and "women's bathrooms, locker rooms, and showers" (quotation marks omitted)); *id.* at 46-55 (addressing grievance procedures). Plaintiffs sought preliminary injunctive relief.

On July 30, 2024, the district court denied plaintiffs' motion, explaining that plaintiffs' legal arguments were "conclusory and under-developed." Dkt. No. 58, at 8; *accord, e.g.*, *id.* at 14 (plaintiffs' obfuscation "serves no appropriate purpose and

7

intentionally burdens the court"); *id.* at 15 (declining to "concoct arguments where Plaintiffs have fallen short"); *id.* at 85 (plaintiffs "have not adequately raised" arguments); *id.* at 115 (declining to "make Plaintiffs' argument … for them").

The court nevertheless addressed plaintiffs' challenges and found them unlikely to succeed.  Addressing § 106.10, the court agreed with plaintiffs that "[t]he word 'sex' as used in Title IX is unambiguous and refers only to biological sex."  Dkt. No. 58, at 37.  It explained, however, that plaintiffs "do not trouble themselves with presenting an argument on how § 106.10 redefines the word 'sex.'"  *Id.* at 39.  Rejecting plaintiffs' contention that § 106.10 was inconsistent with *Adams ex rel. Kasper v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc), the district court stated that "the issue presented in *Adams* was whether the word 'sex' included 'gender identity,' not whether sex discrimination includes discrimination based on sexual orientation or transgender status."  Dkt. No. 58, at 44.

With respect to § 106.31(a)(2), the district court found that "Plaintiffs do not explain their position" that it is contrary to law.  Dkt. No. 58, at 50.  The court also rejected the contention that the provision is arbitrary and capricious, explaining that plaintiffs' arguments were "not that the Department exceeded the zone of reasonableness, but rather, that Plaintiffs disagree as a policy matter."  *Id.* at 64.  The court further explained that the Rule adequately accounted for issues related to privacy, safety, compliance, and parental rights.  *Id.* at 64-67.

8

As to § 106.2's hostile-environment standard, the court explained that the Department was not bound by *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999). As the court explained, *Davis* "did not address the harassment standard Title IX imposes on school administrators to maintain their Title IX funding, which is the standard the Final Rule amends." Dkt. No. 58, at 70. And it held that § 106.2's hostile-environment standard likely did not violate the First Amendment, explaining that *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1124 (11th Cir. 2022), did not counsel otherwise. Dkt. No. 58, at 74-76.[2]

The district court further held that plaintiffs failed to establish irreparable harm. It found that in light of the statutory scheme, "denial of funding is not imminent." Dkt. No. 58, at 111. Plaintiffs could not rely on constitutional injuries, as they "do not clearly argue, much less show, a substantial likelihood of success on the merits" of any constitutional claim. *Id.* at 113. While the states complained about the Rule's preemptive effect, most failed to identify, with specificity, statutes that actually conflict with the Rule. *Id.* at 114-19. And as to the limited provisions that do conflict, plaintiffs were unlikely to "succe[ed] on the merits of their argument that the relevant parts of the Final Rule are unlawful." *Id.* at 119. Finally, plaintiffs could not rely on

---

[2] The court also rejected plaintiffs' arguments concerning grievance procedures, Dkt. No. 58, at 94-109, but plaintiffs raise no objection to that ruling here, *see* Opening Br. 12 n.1.

9

asserted compliance costs, as they "offer no evidence of what the compliance costs will be." *Id.* at 121.

Although the district court determined that no relief was warranted, it still addressed severability. Dkt. No. 58, at 29-36. It recognized that plaintiffs sought an injunction as to "the entirety of the Final Rule, even though they challenge only parts of it." *Id.* at 30. But even though "Plaintiffs bear the burden of establishing their entitlement to this extraordinary relief," they "did not even attempt to shoulder this burden in their initial brief." *Id.* at 30-31. Thus, although the district court ultimately did not enter relief, it "assume[d] that the regulations in the Final Rule are severable." *Id.* at 36 (citing severability provisions).

Plaintiffs appealed and sought an injunction pending appeal. Dkt. Nos. 60, 63. The district court denied the motion, finding that plaintiffs' arguments "merely repeat their arguments in their motion for a preliminary injunction." Dkt. No. 64, at 5. After this Court entered an administrative injunction, Order, July 31, 2024, however, a divided motions panel entered an injunction pending appeal, *see* Order, Aug. 22, 2024 (Injunction Order). Judge Wilson dissented.

## C.    Related Proceedings

Numerous other challenges to the Rule are pending in cases around the country. In two such cases, the Department filed applications asking the Supreme Court to partially stay preliminary injunctions pending appeal. The Court denied the applications, reasoning that "[i]n this emergency posture in this Court, the burden is

on the Government as applicant" to show entitlement to relief and that "[o]n this limited record and in its emergency applications, the Government has not provided this Court a sufficient basis to disturb the lower courts' interim conclusions that the three provisions found likely to be unlawful are intertwined with and affect other provisions of the rule." *Department of Educ. v. Louisiana*, 144 S. Ct. 2507, 2510 (2024) (per curiam). The Court also stated that it "today accept[ed] that the plaintiffs were entitled to preliminary injunctive relief as to [the] three provisions of the rule" challenged by plaintiffs, noting that the dispute before the Court concerned whether "other provisions of the new rule should still be permitted to take effect in the interim period while the Government's appeals of the preliminary injunctions are pending in the Courts of Appeals." *Id.* at 2509-10. Justice Sotomayor—joined by Justices Kagan, Gorsuch, and Jackson—dissented, explaining that the "injunctions are overbroad" because they "bar the Government from enforcing the entire rule—including provisions that bear no apparent relationship to [the plaintiffs'] alleged injuries." *Id.* at 2510 (Sotomayor, J., dissenting in part).

### D.    Standard of Review

This Court reviews the district court's denial of a preliminary injunction for abuse of discretion. *Swain v. Junior*, 961 F.3d 1276, 1285 n.3 (11th Cir. 2020). "The court's underlying legal conclusions are reviewed de novo, and its factual findings are reviewed for clear error." *Id.*

## SUMMARY OF ARGUMENT

**I.**    The district court correctly held that none of plaintiffs' claims is likely to succeed.

**A.**    The Supreme Court's denial of the Department's emergency stay requests in other cases does not control this Court's decision.  Those cases involve different showings by different plaintiffs, and the Supreme Court's order made no mention of *Bostock,* the text of Title IX, or any other merits issue.  Rather, the Court's order was limited to a stay-stage determination.  Similarly, the decision of the motions panel does not bind the merits panel.

**B.**    The provision addressing the scope of prohibited sex discrimination (§ 106.10) properly recognizes that gender-identity discrimination is necessarily also sex discrimination, such that it violates Title IX to discriminate against a student simply for being transgender.  That conclusion follows directly from the statute's plain text and the reasoning of *Bostock v. Clayton County*, 590 U.S. 644 (2020), which interpreted materially identical language in Title VII.  That is so, as *Bostock* made clear, even assuming "sex" is understood to refer only to physiological or "biological distinctions between male and female."  *Id.* at 655 (quotation marks omitted).

None of plaintiffs' reasons for distinguishing *Bostock* withstands scrutiny.  Title IX sets out a causation standard no more stringent than Title VII's but-for standard, and the texts of the two statutory provisions demonstrate that they serve the same purpose of eradicating sex discrimination.  Title IX's statutory exemptions do not

12

suggest that its core prohibition against discrimination "on the basis of sex" can be read differently than Title VII's prohibition against discrimination "because of sex." Nor do any clear-statement principles suggest otherwise, for Title IX, like Title VII, unambiguously prohibits discrimination on the basis of gender identity.

**C.**    Section 106.31(a)(2) sets out the circumstances in which drawing sex-based distinctions constitutes prohibited discrimination.  Title IX does not prohibit all such distinctions; rather, it bars only those that cause cognizable (*i.e.*, more than de minimis) harm.  At the same time, Congress identified certain contexts—such as fraternity membership—in which recipients may draw sex-based distinctions even if they cause harm.  Section 106.31(a)(2) thus effectuates Title IX's text and structure by providing that, absent a statutory basis, a recipient may not separate or differentiate on the basis of sex in a manner that subjects a person to more than de minimis harm.

The Rule properly explains that preventing individuals from accessing sex-separate programs and activities consistent with their gender identity inflicts cognizable harm.  Recipients therefore must permit individuals to access sex-separate facilities or activities consistent with their gender identity, unless those programs or facilities fall within a congressionally recognized exclusion.  In the context of school restrooms, separation by sex generally does not violate Title IX because a cisgender male suffers no sex-based harm from being excluded from a comparable women's restroom, and vice versa.  But because restrooms are not exempt from Title IX's nondiscrimination mandate and denying individuals the ability to access sex-separate

restrooms consistent with their gender identity causes cognizable harm, preventing transgender students from accessing restrooms that align with their gender identity would violate Title IX, as various courts have found. Section 106.31(a)(2) does not conflict with Title IX because it reflects the deliberate choices that Congress itself drew in enacting the statute.

Plaintiffs are also wrong that § 106.31(a)(2)'s de minimis harm standard is foreclosed by this Court's decision in *Adams ex. rel. Kasper v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc). In *Adams*, this Court upheld a policy preventing transgender students from accessing sex-separate restrooms that aligned with their gender identity on the assumption that the policy fit into the statutory carve-out for sex-separate living facilities in 20 U.S.C. § 1686. But *Adams* was decided before the issuance of the Rule. As the Department subsequently explained, § 1686's carve-out for living facilities is narrow and has never been understood to authorize the longstanding regulations governing restrooms, which were promulgated pursuant to Title IX's general nondiscrimination mandate, not § 1686. Accordingly, the Court's unscrutinized assumptions in *Adams* about Title IX's implementing regulations do not control here.

**D.**    The district court also correctly rejected plaintiffs' challenge to § 106.2's definition of hostile-environment harassment. That standard closely tracks the Department's longstanding interpretation of Title IX as well as the standard applied for evaluating hostile-environment harassment under Title VII. Prior to this Rule, no

14

court had found those standards to be unlawful or in conflict with the First Amendment.  And if any doubt remained, the Rule makes clear that no provision requires or authorizes a recipient to violate anyone's First Amendment rights when addressing sex-based harassment.

Plaintiffs incorrectly assert that the Rule's hostile-environment standard is invalid because it departs in certain respects from the standard for judicially implied damages actions announced in *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999).  But *Davis* addressed the "scope of liability in private damages actions" under Title IX's judicially implied right of action, *id.* at 641; it does not suggest that the standard for damages liability controls in the separate administrative-enforcement context.  Indeed, the Supreme Court recognized that the standards may differ, differentiating between "defin[ing] the scope of the behavior that Title IX proscribes" and determining what conduct "support[s] a private suit for money damages."  *Id.* at 639.

Plaintiffs are likewise mistaken in asserting that the hostile-environment standard compels speech or is overbroad.  The Rule neither compels any particular speech nor requires anyone to affirm any particular viewpoint; it merely requires schools to address conduct that creates a hostile environment in their education programs.  Nor is the standard overbroad; it defines prohibited harassment narrowly, in language with common usage in the nondiscrimination context.  Even if the bar on harassing conduct occasionally sweeps in speech, any impact on protected speech is

15

not so substantial, either in absolute or relative terms, as to raise overbreadth concerns.

**II.**    The remaining factors favor the government.  The district court did not err, let alone clearly, in finding that plaintiffs failed to establish irreparable harm stemming from the provisions of the Rule that they challenge.  Plaintiffs complain that the Rule preempts conflicting state law, but it is "black-letter law" that such preemption, standing alone, is not irreparable injury.  *Florida v. Department of Health & Human Servs.*, 19 F.4th 1271, 1291 (11th Cir. 2021).  Nor may plaintiffs rely on purported constitutional injuries, having cited no evidence to show that any such injuries are imminent.  Plaintiffs' invocation of compliance costs fails because they made no showing that their costs were sufficiently unusual or extensive to justify the extraordinary remedy of a preliminary injunction.  And the equities plainly favor the implementation of a regulation intended to fight sex discrimination.

**III.**    Finally, the preliminary injunction plaintiffs seek is overbroad.  Plaintiffs challenge only three provisions of the Rule, and even then, only their application to specific contexts involving gender-identity discrimination.  The Department's severability determinations make clear that the remaining provisions could and should take effect even if those three provisions were enjoined; no judicial guesswork is required to divine the Department's intent.  An injunction barring enforcement of the entire Rule would vastly exceed what is necessary to redress "the plaintiff's particular injury."  *Gill v. Whitford*, 585 U.S. 48, 73 (2018).

16

# ARGUMENT

## I.    Plaintiffs Are Unlikely to Prevail on the Merits.

### A.    The Supreme Court's Order Denying an Emergency Stay Does Not Control This Appeal.

The Supreme Court's denial of the Department's emergency stay requests in different matters brought by different plaintiffs does not control this Court's review of the district court's denial of a preliminary injunction in this case.  The Supreme Court's order is not a merits determination, and it makes no mention of *Bostock* or the text of Title IX.  Plaintiffs' claim that the Court reached out to "answer[] the same question presented here" is therefore entirely implausible.  Opening Br. 22.  To the contrary, the Court's order merely noted that "all Members of the Court *today* accept[ed]" that the plaintiffs were entitled to preliminary relief as to the challenged provisions, a statement describing only a stay-stage determination regarding the preliminary injunctions, as the dissent made clear.  *Department of Educ. v. Louisiana*, 144 S. Ct. 2507, 2509 (2024) (per curiam) (emphasis added); *see id.* at 2510 (Sotomayor, J., dissenting in part) ("For now, on the briefing and record currently before us, I would stay the preliminary injunctions except as to the three [challenged] provisions … .").  Moreover, the Supreme Court noted that the Sixth Circuit had "already expedited its consideration of the case and scheduled oral argument for October" and emphasized that it "expect[ed] that the Courts of Appeals will render their decisions with appropriate dispatch."  *Id.* at 2510 (per curiam).  That observation would have made

little sense if the Supreme Court had already issued a "binding" opinion.  Opening Br. 22-23.[3]

Similarly, plaintiffs concede that the motions panel's decision to grant an injunction pending appeal in this case does not bind the merits panel, as "this Court's opinions on motions have no horizontal precedential effect on other panels." Opening Br. 22 (emphasis omitted); *see* 11th Cir. R. 27-1(g) ("A ruling on a motion or other interlocutory matter, whether entered by a single judge or a panel, is not binding upon the panel to which the appeal is assigned on the merits, and the merits panel may alter, amend, or vacate it."); *accord, e.g.*, Injunction Order 10 (noting that order did "not conclusively resolve the merits of the underlying appeal" (alteration omitted)) (quoting *Robinson v. Attorney Gen.*, 957 F.3d 1171, 1177 (11th Cir. 2020)).

**B.    Gender-Identity Discrimination Is Necessarily Sex Discrimination.**

Title IX prohibits discrimination "on the basis of sex."  20 U.S.C. § 1681(a). Section 106.10 describes the scope of that prohibition, explaining that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation,

---

[3]  Plaintiffs cite (at 22) *Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021), for the proposition that the Supreme Court's decisions on motions can have precedential effect, but that case suggests only that such decisions are binding when courts of appeals are presented with identical motions seeking interim relief.  *See id.* at 1460 (faulting Ninth Circuit for not granting "[a]pplication for injunctive relief").  *Gateway City Church* does not suggest that the Supreme Court's decision on a stay application can resolve the merits of an underlying appeal.

and gender identity," 34 C.F.R. § 106.10, "because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female,'" 89 Fed. Reg. at 33,802 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 655 (2020)). Section 106.10 thus makes clear that Title IX prohibits actions like excluding a student from homecoming for being pregnant, giving a student detention for being gay, or barring a student from band for being transgender. In contrast, it is a separate provision— § 106.31(a)(2)—that details when separation or differentiation on the basis of sex constitutes prohibited sex discrimination. It is thus § 106.31(a)(2), not § 106.10, that addresses when it constitutes discrimination to deny a person access to traditionally sex-separate spaces like restrooms and locker rooms consistent with their gender identity.[4] Plaintiffs' attacks on § 106.10 are almost entirely focused on requirements relating to restrooms and locker rooms that are addressed by § 106.31(a)(2), not § 106.10.

1.      Properly understood, § 106.10 reflects a straightforward application of *Bostock*'s reasoning. There, the Supreme Court confronted the provision of Title VII making it unlawful "for an employer … to discriminate against any individual …

---

[4] Plaintiffs misconstrue the Rule in suggesting that § 106.31(a)(2) provides "examples" of conduct proscribed by § 106.10. Opening Br. 23 (quoting 89 Fed. Reg. at 33,528). As the Rule explains, § 106.10 "helps clarify the scope of sex discrimination" by identifying "bases of discrimination that involve consideration of sex," 89 Fed. Reg. at 33,802 (emphasis omitted), whereas § 106.31 "include[s] examples of prohibited sex discrimination" under the statute, *id.* at 33,528.

because of such individual's … sex." *Bostock*, 590 U.S. at 655 (quoting 42 U.S.C. § 2000e-2(a)(1)).  The Court explained that Title VII's "because of" language "incorporates the 'simple' and 'traditional' standard of but-for causation."  *Id.* at 656 (quotation marks omitted).  "[S]ex is necessarily a but-for cause" of discrimination on the basis of sexual orientation or gender identity, the Court explained, "because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex."  *Id.* at 660-61 (emphasis omitted).  Such discrimination would, for example, "penalize[] a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth."  *Id.* at 660.  That is true even on the assumption that "sex" in Title VII "refer[s] only to biological distinctions between male and female," *id.* at 655 (quotation marks omitted), and even without having to decide how the insight applies to sex differentiation in contexts such as "bathrooms, locker rooms, and dress codes," *id.* at 681.

*Bostock*'s reasoning applies with equal force to Title IX's prohibition against discrimination "on the basis of sex."  20 U.S.C. § 1681(a).  Title IX imposes a causation standard no more stringent than but-for causation under Title VII.  *See Doe v. Samford Univ.*, 29 F.4th 675, 685-87 (11th Cir. 2022); *see also id.* at 696 (Jordan, J., concurring) (agreeing with "the majority's articulation of the substantive Title IX standard," which is "not inconsistent with" *Bostock*'s use of "but-for causation"); *Kocsis v. Florida State Univ. Bd. of Trs.*, 788 F. App'x 680, 686 (11th Cir. 2019) (per curiam)

20

("Causation [under Title IX] must be established according to traditional principles of but-for causation … ."). And as *Bostock* made clear, "sex is necessarily a but-for cause" of discrimination on the basis of sexual orientation or gender identity. 590 U.S. at 661 (emphasis omitted). A school, no less than an employer, engages in sex discrimination when it "penalizes a person … for traits or actions that it tolerates" in persons identified as a different sex "at birth." *Id.* at 660. That is why various courts have concluded that, in light of *Bostock*, discrimination on the basis of sexual orientation and gender identity are necessarily forms of prohibited sex discrimination under Title IX. *See, e.g.*, *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir.), *as amended* (Aug. 28, 2020); *A.C. ex rel. M.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023). That conclusion does not depend on viewing the term "sex" in Title IX to mean anything other than "physiological or 'biological distinctions between male and female.'" 89 Fed. Reg. at 33,802 (quoting *Bostock*, 590 U.S. at 655).

**2.** None of plaintiffs' arguments calls that conclusion into question. Plaintiffs observe that *Adams* interprets "sex" to mean only sex assigned at birth, Opening Br. 24; *accord* Injunction Order 11, but the Department is not asking this Court to hold otherwise in this appeal, as *Bostock* plainly holds that gender-identity discrimination is also sex discrimination even accepting that "sex" refers to "biological

distinctions between male and female." 590 U.S. at 655 (quotation marks omitted).[5] And while plaintiffs suggest that *Adams* forecloses the application of *Bostock* beyond Title VII, Opening Br. 24, *Adams* contains no such holding. To the contrary, *Adams* acknowledged that "*Bostock* held that discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex," but stated that conclusion "is not in question in this appeal." *Adams ex. rel. Kasper v. School Bd. of St. Johns Cty.*, 57 F.4th 791, 808-09 (11th Cir. 2022) (en banc) (quotation marks omitted). The heart of *Adams'* Title IX analysis concerned whether the plaintiff was entitled to use the restroom consistent with his gender identity—an issue that § 106.10 does not govern. Plaintiffs' reliance (at 24) on *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), is similarly misplaced. That case concerned the meaning of the Equal Protection Clause, not Title IX. Dkt. No. 58, at 44-45; *see Eknes-Tucker*, 80 F.4th at 1228-29 (distinguishing *Bostock* by observing that "[t]he Equal Protection Clause contains none of the text that the Court interpreted" there). And nothing in *Eknes-Tucker* otherwise indicates that *Bostock*'s reasoning is limited to Title VII.

---

[5] Plaintiffs suggest that *Adams* rejected such an argument, *see* Opening Br. 24 (citing *Adams*, 57 F.4th at 814 n.7). The Court's aside, however, simply suggested that reading Title IX to bar a "policy separating on the basis of 'sex'" would "swallow the carve-outs and render them meaningless." *Adams*, 57 F.4th at 814 n.7. As explained more fully below, the Rule recognizes that the nondiscrimination mandate at 20 U.S.C. § 1681(a) is limited by statutory exceptions and exclusions. And as for the regulatory exceptions (like the one for restrooms discussed in *Adams*), the Rule makes clear—consistent with settled understandings of discrimination—that sex separation only amounts to prohibited discrimination where it causes cognizable harm.

22

It is of course true that *Bostock* arose in the context of a Title VII claim, but that is no warrant for disregarding the Court's reasoning, which makes plain that it is "impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 590 U.S. at 660. After all, lower courts are bound not only by "the holdings of … prior cases, but also to their explications of the governing rules of law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (quotation marks omitted). Plaintiffs may not like what the Supreme Court had to say about sex discrimination in *Bostock*, but there is no basis for refusing to apply its teaching to a statute with functionally identical text.

Nor is it pertinent that Title IX includes certain statutory exceptions, Opening Br. 24-25, for those provisions hardly compel a different understanding as to the scope of prohibited sex discrimination in the first instance. Title VII also contains statutory exceptions that allow for sex differentiation. *See* 42 U.S.C. § 2000e-2(e) (bona fide qualifications). Yet the Supreme Court still held that gender-identity discrimination is necessarily also sex discrimination. Indeed, the presence of statutory provisions that explicitly permit sex differentiation in certain contexts under Title IX only reinforces the Rule's conclusion: They show that Congress understood that Title IX's general prohibition against sex discrimination otherwise applies. *See Arnold, Constable & Co. v. United States*, 147 U.S. 494, 499 (1893) ("[T]he exception of a particular thing from general words proves that, in the opinion of the lawgiver, the

thing excepted would be within the general clause had the exception not been made."
(quotation marks omitted)).

Finally, plaintiffs are wrong that § 106.10 is somehow suspect under the
Spending Clause. Opening Br. 24. As already explained, discrimination on the basis
of gender identity is necessarily also sex discrimination covered by Title IX's "starkly
broad terms," *Bostock*, 590 U.S. at 680, even on the understanding that the statute
refers to biological differences between men and women. *Cf. Jackson v. Birmingham Bd.
of Educ.*, 544 U.S. 167, 174-75 (2005) (holding that Title IX's private right of action
encompasses retaliation claims even though the statute does not specifically mention
retaliation). Any "elephant," then, "has never hidden in a mousehole; it has been
standing before us all along." *Bostock*, 590 U.S. at 680. Congress did not need to
speak any more clearly than it did.

### C.  Section 106.31(a)(2)'s De Minimis Harm Standard Effectuates Title IX's Text and Structure.

Section 106.31(a)(2) is the provision detailing when otherwise permissible
separation or differentiation on the basis of sex constitutes prohibited sex
discrimination. It provides that subject to certain congressionally permitted
exceptions, recipients may not differentiate on the basis of sex when doing so causes
more than de minimis harm. Plaintiffs contend that § 106.31(a)(2)'s application to
certain sex-separate programs and activities—like school restrooms—contravenes

Title IX and is foreclosed by this Court's decision in *Adams*, Opening Br. 27-28.

Neither argument withstands scrutiny.[6]

    **1.**    Section 106.31(a)(2) effectuates Title IX's plain text, which prohibits

"discrimination" on the basis of sex. 20 U.S.C. § 1681(a). As the Supreme Court has

explained, "the term 'discriminate against' refers to distinctions or differences in

treatment that injure protected individuals." *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 59 (2006); *see Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (same).

Accordingly, the Department "does not interpret Title IX to prohibit all sex-based

distinctions or separation." 89 Fed. Reg. at 33,814. Rather, Title IX's

nondiscrimination mandate prohibits "only" those sex-based distinctions "that

subject[] any person to legally cognizable injury—*i.e.*, more than de minimis harm."

*Id.* at 33,814. The Rule thus explains that where that mandate applies, recipients

generally may not separate or differentiate on the basis of sex where doing so causes

harm.

    At the same time, the Rule recognizes that in certain contexts Congress

permitted recipients to separate or distinguish on the basis of sex, even if doing so

---

[6] As the district court explained, plaintiffs did not argue below that
§ 106.31(a)(2) is contrary to law, "avoid[ing] § 106.31(a)(2) throughout their brief,
citing to it only once in their background section and providing explicit argument
about it only in its argument that the treatment of bathrooms is arbitrary or
capricious." Dkt. No. 58, at 48. Plaintiffs' failure to properly raise their contrary-to-
law claims in district court is an independent ground to affirm the court's denial of a
preliminary injunction as to § 106.31(a)(2).

causes harm.  *See* 89 Fed. Reg. at 33,816.  Those limited contexts permit, among other things, sex-separate fraternities and sororities, 20 U.S.C. § 1681(a)(6)(A); voluntary youth service organizations, *id.* § 1681(a)(6)(B); and "living facilities," *id.* § 1686.[7]  The Rule effectuates Congress's decision to treat those contexts differently by excepting them from § 106.31(a)(2)'s de minimis harm standard.  89 Fed. Reg. at 33,816.

The Rule further specifies how § 106.31(a)(2) applies to gender-identity discrimination.  The Rule explains that, except as provided in the recognized exceptions, recipients must permit individuals to access sex-separate programs and activities consistent with their gender identity because "prevent[ing] a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex."  34 C.F.R. § 106.31(a)(2).  As relevant here, the Department has long recognized that sex separation "in the context of bathrooms or locker rooms[] is not presumptively unlawful sex discrimination" because a cisgender male suffers no sex-based harm from being excluded from a comparable women's restroom or locker room, and vice

---

[7] As plaintiffs acknowledge, Opening Br. 8, Congress also legislated separately regarding Title IX's application to athletics, *see* Education Amendments of 1974, Pub. L. No. 93-380, tit. VIII, pt. D, § 844, 88 Stat. 484, 612.  The Rule thus explains that sex-separate sports teams fall outside § 106.31(a)(2)'s de minimis harm standard.  *See* 89 Fed. Reg. at 33,816-17.  The district court (like every other court to address challenges to the Rule) correctly recognized that the Rule does not implicate the regulation concerning sex-separate athletic teams, which is the subject of a different, ongoing rulemaking.  *See* Dkt. No. 58, at 114 (explaining that "sports regulations are not before the court, and the Final Rule plainly permits such sex separation").

versa. 89 Fed. Reg. at 33,818. That is why existing regulations have long permitted, and continue to permit, sex-separate "toilet, locker room, and shower facilities," so long as the facilities are "comparable." 34 C.F.R. § 106.33. But it violates Title IX to bar transgender students from accessing restrooms that align with their gender identity because doing so does cause cognizable harm and because restrooms are not exempted from the statute's general nondiscrimination mandate. 89 Fed. Reg. at 33,818.

**2.** Although plaintiffs purport to "question[]" various aspects of § 106.31(a)(2)'s operation,[8] Opening Br. 9, their contrary-to-law claims are narrower. *See* Opening Br. 27-28. They assert that § 106.31(a)(2) contravenes Title IX because "the concept of 'de minimis' appears nowhere in the statute," Opening Br. 28, and because the provision "renders Title IX's exemptions nonsense," *id.* 27 (quotation marks omitted). Those arguments are incorrect.

Section 106.31(a)(2)'s de minimis harm standard follows directly from Title IX's prohibition on "discrimination." 20 U.S.C. § 1681(a). It is well established that "the concept of discrimination includes an element of injury or harm." 89 Fed. Reg. at 33,815; *see also Burlington N. & Santa Fe Ry.*, 548 U.S. at 59 (explaining that

---

[8] Plaintiffs argued in district court that § 106.31(a)(2) is arbitrary and capricious for, in their view, failing to address concerns related to privacy, compliance, and parental rights. But plaintiffs do not press those arguments here, and for good reason: as the court below recognized, Dkt. No. 58, at 61-67, the Rule reasonably addressed those concerns. *See* 89 Fed. Reg. at 33,819-22.

discrimination entails "distinctions or differences in treatment that injure protected individuals"); *Muldrow*, 601 U.S. at 354 (same). But "[s]uch harm … must generally be something more than innocuous, or de minimis to be actionable discrimination." 89 Fed. Reg. at 33,815; *see also Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021) (explaining that harm must be more than "de minimis" to be actionable discrimination). Indeed, the Supreme Court recently explained that to make out a "discrimination claim, a [plaintiff] must show *some harm*." *Muldrow*, 601 U.S. at 354-55 (emphasis added). The de minimis harm standard "accounts for this important aspect of courts' legal construction of the meaning of the term 'discrimination.'" 89 Fed. Reg. at 33,815. The de minimis harm standard is thus well grounded in the statutory text, and plaintiffs offer no reason to question the straightforward reading of Title IX's nondiscrimination mandate.

Section 106.31(a)(2) also gives effect to the "specific, narrow exceptions" and exclusions that Congress drew in enacting Title IX. *Jackson*, 544 U.S. at 175. As plaintiffs recognize, Opening Br. 7-8, Congress (not the Department) expressly excepted certain activities and programs—like membership practices of fraternities and sororities, 20 U.S.C. § 1681(a)(6)(A)—from Title IX's general nondiscrimination mandate. *See* 89 Fed. Reg. at 33,816. Congress "could have, but did not," include exemptions for other sex-separate programs or activities, such as restrooms and locker rooms. *Id.* at 33,821. Rather than rendering the statutorily permitted exceptions and exclusions "nonsense," Opening Br. 27 (quotation marks omitted), the

Rule effectuates the distinctions Congress drew by recognizing that Title IX requires that "a recipient must not provide sex-separate facilities or activities in a manner that subjects any person to legally cognizable injury"—including by preventing individuals from participating in a sex-separate program or activity consistent with their gender identity—"unless there is a statutory basis for allowing otherwise." 89 Fed. Reg. at 33,814. And although plaintiffs speculate about Congress's purported "intent" in enacting Title IX, Opening Br. 28, the Supreme Court has made clear that "the purposes underlying [a statute] are most properly fulfilled by giving effect to the plain meaning of the language as Congress enacted it," *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 474 (1997), which is precisely what the Department did in promulgating § 106.31(a)(2).

Indeed, plaintiffs' assertion that § 106.31(a)(2) "destroys the very 'purpose' of Title IX"—including by "jeopardizing" notions of privacy and safety—is not only an improper departure from statutory text and structure, but also wrong as a practical matter. Opening Br. 28. Nothing prevents recipients from taking steps "to ensure privacy and safety for all students in a recipient's sex-separate facilities—steps that many recipients already take consistent with their general codes of conduct, including rules prohibiting harassment, assault, and other forms of misconduct." 89 Fed. Reg. at 33,820. In particular, the Department explained that "recipient[s] can make and enforce rules that protect all students' safety and privacy without also excluding transgender students from accessing sex-separate facilities and activities consistent

with their gender identity." *Id.* As to physical education classes, for example, schools have long been permitted to differentiate on the basis of "ability" and "individual performance … without regard to sex." 34 C.F.R. § 106.34(a)(2). *Cf.* Opening Br. 28. The experiences of schools across the country demonstrate that when "integrat[ing] transgender students into gender-specific facilities," "hypothetical fears and concerns" regarding safety and privacy have been "wholly unfounded in practice." Amici Curiae Brief of School Administrators, *Grimm v. Gloucester Cty. Sch. Bd.*, No. 19-1952 (4th Cir. Nov. 25, 2019), 2019 WL 6341095, at *18-19; *see* 89 Fed. Reg. at 33,820 (discussing schools' experiences).

**3**.     The reasoning of this Court's decision in *Adams* does not foreclose § 106.31(a)(2) generally, or the provision's application to sex-separate restrooms specifically. This Court decided *Adams* prior to the issuance of the Rule. The *Adams* Court recognized—as does the Rule, 89 Fed. Reg. at 33,821—that "[n]otwithstanding Title IX's general prohibition on sex discrimination, the *statute* provides an express carve-out" in § 1686 "with respect to living facilities." 57 F.4th at 811 (emphasis added). Consistent with that statutory carve-out, the Rule expressly provides that the de minimis harm standard does not apply to living facilities. *See* 89 Fed. Reg. at 33,821. The en banc Court in *Adams*, however, assumed that the Department's regulation permitting comparable sex-separate restrooms "implement[ed]" § 1686's "carve-out with respect to living facilities." 57 F.4th at 811 (citing 34 C.F.R. § 106.33); *see also id.* at 814. Based on that assumption, which was not the focus of the

parties' dispute, the Court concluded that a policy preventing transgender students from accessing sex-separate restrooms that aligned with their gender identity "fit[] squarely within the carve-out" provided by § 1686 and, by extension, § 106.33. *Id.* at 811.

The assumption in *Adams* that § 106.33's restroom provision is authorized by and flows from § 1686's living-facilities carve-out, however, was incorrect, and does not bind subsequent panels of this Court. As the Department explained in the Rule, it has never interpreted § 1686's carve-out for living facilities to extend "to any other aspects of a recipient's education program or activity… such as bathrooms, locker rooms, or shower facilities." 89 Fed. Reg. at 33,821. Rather, restrooms and locker rooms "have long been addressed separately from 'living facilities.'" *Id.* The Department's regulation regarding restrooms was promulgated in 1975 under the statute's general nondiscrimination mandate, 20 U.S.C. § 1681, not the living-facilities provision in § 1686. *See* 89 Fed. Reg. at 33,821 (citing 40 Fed. Reg. 24,128, 24,141 (June 4, 1975)). By contrast, the Department's housing regulation—issued in the same rulemaking and now codified at 34 C.F.R. § 106.32—relied on § 1686 "as one of the sources of its statutory authority." 89 Fed. Reg. at 33,821; *see also* 40 Fed. Reg. at 24,141.

Absent *Adams*' unfounded and incorrect assumption that § 1686's statutory carve-out for "living facilities" authorizes § 106.33's regulatory provision regarding "toilet, locker room, and shower facilities," it provides no basis for concluding that

31

the latter facilities are exempt from Title IX's basic nondiscrimination mandate in § 1681(a). And unlike the regulatory landscape this Court encountered in *Adams*, which did not include any provision directing schools how to ensure that otherwise permissible sex-separation in restrooms does not itself become the source of sex-based harms prohibited by § 1681(a), § 106.31(a)(2) now provides that clarity, "appl[ying] in contexts for which there is no statutory exception, such as sex-separate restrooms and locker rooms." 89 Fed. Reg. at 33,819. As discussed, § 106.31(a)(2) flows directly from a well-established understanding that differentiation causing more than de minimis harm constitutes "discrimination," and plaintiffs do not even attempt to contest the Department's evidence-based conclusion that such harm arises where a school "prevents a person from participating in an education program or activity consistent with the person's gender identity." 34 C.F.R. § 106.31(a)(2); *see* 89 Fed. Reg. at 33,819-20. Rather, plaintiffs simply disagree that such harm should amount to prohibited discrimination. Opening Br. 27. *Adams* does not address—and thus cannot obviate this Court's need to evaluate on the merits—plaintiffs' attack on a regulation that did not exist when that decision was issued.[9]

---

[9] At a minimum, *Adams* does not control § 106.31(a)(2)'s many applications to contexts, such as "sex-specific dress and grooming codes," that plainly fall outside the statutory carve-out for living facilities that *Adams* assumed applied to restrooms. *See* 89 Fed. Reg. at 33,823-24. But to the extent this Court concludes that *Adams* does control those contexts or § 106.31(a)(2)'s application to sex-separate restrooms and locker rooms, the Department respectfully maintains that the case was incorrectly decided and preserves the matter for further review.

**D.      The Rule's Hostile-Environment Harassment Standard Is Lawful and Raises No First Amendment Concerns.**

The district court also correctly held that the Rule's definition of hostile-environment harassment is lawful and consistent with the First Amendment.  Dkt. No. 58, at 69-76.  Plaintiffs' arguments to the contrary rest on a basic misapprehension of how the definition operates as well as a disregard for longstanding antidiscrimination practice and principles.

**1.**      It is well established that prohibited sex discrimination under Title IX includes sex-based harassment.  *See Jackson*, 544 U.S. at 174.  One form of prohibited harassment is hostile-environment harassment, which § 106.2 defines as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (*i.e.*, creates a hostile environment)."  34 C.F.R. § 106.2.

The Rule makes a handful of changes to the definition of hostile-environment harassment promulgated in 2020, but the standard announced in § 106.2 is hardly novel.  *See* 89 Fed. Reg. at 33,497.  It closely tracks the Department's "longstanding interpretation of Title IX" and accompanying "enforcement practice" prior to the 2020 amendments.  *Id.* at 33,508; *see Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, 66 Fed. Reg. 5512 (Jan. 19,

2001).[10]  It also mirrors the standards applied by courts in the context of "numerous

civil rights laws, including Title VII."  89 Fed. Reg at 33,508; *see Harris v. Forklift Sys.,*

*Inc.*, 510 U.S. 17, 21 (1993) (applying a "severe or pervasive" standard to conduct that

"alter[ed] the conditions" of employment (quotation marks omitted)).  That includes

this Court, which for decades has applied a standard prohibiting "severe or pervasive"

harassment in the Title VII context.  *See, e.g., Yelling v. St. Vincent's Health Sys.*, 82 F.4th

1329, 1334 (11th Cir. 2023) (per curiam) (explaining that to make out a Title VII

hostile-environment claim, the plaintiff must show that "the harassment was

sufficiently severe or pervasive to alter the terms of her employment"); *Mendoza v.*

*Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (same).

Prior to litigation over the Rule, no court had held that the standards long

applied in the Title VII and Title IX contexts for evaluating hostile-environment

harassment contravened the First Amendment.  To the contrary, the Supreme Court

upheld "similar proscriptions on hostile environment harassment" in both contexts

"without raising any First Amendment concerns."  89 Fed. Reg. at 33,506 (citing

examples).  That makes sense:  A recipient can ensure that the classroom, like the

---

[10] Whereas the 2020 standard prohibited unwelcome sex-based conduct "determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person" access to an education program or activity, 34 C.F.R. § 106.30(a)(2) (2020), the Rule prohibits unwelcome sex-based conduct that "based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies" such access, 34 C.F.R. § 106.2.

workplace, is free from sex-based "intimidation, ridicule, and insult" without governing every "utterance," *Harris*, 510 U.S. at 21 (quotation marks omitted), and while safeguarding the right of individuals to engage in protected speech.

If any doubt remained, the Rule also makes clear that "nothing in the regulations"—including § 106.2—"requires or authorizes a recipient to violate anyone's First Amendment rights." 89 Fed. Reg. at 33,516; *see also* 34 C.F.R. § 106.6(d). Thus, while recipients must address hostile environments, the Department expressly recognized that the "First Amendment may in certain circumstances constrain the manner in which a recipient responds to sex-based harassment in the form of speech." 89 Fed. Reg. at 33,503.

**2.** Plaintiffs argue that § 106.2's hostile-environment standard is invalid for departing from the standard for private damages actions announced in *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999). Opening Br. 29. Plaintiffs' reliance on *Davis* is misplaced.

In *Davis*, the Supreme Court addressed the "scope of liability in private damages actions" under Title IX's judicially implied right of action, 526 U.S. at 641, a context in which courts have "a measure of latitude to shape a sensible remedial scheme that best comports with the statute," *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998). The question in *Davis* was "whether a district's failure to respond to student-on-student harassment in its schools can support a private suit for money damages." 526 U.S. at 639. The Court thus addressed "the proper definition

35

of 'discrimination' in the context of a private damages action." *Id.* at 649.  In that specific "context," *id.*, the Court concluded that schools "are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school," *id.* at 650.

Nothing in *Davis* suggested that the standard for damages liability that the Supreme Court announced as part of its authority to shape the judicially implied private right of action controls in the administrative-enforcement context.  Rather, the Court recognized that those contexts present different questions, explaining that "we are asked to do more than define the scope of the behavior that Title IX proscribes" in determining what conduct "support[s] a private suit for money damages."  *Davis*, 526 U.S. at 639.  The Court also repeatedly and approvingly cited the Department's then-applicable hostile-environment standard, *id.* at 647-48, 651, which—like the Rule—defined prohibited sex-based harassment to include "severe, persistent, or pervasive" conduct, 62 Fed. Reg. 12,034, 12,034 (Mar. 13, 1997).  Far from affixing the meaning of any term in Title IX, *cf.* Opening Br. 30, the Court in *Davis* recognized that the circumstances under which recipients could be found liable for violating Title IX turned on the nature of the action and the relief sought.  Indeed, even the 2020 rule—which plaintiffs never challenged and seemingly endorse, *see* Opening Br. 9, 32—recognized that the "Department has regulatory authority to select conditions

36

and a liability standard different from those used in the [*Davis*] framework" and thus did "not simply codify" *Davis*. 85 Fed. Reg. at 30,033. *Contra* Opening Br. 32 (asserting that "the Department adopted *Davis* verbatim in 2020").

Plaintiffs similarly misread *Davis* in asserting that its damages standard was "designed to avoid" "First Amendment concerns." Opening Br. 31. Although the dissent discussed the First Amendment, the majority nowhere suggested that its holding was motivated by such concerns. *See Davis*, 526 U.S. at 667 (Kennedy, J., dissenting). Rather, the Court made clear that the standard reflected the appropriate limits on Title IX's judicially implied damages action, *see id.* at 640 (majority opinion), which implicates issues of fair notice not presented in the administrative-enforcement context, *see Gebser*, 524 U.S. at 290 (explaining that federal funding can be terminated administratively only after "notice and unsuccessful efforts to obtain compliance" and limiting potential exposure to private damages liability under Title IX to "comparable conditions"); *see also* Dkt. No. 58, at 72 (explaining that "*Davis* did not adopt the standard for sex-based harassment to avoid constitutional concerns").

**3.** Plaintiffs likewise err in suggesting that the Rule's hostile-environment standard contravenes the First Amendment because it compels speech and is overbroad. To start, the Rule neither compels any particular speech by students or staff nor requires anyone to affirm "any particular view on any issue." 89 Fed. Reg. at 33,505. The Rule merely requires that schools receiving federal funding address sex-based harassment that is "subjectively and objectively offensive" and so "severe or

pervasive" as to limit or deny a person's ability to access their educational programs. 34 C.F.R. § 106.2. Requiring schools to address sex-based harassment—even where it involves speech—differs in kind from "telling" individual students and staff "what they must say." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006). Indeed, the Rule makes clear that a recipient "must formulate, interpret, and apply its rules in a manner that respects the legal rights of students and employees when taking action to end sex-based harassment that creates a hostile environment." 89 Fed. Reg. at 33,503.

Plaintiffs thus misread the Rule in suggesting that it requires schools to "punish students who refuse to use other students' 'preferred pronouns.'" Opening Br. 11 (quoting 89 Fed. Reg. at 33,516). The Department explained that "whether verbal conduct constitutes sex-based harassment is necessarily [a] fact-specific" inquiry, but that "a stray remark, such as a misuse of language, would not constitute" harassment. 89 Fed. Reg. at 33,516. Even if there were circumstances in which the persistent or pronounced refusal to use pronouns consistent with a student's gender identity contributed to a claim of hostile-environment harassment, nothing in the Rule would "require[] or authorize[]" a school to mandate that anyone use particular pronouns or to compel silence of opposing viewpoint on questions related to gender identity in a way that would "violate anyone's First Amendment rights." *Id.*

The Rule's hostile-environment standard also poses no overbreadth problems. An overbroad law prohibits a "substantial amount of protected free speech, judged in

relation to [its] plainly legitimate sweep." *Dream Defs. v. Governor of Florida*, 57 F.4th 879, 890 (11th Cir. 2023) (quotation marks omitted).  Facial invalidation of an overbroad regulatory scheme "is strong medicine that should be used sparingly and only as a last resort." *Id.* (quotation marks omitted).  Such extraordinary relief is not warranted here.

The Rule defines prohibited hostile-environment harassment in terms of "specific and required elements," 89 Fed. Reg. at 33,506, "using language with common usage and understanding" in the antidiscrimination context, *Rowles v. Curators of the Univ. of Mo.*, 983 F.3d 345, 358 (8th Cir. 2020).  The Rule "covers only sex-based conduct that is unwelcome, both subjectively and objectively offensive, and so severe or pervasive that it limits or denies a person's ability to participate in" an education program or activity.  89 Fed. Reg. at 33,503.  And it "only prohibit[s] conduct that meets all the[se] elements," requiring an evaluation based on the "totality of the circumstances" to ensure that no "required element[] … is ignored."  *Id.* at 33,506.  The Rule thus does not "read[] … out" any of the enumerated elements.  Opening Br. 30.  Nor does prohibiting harassing conduct that "limits" a student's ability to participate in an education program transform the scope of proscribed discrimination, Opening Br. 10, 32 (quotation marks omitted), as the Department has long treated "[a] limitation on equal access [to] constitute[] a denial of benefits" prohibited by Title IX, 89 Fed. Reg. at 33,511; *see also id.* (explaining that the 2020 rule likewise prohibited

harassing conduct that "interferes with or limits a student's ability to participate in or benefit from the school's programs" (quoting 85 Fed. Reg. at 30,152)).

Even if the Rule's prohibition on harassing conduct occasionally "sweeps in speech," 89 Fed. Reg. at 33,494, there is no indication that the standard prohibits a substantial amount of protected speech in an absolute sense or relative to the Rule's "plainly legitimate sweep," *Dream Defs.*, 57 F.4th at 890 (quotation marks omitted); *see, e.g.*, *Parents Defending Educ. v. Olentangy Local Sch. Dist. Bd. of Educ.*, 109 F.4th 453, 471 (6th Cir. 2024) (rejecting overbreadth challenge to similar harassment policy). Plaintiffs do not even attempt to make such a showing.  Instead, they focus on the Rule's potential application to a narrow set of contexts involving gender identity, such as pronoun usage.  *See* Opening Br. 11, 32.  As explained, plaintiffs misunderstand the Rule's operation in those contexts.  And in any event, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  *Members of the City Council of the City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).

For much the same reason, plaintiffs overread this Court's decision in *Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022).  The Court there nowhere held, as plaintiffs contend, that harassment "policies that reach speech necessarily" are overbroad.  Opening Br. 32-33.  Instead, this Court in *Speech First* invalidated a "staggeringly broad" and non-exhaustive harassment policy that, among other things, extended to conduct based on "a long list of characteristics," including "political

40

affiliation"; covered a wide array of conduct, including any "that may be humiliating"; and "reache[d] not only a student's own speech, but also her conduct 'encouraging,' 'condoning,' or 'failing to intervene' to stop another student's speech."  32 F.4th at 1115, 1125-26 (emphasis and quotation marks omitted).  Section 106.2's hostile-environment standard has none of those features, which were the focus of this Court's overbreadth analysis.  *See id.* at 1125.  The Rule thus raises none of the overbreadth concerns at issue in *Speech First*.

## II.    The Remaining Factors Weigh Against Preliminary Relief.

### A.    The District Court Did Not Clearly Err in Finding that Plaintiffs Failed to Establish Irreparable Harm.

After devoting a scant two paragraphs to the topic in their preliminary injunction motion, *see* Dkt. No. 7-1, at 55-56, plaintiffs cannot show that the district court clearly erred in finding that they would not suffer irreparable harm absent injunctive relief.  That dooms this appeal, for "[a] showing of irreparable harm is the *sine qua non* of injunctive relief."  *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quotation marks omitted); *see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (explaining the Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely*," not merely possible, "in the absence of an injunction").

41

Plaintiffs cannot argue that the Rule causes "[s]overeign harms" because it "conflicts with the States' statutes."  Opening Br. 36; *see also* Injunction Order 18. Instead, it is "black-letter law" that a federal exercise of authority does not cause irreparable injury simply because it has such preemptive effect.  *Florida v. Department of Health & Human Servs.*, 19 F.4th 1271, 1291 (11th Cir. 2021).  Indeed, "to conclude otherwise would mean that a state would suffer irreparable injury from all … federal laws with preemptive effect."  *Id.* at 1292.  Accordingly, "because the Secretary had the authority to issue the … rule and federal law preempts conflicting state law," *id.*, the states did not suffer irreparable injury.  Beyond that, many of the purportedly conflicting state laws or policies plaintiffs invoke are perfectly consistent with the Rule.  *See* Dkt. No. 58, at 113-15.  And in any event, any conflict with state laws would not justify enjoining the enforcement of the many portions of the Rule that plaintiffs have not established a likelihood of showing are invalid.

Nor did the district court clearly err in rejecting the purported constitutional harms to plaintiff associations' members.  *See* Opening Br. 37-38; Injunction Order 19.  Plaintiffs' arguments about the Rule's supposed infringement of individual First Amendment rights were woefully "insufficient to carry the burden of clearly establishing an imminent and irreparable injury."  Dkt. No. 58, at 112 (alteration and quotation marks omitted).  Plaintiffs do nothing to bolster those unsupported and conclusory arguments here.  Plaintiffs thus cite no evidence to show that any purported constitutional injuries are likely, let alone "imminent."  *Northeastern Fla.*

*Chapter of Ass'n of Gen. Contractors*, 896 F.2d at 1285 (quotation marks omitted).

Without any concrete evidence of impending injury, mere fears of such violations are

at most a "possibility," which is insufficient to establish irreparable harm. *Winter*, 555

U.S. at 22.

Finally, the district court did not clearly err in rejecting plaintiffs' invocation of

compliance costs. *See* Opening Br. 38-39. *Contra* Injunction Order 17-18. As the

district court observed, while plaintiffs refer generally to such costs, they "offer no

evidence of what the compliance costs will be." Dkt. No. 58, at 121. Plaintiffs make

no attempt to tie their purported costs to the provisions of the Rule that they

challenge, nor do they explain how any costs relate to their overall budgets. Absent

such showings, courts routinely reject claims of irreparable harm. *See Pennsylvania v.*

*DeVos*, 480 F. Supp. 3d 47, 68 (D.D.C. 2020) (denying injunction as to 2020 Title IX

rule); *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 304 (S.D.N.Y. 2020)

(same). Plaintiffs evidently believe that even a cent of compliance costs associated

with understanding and coming into compliance with a new federal regulation is

sufficient, Opening Br. 38, but that theory could place every challenge to a federal

regulation in an emergency posture. That is not and has not ever been the law.

## B.  The Equities and Public Interest Weigh Against an Injunction.

The remaining factors tilt decisively towards the Department. Students and

teachers throughout the plaintiff states have an interest in the protections provided by

the Rule—the vast majority of which plaintiffs do not challenge.  Those interests are particularly pronounced here because the Rule effectuates Title IX's goals of "avoid[ing] the use of federal resources to support discriminatory practices [and] … provid[ing] individual citizens effective protection against those practices." *Cannon v. University of Chi.*, 441 U.S. 677, 704 (1979).  No one disputes that preventing discrimination serves a compelling public interest.  By contrast, plaintiffs would suffer no cognizable harm from leaving the Rule in force while litigation proceeds—and regardless, any such harm would be dramatically outweighed by the government's interest in stamping out sex discrimination and ensuring all students' access to federally funded educational opportunities.  *Cf. Winter*, 555 U.S. at 23 (public interest in naval training "outweighed" irreparable injury to wildlife).

## III.   At a Minimum, Any Injunction Should Be Narrowly Tailored.

Finally, at a minimum, the Court should make clear any injunction should be limited to the provisions that plaintiffs actually challenge, that plaintiffs establish are likely unlawful, and that cause plaintiffs irreparable harm.  Any broader relief would be "more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" on any valid claims.  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

**A.**   As set out above, plaintiffs currently challenge only three provisions of the Rule as applied to gender identity:  34 C.F.R. § 106.10, 34 C.F.R. § 106.31(a)(2), and 34 C.F.R. § 106.2's definition of hostile-environment harassment.  But the Rule

makes dozens of unrelated changes, most of which have nothing to do with gender identity.  To identify a few specific examples:

- The Rule requires schools to provide pregnant and post-partum students with reasonable modifications and to inform pregnant students of their rights. 34 C.F.R. § 106.40(b).

- The Rule alters the definition of "complainant" to permit complaints by former students and employees who suffered discrimination while participating or attempting to participate in a covered program.  *Id.* § 106.2; *see* 89 Fed. Reg. at 33,481-84.

- The Rule clarifies that funding recipients must prohibit retaliation, including peer retaliation, and take appropriate action in response to information about conduct that reasonably may constitute retaliation.  34 C.F.R. § 106.71.

- The Rule provides schools with more flexibility regarding the timing and structure of their grievance procedures.  *Id.* §§ 106.45-106.46.

- The Rule affirms that recipients may disclose certain information to parents and legal guardians about their minor children.  *Id.* § 106.44(j)(2).

Plaintiffs do not contend here that any of these provisions are unlawful, and there is no basis to enjoin the Department from enforcing them.  Nor do any of those amendments depend in any way on the challenged provisions addressing gender-identity discrimination and hostile-environment harassment.  All of them would remain fully operative if the challenged provisions were enjoined in whole or in part, and each of them could easily have been issued as separate rules.

Contrary to the motions panel's suggestion, Injunction Order 22, there is no need to guess whether the Department would have promulgated the remainder of the Rule without the three challenged provisions.  As explained in district court, the

Department included its straightforward determination in the Rule itself that the provisions of the Rule are "intended to operate independently of each other," confirming that pre-existing severability clauses in the Title IX regulations apply to the Rule. 89 Fed. Reg. at 33,848. Those clauses specify that "[i]f any provision of this subpart or its application to any person, act, or practice is held invalid, the remainder of the subpart or the application of its provisions to any person, act, or practice shall not be affected thereby." 34 C.F.R. §§ 106.9, 106.16, 106.48. The Rule thus expressly instructs that "the potential invalidity of one provision should not affect the other provisions." 89 Fed. Reg. at 33,848. And the Rule explains how the provisions not deemed unlawful, such as "the prohibition on retaliation," "operate separately from the clarification of the scope of sex discrimination under § 106.10." *Id.* Accordingly, there was no basis to enjoin the Department from enforcing unchallenged provisions.[11]

That many of those provisions refer to sex discrimination, Opening Br. 33, does not change this conclusion. The Rule specifies that provisions not deemed

---

[11] The motions panel suggested that the Department failed to consider a potential situation in which "provisions in multiple different subparts may well be invalidated simultaneously." Injunction Order 23. As set out above, that is not correct; indeed, the Department was emphatic that it "believes that every provision of the final regulations is legally supportable, individually and in the aggregate, but includes this discussion to remove any doubt that [it] would have adopted the remaining provisions of the Final Rule without any of the other provisions, should any of them be deemed unlawful." 89 Fed. Reg. at 33,848 (alteration in original) (quotation marks omitted).

unlawful "operate separately from the clarification of the scope of sex discrimination under § 106.10." 89 Fed. Reg. at 33,848. Thus, even if § 106.10 remained enjoined, every other provision of the Rule's amendments would continue to function by simply operating under Title IX's prohibition against discrimination "on the basis of sex," without any further regulatory gloss. That includes the unchallenged definitions in § 106.2; the requirements for Title IX Coordinators in § 106.8; the protections for pregnant and post-partum students in § 106.40; the provisions specifying recipients' obligations to respond to sex discrimination in § 106.44; the grievance-procedure provisions in § 106.45 and § 106.46; the duties of employers in § 106.57 and § 106.60; and the clarification regarding retaliation in § 106.71.

Indeed, the Title IX regulations have long operated without such a regulatory gloss. The Department's pre-existing regulations (amended in 2020) repeatedly reference "sex discrimination" without defining that term or clarifying its scope. *See, e.g.*, 34 C.F.R. § 106.8(a) (2020) (Title IX Coordinator); *id.* § 106.8(c) (2020) (grievance procedures); *id.* § 106.8(d) (2020) (extraterritoriality); *id.* § 106.71(a) (2020) (retaliation). Earlier regulations, too, have long referred to "discrimination on the basis of sex" and "discrimination based on sex" without defining those terms. *E.g.*, 45 C.F.R. §§ 86.1, 86.3(a)-(b), 86.4(a), 86.6(a), 86.9(a), (c), 86.36(a)-(c), 86.37(a)(2), (b), 86.38(a), 86.39, 86.51(a)(4), 86.53, 86.56(b), 86.59 (1975). The term "sex discrimination" or its variants has been ubiquitous in the Department's Title IX regulations for decades, and both the Department and regulated entities have understood that term to simply

47

incorporate Title IX's prohibition on discrimination "on the basis of sex." 20

U.S.C. § 1681(a).  In fact, this Court (and many others) have interpreted and applied

prohibitions on "sex discrimination" for decades without requiring any regulatory

clarification of those terms.  *See, e.g.*, *Doe*, 29 F.4th at 685-94.  All of this confirms that

analogous provisions of the Rule would likewise remain fully operative even if

§ 106.10 were enjoined.

Nor does *Ohio v. EPA*, 144 S. Ct. 2040, 2054-55 (2024), undermine the Rule's

express severability determinations.  *Contra* Opening Br. 33-34.  In *Ohio*, the Supreme

Court stayed challenged provisions that injured the challengers because it concluded

that EPA's severability discussion did not adequately respond to comments objecting

that the agency's justification for the rule would no longer be valid if the rule applied

in fewer states than originally contemplated.  144 S. Ct. at 2054-55.  Yet plaintiffs do

not suggest that they or anyone else raised similar objections to severability during the

rulemaking here.  To the contrary, the Rule's preamble notes that there were no

comments on severability.  *See* 89 Fed. Reg. at 33,848.

**B.**  Enjoining § 106.10 would be erroneous for yet another reason.  Even

putting aside plaintiffs' failure to demonstrate a likelihood of success as to this

provision, *see supra* p.18-24, plaintiffs do not identify any harm they would suffer if

they could not take undoubtedly discriminatory actions on the basis of gender identity

(let alone the other bases listed in § 106.10, such as pregnancy or sex stereotypes).  By

attacking § 106.10's understanding of the scope of discrimination "on the basis of

48

sex," plaintiffs claim that they can "discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Bostock*, 590 U.S. at 660. On plaintiffs' view, it would be perfectly lawful under Title IX for them to punish transgender students "simply for being … transgender," *id.* at 651, by, for example, barring them from participating in the science fair, the marching band, or student government. Plaintiffs have never suggested they wish to engage in such startling conduct or that they would be harmed by being required to refrain from it. Rather, they claim harms related to restrooms or locker rooms, but it is a separate provision—34 C.F.R. § 106.31(a)(2), not § 106.10—that governs access to such spaces, *see supra* p.19. This Court should thus at a minimum decline to endorse an injunction that bars enforcement of § 106.10, regardless of its view of plaintiffs' challenge to the separate provision at § 106.31(a)(2).

For similar reasons, even if the plaintiffs were correct on the merits, there would be no basis for enjoining § 106.2 beyond its definition of hostile-environment harassment as applied to discrimination on the basis of gender identity. Section 106.2 defines several dozen terms used throughout the Title IX regulations. Plaintiffs do not challenge any of these definitions besides hostile-environment harassment, and they principally object to the application of the standard in that definition to discrimination on the basis of gender identity, focusing on pronouns and salutations. *See* Dkt. No. 7-1, at 10-11. There is therefore no basis for enjoining any more of

49

§ 106.2 than the definition of hostile-environment harassment as applied to gender-identity discrimination.

**C**.       Plaintiffs are wrong to suggest that the Department failed to adequately brief severability. *See* Opening Br. 34-45.  The Department's opposition to plaintiffs' motion for a preliminary injunction included an entire section arguing that any relief "should be limited in accordance with the Administrative Procedure Act and equitable principles."  Dkt. No. 24, at 57-59 (capitalization modified).  And the Department invoked precisely the same equitable principles it is invoking here, emphasizing that preliminary relief should be limited to "portions of the Rule as to which the Court has found that Plaintiffs have established a likelihood of success" and "'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'"  *Id.* at 57-58.  Plaintiffs responded at length, *see* Dkt. No. 38, at 28-30; as plaintiffs argue elsewhere, the Department cannot have forfeited an argument that plaintiffs "clearly understood and addressed at length," Opening Br. 46.  Indeed, before the district court had issued a ruling finding any provision of the Rule likely invalid—as it ultimately declined to do—it would be unreasonable to expect the Department to have more specifically explained how the remaining portions of the Rule would continue to operate in the absence of any as-yet-unidentified provision.

In demanding more, plaintiffs appear to assume that a showing that any provision of an omnibus rule is likely invalid presumptively justifies a preliminary injunction against enforcement of the entire rule, shifting the burden to the

government to justify any exceptions.  But that is backwards.  A preliminary injunction is an "extraordinary" exercise of equitable authority that may be awarded only "upon a clear showing" by the plaintiff that they are "entitled to such relief." *Winter*, 555 U.S. at 22.  A district court thus has no power to preliminarily enjoin any provision of a rule unless the party seeking relief has established that the relevant provision is both likely invalid and likely to cause irreparable harm absent relief.  *Id.* at 20; *see also, e.g.*, *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1275 n.31 (11th Cir. 2001) (at "injunction stage," where a "*prima facie*" defense is raised, the burden is on plaintiff to defeat the defense).

**D**.      Finally, the Supreme Court's denial of the stay applications in the related proceedings does not justify plaintiffs' request for an overbroad injunction.  As the Supreme Court emphasized, those applications were evaluated in an "emergency posture," on a "limited record" where "the burden is on the Government as applicant to show" entitlement to emergency relief.  *Louisiana*, 144 S. Ct. at 2510.  Here, the burden is on plaintiffs to justify their request for preliminary injunctive relief.  As explained, plaintiffs cannot do so, as this Court (or the district court on remand) would go "beyond [its] authority to remedy the discrete harms alleged" by "blocking the Government from enforcing scores of regulations that [plaintiffs] never challenged and that bear no apparent relationship to [their] alleged injuries."  *Id.* at 2514 (Sotomayor, J., dissenting in part).  And the Supreme Court majority plainly contemplated that despite denying the partial stay, "the Courts of Appeals w[ould]

51

render their decisions" on the Department's appeals, including "its severability argument"—not that its denial had obviated the need for the courts of appeals to engage on those questions. *Id.* at 2510 (per curiam).

## CONCLUSION

This Court should affirm the judgment of the district court.

Respectfully submitted,

<table>
<tr><td>

*Of Counsel:*

LISA BROWN
    *General Counsel*
    *U.S. Department of Education*

</td><td>

BRIAN M. BOYNTON
    *Principal Deputy Assistant Attorney*
    *General*

MELISSA N. PATTERSON
JACK E. STARCHER
DAVID L. PETERS
*/s/ Steven A. Myers*
STEVEN A. MYERS

    *Attorneys, Appellate Staff*
    *Civil Division, Room 7232*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 305-8648*

</td></tr>
</table>

OCTOBER 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,998 words.  It also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.


*/s/ Steven A. Myers*
Steven A. Myers

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Steven A. Myers
Steven A. Myers

**ADDENDUM**

## TABLE OF CONTENTS

20 U.S.C. § 1681 ...................................................................................A1

20 U.S.C. § 1682 ...................................................................................A4

**20 U.S.C. § 1681**

**§ 1681. Sex**

    (a) Prohibition against discrimination; exceptions

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that:

        (1) Classes of educational institutions subject to prohibition

in regard to admissions to educational institutions, this section shall apply only to institutions of vocational education, professional education, and graduate higher education, and to public institutions of undergraduate higher education;

        (2) Educational institutions commencing planned change in admissions

in regard to admissions to educational institutions, this section shall not apply (A) for one year from June 23, 1972, nor for six years after June 23, 1972, in the case of an educational institution which has begun the process of changing from being an institution which admits only students of one sex to being an institution which admits students of both sexes, but only if it is carrying out a plan for such a change which is approved by the Secretary of Education or (B) for seven years from the date an educational institution begins the process of changing from being an institution which admits only students of only one sex to being an institution which admits students of both sexes, but only if it is carrying out a plan for such a change which is approved by the Secretary of Education, whichever is the later;

        (3) Educational institutions of religious organizations with contrary religious tenets

this section shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization;

        (4) Educational institutions training individuals for military services or merchant marine

this section shall not apply to an educational institution whose primary purpose is the training of individuals for the military services of the United States, or the merchant marine;

        (5) Public educational institutions with traditional and continuing admissions policy

in regard to admissions this section shall not apply to any public institution of undergraduate higher education which is an institution that traditionally and

continually from its establishment has had a policy of admitting only students of one sex;

  (6) Social fraternities or sororities; voluntary youth service organizations

this section shall not apply to membership practices--

   (A) of a social fraternity or social sorority which is exempt from taxation under section 501(a) of Title 26, the active membership of which consists primarily of students in attendance at an institution of higher education, or

   (B) of the Young Men's Christian Association, Young Women's Christian Association, Girl Scouts, Boy Scouts, Camp Fire Girls, and voluntary youth service organizations which are so exempt, the membership of which has traditionally been limited to persons of one sex and principally to persons of less than nineteen years of age;

  (7) Boy or Girl conferences

this section shall not apply to--

   (A) any program or activity of the American Legion undertaken in connection with the organization or operation of any Boys State conference, Boys Nation conference, Girls State conference, or Girls Nation conference; or

   (B) any program or activity of any secondary school or educational institution specifically for--

    (i) the promotion of any Boys State conference, Boys Nation conference, Girls State conference, or Girls Nation conference; or

    (ii) the selection of students to attend any such conference;

  (8) Father-son or mother-daughter activities at educational institutions

this section shall not preclude father-son or mother-daughter activities at an educational institution, but if such activities are provided for students of one sex, opportunities for reasonably comparable activities shall be provided for students of the other sex; and

  (9) Institution of higher education scholarship awards in "beauty" pageants

this section shall not apply with respect to any scholarship or other financial assistance awarded by an institution of higher education to any individual because such individual has received such award in any pageant in which the attainment of such award is based upon a combination of factors related to the personal appearance, poise, and talent of such individual and in which participation is limited to individuals

of one sex only, so long as such pageant is in compliance with other nondiscrimination provisions of Federal law.

…

**20 U.S.C. § 1682**

## § 1682. Federal administrative enforcement; report to Congressional committees

Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 1681 of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken. No such rule, regulation, or order shall become effective unless and until approved by the President. Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made, and shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law: *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. In the case of any action terminating, or refusing to grant or continue, assistance because of failure to comply with a requirement imposed pursuant to this section, the head of the Federal department or agency shall file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. No such action shall become effective until thirty days have elapsed after the filing of such report.