No. 24-12444

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

STATE OF ALABAMA, et al.,

Plaintiffs-Appellants,

v.

UNITED STATES SECRETARY OF EDUCATION, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Alabama
DC Docket No. 7:24-cv-00533-ACA

## BRIEF OF ORGANIZATIONS SERVING PREGNANT AND PARENTING STUDENTS AS AMICI CURIAE SUPPORTING DEFENDANTS-APPELLEES

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Matthew Borden
Tabitha Cohen
Kory DeClark
BRAUNHAGEY & BORDEN LLP
747 Front Street
San Francisco, CA 94111
(415) 599-0210
borden@braunhagey.com
cohen@braunhagey.com
declark@braunhagey.com

Counsel for *Amici Curiae*

October 25, 2024

# RULE 29(A)(4)(A) CERTIFICATE OF INTERESTED PERSONS

## AND CORPORATE DISCLOSURE STATEMENT

The below *Amici Curiae* are non-profit organizations. They issue no stock and are neither owned by nor the owner of any corporate entity in whole or in part.

<u>*Amici Curiae*</u>

Generation Hope

Justice + Joy National Collaborative (f/k/a National Crittenton)

Mommies in the D

The National Nurse-Led Care Consortium

The U.S. Breastfeeding Committee


The following interested entities are known to the *amici curiae* and do not appear in previously-filed CIPs. Neither has publicly-listed stock:

<u>Counsel for *Amici Curiae*</u>

ALL RISE TRIAL & APPELLATE

Jim Davy

BRAUNHAGEY & BORDEN LLP

Matthew Borden, Tabitha Cohen, Kory DeClark

No publicly traded company or corporation with an interest in the outcome of the case or appeal is known to the *amici curiae*.

/s/ Matthew Borden
Attorney of record for *Amici Curiae*

# TABLE OF CONTENTS

Table of Citations ..................................................................................ii

Introduction .........................................................................................3

Argument .............................................................................................6

I.   The Rule is essential to ensure that pregnant and
     postpartum students can access education ......................................6

II.  The Rule protects the health of students and their
     pregnancies. ................................................................................11

III. The portions of the Rule protecting pregnant and
     postpartum students should go into effect because they are
     unchallenged and severable. .......................................................15

Conclusion ..........................................................................................23

Certificates .........................................................................................1a

# TABLE OF CITATIONS

**Cases**                                                             **Page(s)**

*Alabama v. Cardona,*

    No. 7:24-CV-533-ACA, 2024 WL 3607492 (N.D. Ala. July 30, 2024) .. 6, 17, 22

*Alabama v. U.S. Sec'y of Educ.,*

    No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024) .............. 17

*Am. Fuel & Petrochemical Manufacturers v. Env't Prot. Agency,*

    3 F.4th 373 (D.C. Cir. 2021) ................................................................ 16

*Canal Authority of State of Fla. v. Callaway,*

    489 F.2d 567 (5th Cir.1974) ................................................................ 22

*Davis Cnty. Solid Waste Mgmt. v. E.P.A.,*

    108 F.3d 1454 (D.C. Cir. 1997) ........................................................... 16

*Department of Educ. v. Louisiana,*

    --- S. Ct. ----, 2024 WL 3841071 (U.S. Aug. 16, 2024) ............. 18, 20, 21

*Fin. Info. Techs., LLC v. iControl Sys., USA, LLC,*

    21 F.4th 1267 (11th Cir. 2021) ................................................. 15, 20, 22

*K Mart Corp. v. Cartier, Inc.,*

    486 U.S. 281 (1988) ............................................................................ 16

# TABLE OF CITATIONS—continued

**Page(s)**

*Peifer v. Commonwealth of Pa. Bd. of Probation & Parole,*

   106 F.4th 270 (3d Cir. 2024).................................................................8

*Suntrust Bank v. Houghton Mifflin Co.,*

   252 F.3d 1165 (11th Cir. 2001)....................................................15, 21

*Telephone & Data Sys. v. FCC,*

   19 F.3d 42 (D.C. Cir. 1994)..........................................................16, 22

*Tennessee v. Cardona,*

   No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024)....................17

## Statutes

20 U.S.C. § 1681 ......................................................................................4

20 U.S.C. § 1681(a)..................................................................................4

## Regulations

34 C.F.R. § 106.10 .................................................................................17

34 C.F.R. § 106.21 .................................................................................17

34 C.F.R. § 106.40 ..........................................................................passim

34 C.F.R. § 106.40(a) .............................................................................18

34 C.F.R. § 106.40(b) ................................................4

34 C.F.R. § 106.40(b)(1) ........................................4, 18

34 C.F.R. § 106.40(b)(2) .....................5, 9, 13, 14, 18

34 C.F.R. § 106.40(b)(3) ...........................................18

34 C.F.R. § 106.40(b)(3)(i) .......................5, 9, 13, 14

34 C.F.R. § 106.40(b)(3)(ii) ..................5, 7, 8, 9, 13

34 CF.R. § 106.40(b)(3)(ii)(A) ........................11, 12

34 C.F.R. § 106.40(b)(3)(ii)(C) ......................7, 8, 12

34 C.F.R. § 106.40(b)(3)(v).............................5, 8, 9, 13

34 C.F.R. § 106.40(b)(4) ..................................19, 20

34 C.F.R. § 106.40(b)(5) ...............................9, 10, 19

45 C.F.R. § 86.40(b) (1975) ....................................4

45 C.F.R. § 86.40(b)(5) (1975).................................14

*Nondiscrimination on the Basis of Sex in Education Programs or*

   *Activities Receiving Federal Financial Assistance,*

      89 Fed. Reg. 33,474 (Apr. 29, 2024)...............4, 16

**Other Authorities**

Andrew Sum et al., *The Consequences of Dropping Out of High School*
(Oct. 2009) ............................................................. 10

*Choosing Wisely Recommendation #307*, Am. Acad. of Fam. Physicians
............................................................................. 14

Cynthia Costello, Inst. for Women's Pol'y Rsch., *Pathways to*
*Postsecondary Education for Pregnant and Parenting Teens* (May
2014) ........................................................................ 9

Dep't of Health & Hum. Res., *The Business Case for Breastfeeding*
(2008) ....................................................................... 8

Ensuring Healthy Births Through Prenatal Support, Ctr. Am. Progress
(Jan. 31, 2020) .......................................................... 11

Lindsey Rechlin Cruse et al., Inst. for Women's Pol'y Research,
*Investing in Single Mothers' Higher Education* (Dec. 2019) .............. 10

Louisville Dep't of Pub. Health and Wellness, *Pregnant Workers Health*
*Impact Assessment* (2019) .............................................. 11

*Paid Parental Leave, Statement of Policy*, Am. Coll. of Obstetricians and
Gynecologists (July 2016) .............................................. 13

*Postpartum*, Cleveland Clinic (Feb. 27, 2024) ........................................ 13

Rebecca A. Krukowski et al., Correlates of Early Prenatal Care Access
   Among U.S. Women: Data from the Pregnancy Risk Assessment
   Monitoring System (PRAMS), 26 Maternal and Child Health J. 328
   (2022) .................................................................................................... 12

*Recommendation and Benefits*, Ctrs. for Disease Control and Prevention
   (Mar. 17, 2023) ........................................................................................ 7

## INTERESTS OF THE AMICI CURIAE

*Amici* Justice + Joy National Collaborative, Mommies in the D, Generation Hope, the U.S. Breastfeeding Committee, and the National Nurse-Led Care Consortium are organizations that support pregnant and parenting students in school to ensure no student must face an impossible choice between their education and their family.

**Justice + Joy National Collaborative** (formerly the "National Crittenton Foundation") is a national nonprofit organization that supports the wellbeing of girls and young women, including pregnant and parenting youth. It regularly convenes direct service providers from thirty states, who provide support to pregnant and parenting teens on the margins, many of whom have survived abuse, violence or neglect.

**Mommies in the D** is a Michigan nonprofit organization dedicated to empowering young mothers, aged fourteen to twenty-two, by establishing nurturing and growth-centered environments. By educating young mothers on the importance of prenatal visits, developmental stages of children, and breastfeeding support, they aim to support young mothers in their social, economic, and emotional development so they can achieve their personal and parenting goals.

**Generation Hope** is a national nonprofit whose mission is to ensure all student parents have the opportunity to succeed, experience economic mobility, and build wealth. It provides wrap-around services to

young parents and their children, including mentoring, tuition assistance, tutoring, career preparation, and mental health support.

**The U.S. Breastfeeding Committee** ("USBC") is a national non-profit coalition bringing together 140 organizations that support the USBC mission to create a landscape of breastfeeding support across the United States. USBC is committed to ensuring that all families in the U.S.—including postpartum students—have the support and resources they need to achieve their breastfeeding goals in the communities where they live, learn, and work.

**The National Nurse-Led Care Consortium ("NNCC")** is a national nonprofit whose mission is to advance nurse-led healthcare through policy and programming to reduce health disparities and meet primary care and wellness needs, including those of pregnant, postpartum, and parenting students. NNCC has a longstanding relationship with community-based organizations empowering young people and students in their parenting journeys, particularly in support of their ongoing educational needs. Public health nursing services provided by NNCC facilitate access to medical care, developmental support services, breastfeeding support, and peer support groups for parents and parents-to-be, including many students.

The U.S. Department of Education's new regulations strengthen and clarify the law's protections for pregnant and postpartum students. Accordingly, *amici* have an interest in the new pregnancy-related provisions going into effect: If the district court's judgment is modified to enjoin these provisions, the pregnant and postpartum students *amici* serve will suffer grave disruptions to their educations.

Consistent with Federal Rule of Appellate Procedure 29(a)(4)(E), *amici*'s counsel authored this brief, no party's counsel authored the brief in whole or in part, and no party beyond *amici* contributed any money toward the brief. All parties have consented to the filing of the brief of *amici curiae*.

## STATEMENT OF ISSUES

The U.S. Department of Education's broad-ranging new Title IX regulations clarify and strengthen protections for pregnant and postpartum students, among other provisions. The provisions that apply specifically to pregnant and postpartum students remain unchallenged.

The issue presented is whether the district court erred in refusing to issue preliminary relief barring enforcement of these new regulations, particularly the unchallenged provisions that apply to pregnant and postpartum students.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Since 1975, the federal agencies that Congress tasked with enforcing Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*., have promulgated regulations protecting pregnant and postpartum students' educations. *See, e.g.*, 34 C.F.R. § 106.40(b) (2000); 45 C.F.R. § 86.40(b) (1975). Among other provisions, these regulations included a blanket prohibition on discrimination "on the basis of [a] student's pregnancy" and related conditions, 34 C.F.R. § 106.40(b)(1) (2000), and required schools to permit pregnant and postpartum students medically necessary leaves of absence, *id.* § 106.40(b)(5). Notably, given the current dispute, the U.S. Department of Education promulgated and enforced these regulations in the absence of any regulatory definition of the words "on the basis of sex," as used in Title IX's statutory text. *See* 20 U.S.C. § 1681(a).

Despite these long-standing regulations, pregnant and parenting students continue to face discrimination. Some schools, for example, deny pregnant students basic accommodations that ensure they can pursue their studies without risking their and their pregnancies' health, evict them from university housing, or exclude them from classes postpartum.

Among other provisions, the U.S. Department of Education's broad-ranging new Title IX regulations ("the Rule") clarify and strengthen the protections for pregnant and postpartum students that prior iterations of the regulations set forth. *Nondiscrimination on the Basis of Sex in*

*Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (codified at 34 C.F.R. § 106.40). For example, the Rule adds the following three key new provisions to strengthen Title IX's core prohibition on pregnancy discrimination:

- Schools must offer pregnant and postpartum students "reasonable modifications," such as larger desks, permission to use the restroom, and excused absences for prenatal care, *id.* at 33,887 (codified at 34 C.F.R. § 106.40(b)(3)(ii));

- Schools must provide lactation spaces and breaks to express milk, *id.* at 33,887–88 (codified at 34 C.F.R. §§ 106.40(b)(3)(ii), (v)); and

- Schools must notify pregnant students of their rights to modifications, leaves of absence, lactation space, and more, *id.* at 33,887 (codified at 34 C.F.R. §§ 106.40(b)(2), (b)(3)(i)).

Each of these provisions offers new protections not contained in the current regulations, which do not expressly require schools to offer reasonable modifications, do not even mention lactation spaces, and do not provide for affirmative notice to students of their pregnancy-related rights. *See* 34 C.F.R. § 106.40 (2000).

Plaintiffs-Appellants did not challenge the portions of the Rule related to pregnant and postpartum students, did not claim to be injured by them, and made no arguments about them. In seeking to enjoin the entire Rule, they merely argued that provisions of the Rule defining "sex

discrimination" pervaded the entire rule. The district court rejected that argument in denying Plaintiffs-Appellants' motion for a preliminary injunction, and found that the unchallenged provisions are indeed severable. *Alabama v. Cardona*, No. 7:24-CV-533-ACA, 2024 WL 3607492, at *11–14 (N.D. Ala. July 30, 2024).

Prior iterations of 34 C.F.R. § 106.40 protecting pregnant and postpartum students from discrimination have never before been dependent on or related to a definition of discrimination "on the basis of sex"—because there has never before been one. The same should be true now. As *amici* explain, the pregnancy- and postpartum-related provisions are both vitally important and severable from the provisions that Plaintiffs-Appellants dispute. This Court should affirm the judgment of the district court in denying the preliminary injunction. At minimum, any injunction should be sufficiently narrow such that those unchallenged portions of the Rule, as codified in 34 C.F.R. § 106.40, may go into effect as soon as possible.

## ARGUMENT

### I. The Rule is essential to ensure that pregnant and postpartum students can access education.

The Rule's pregnancy provisions are essential to ensure pregnant and postpartum students can learn and thrive at school. All three key new protections protect these students' access to education. And in so doing, the Rule also reduces costs to the public.

1. *Reasonable accommodations*. If this Court allows it to go into effect, the Rule will protect pregnant and postpartum students by requiring schools to provide them reasonable accommodations (or "modifications") necessary to pursue their educations. 34 C.F.R. § 106.40(b)(3)(ii). "Reasonable modifications may include, but are not limited to . . . breaks during class to . . . eat[], drink[], or use[] the restroom; intermittent absences to attend medical appointments; . . . rescheduling of tests and examinations; allowing a student to . . . keep water nearby; . . . [or] a larger desk." 34 C.F.R. § 106.40(b)(3)(ii)(C).

In *amici*'s experience, even modest accommodations, like a larger desk or rescheduling paper deadlines falling the week after a student gives birth, ensure that pregnancy does not imperil a student's education. By contrast, without these protections, pregnant and postpartum students' educations are too often disrupted or derailed. For example, Student A experienced a life-threatening miscarriage, during which she missed an examination at her post-secondary institution. Rather than permit her to reschedule the exam as a reasonable accommodation, her school assigned her a failing grade.[1] Student B requested pregnancy accommodations for months but received no substantive response from

---

[1] *Amici*'s expertise in this area comes directly from experiences of their and their partners' clients. *Amici* share all the stories referenced in this brief through sequentially lettered pseudonym initials with the permission of the referenced clients.

school administrators. Because pregnancy is an inherently time-limited condition, month-long delays in providing accommodations are tantamount to accommodation denials. *See Peifer v. Commonwealth of Pa. Bd. of Probation & Parole*, 106 F.4th 270 (3d Cir. 2024). Indeed, Student B eventually gave up seeking the accommodations she needed and left school, incurring a bill for "withdrawing."

2. *Lactation spaces and breaks.* The Rule will also protect postpartum students' educations by requiring educational institutions to provide a clean, private, non-bathroom lactation space, as well as reasonable breaks to express milk or nurse. 34 C.F.R. §§ 106.40(b)(3)(ii), (v). Major medical organizations in the United States unanimously recommend breastfeeding, given the well-established health benefits for both parent and child. *See Recommendation and Benefits*, Ctrs. for Disease Control and Prevention (Mar. 17, 2023), https://perma.cc/TK62-Q82Q. To ensure they will be able to produce enough milk to feed their child, lactating students must express milk from the body regularly and need breaks throughout the day to do so. Dep't of Health & Hum. Res., *The Business Case for Breastfeeding* 5 (2008), https://owh-wh-d9-dev.s3. amazonaws.com/s3fs-public/documents/bcfb_easy-steps-to-supporting-breastfeeding-employees.pdf. If they do not pump or nurse their child regularly, lactating students can quickly lose their milk supply and experience complications, including infection. *Id.* So, for students to nurse or express milk, their schools must provide an

appropriate space and sufficient time to do so. The Rule will require just that. 34 C.F.R. §§ 106.40(b)(3)(ii), (v).

In *amici*'s experience, without the Rule, schools often decline to provide students effective lactation accommodations, if any. That forces upon students the impossible choice between their education and providing milk for their baby. For example, when Student C's school declined to allow her to pump at school, she dropped out.

3. *Notification of rights.* Prior Title IX regulations provide some limited protections for pregnant and postpartum students. *See* 34 C.F.R. § 106.40 (2000). But, in *amici*'s experience, those protections have little force because students do not know their rights. The Rule directly addresses this problem by requiring schools to give pregnant students clear, affirmative notice of their rights under the law, helping ensure that pregnant and postpartum students can access these rights in practice. *See* 34 C.F.R. §§ 106.40(b)(2), (b)(3)(i) (requiring detailed notice to pregnant students of their rights to modifications, lactation space, leaves of absence, and more).

For example, schools often fail to reinstate students who require a leave of absence to recover from serious pregnancy complications, childbirth, or postpartum depression to their prior academic status. Prior regulations prohibit that practice. 34 C.F.R. § 106.40(b)(5) (2000). But in *amici*'s experience, few students know that, leaving them vulnerable to mistreatment. During her pregnancy, for instance, Student D requested

to attend her college classes remotely after her doctor placed her on bedrest. Rather than offering her modifications or placing her on medically necessary leave, Student D's school told her that her only option was to withdraw from the college and that there was no guarantee that she would be readmitted once she was ready to return after giving birth. By requiring schools to inform pregnant and postpartum students of their right to reinstatement following leave, the Rule safeguards students from misinformation about their rights.

4. *Public financial impact.* By protecting pregnant and postpartum students' access to education, the Rule will also protect the public fisc. Currently, only about half of teenage mothers earn a high school diploma by age twenty-two, compared to 90% of girls who do not have a child as a teen. Cynthia Costello, Inst. for Women's Pol'y Rsch., *Pathways to Postsecondary Education for Pregnant and Parenting Teens*, at v (May 2014), https://files.eric.ed.gov/fulltext/ED556724.pdf. Only 2% of teen mothers seventeen and younger graduate college by age thirty. *Id.* The lifetime cost to taxpayers when a student is pushed out of high school exceeds $292,000. Andrew Sum et al., *The Consequences of Dropping Out of High School* 15 (Oct. 2009), https://repository.library.northeastern .edu/downloads/neu:376324. By contrast, single mothers who complete their bachelor's degree each save the state over $40,000 in public assistance. Lindsey Rechlin Cruse et al., Inst. for Women's Pol'y Research, *Investing in Single Mothers' Higher Education* 15 (Dec. 2019),

https://iwpr.org/wp-content/uploads/2020/07/R600_Investing-in-Single-Moms-National.pdf.

## II. The Rule protects the health of students and their pregnancies.

The Rule's three key new pregnancy provisions are also essential to safeguard the health of students—and their ability to carry their pregnancies to term.

1. *Reasonable accommodations.* The Rule's new requirement that schools provide reasonable accommodations—and that they do so regardless of whether they provide those accommodations to other students—will promote health. *See* 34 CF.R. § 106.40(b)(3)(ii)(A). For example, permissions to eat or drink during class are essential to retain a healthy amount of amniotic fluid, and restroom breaks are necessary to reduce urinary tract infections and the associated risk of preeclampsia and preterm birth. Louisville Dep't of Pub. Health and Wellness, *Pregnant Workers Health Impact Assessment* 21 (2019), https://louisvilleky.gov/center-health-equity/document/pregnant-workers-hia-final-02182019pdf.

Yet in *amici*'s experience, in the absence of the Rule, schools often deny students basic modifications necessary for health. Student E was told by her professor that it "wouldn't be fair to the other students in class" to let her take additional bathroom breaks—a common excuse heard by the pregnant students *amici* serve, and one expressly rejected

by the Rule, 34 C.F.R. § 106.40(b)(3)(ii)(A). Student F was diagnosed with a high risk of life-threatening hemorrhage and requested a parking spot so she could drive to medical care if specific warning symptoms emerged. Her school refused. Student G requested information about what chemicals she would be exposed to in a chemistry lab, since certain chemicals could pose a risk to her pregnancy. Her professor refused to provide the requested information, or to make any changes to limit exposure, forcing Student G to choose between her education and the health of her pregnancy. The Rule also identifies intermittent time off for healthcare appointments as a reasonable accommodation. 34 C.F.R. § 106.40(b)(3)(ii)(C). That is essential to ensure pregnant and postpartum access to critical medical care, such as pre- and post-natal appointments, and to avoid health risks. This care vastly improves health outcomes. *See, e.g.*, *Ensuring Healthy Births Through Prenatal Support*, Ctr. Am. Progress (Jan. 31, 2020), https://www.americanprogress.org/article/ensuring-healthy-births-prenatal-support/. But nearly one in ten pregnant patients struggle to access vital first-trimester prenatal care because they cannot get time off of work or school. Rebecca A. Krukowski et al., *Correlates of Early Prenatal Care Access Among U.S. Women: Data from the Pregnancy Risk Assessment Monitoring System* (PRAMS), 26 Maternal and Child Health J. 328, 337 (2022). The Rule's reasonable modification provision will therefore promote the health of pregnant students and their pregnancies.

2. *Lactation spaces and breaks.* The Rule also protects students' and their babies' health by enabling students who wish to nurse or express milk to do so. By requiring schools to provide postpartum students the space and time they need to pump, 34 C.F.R. §§ 106.40(b)(3)(ii), (v), the Rule will ensure postpartum students, and their new babies, the health benefits of breastfeeding, described above, *see supra* p. 7–8.

In *amici*'s experience, without the Rule, schools often decline to provide students effective lactation accommodations, causing them to lose their supply or develop health compilations, frequently forcing them to stop breastfeeding altogether. For example, Student H developed mastitis, a painful inflammation of the breast tissue, due to her inability to express milk in the extremely limited time between her law school classes in the weeks following her child's birth.

3. *Notification of rights.* The Rule will also promote students' health, and the health of their pregnancies, by ensuring they know about their rights, including their right to leaves of absence, reinstatement, and reasonable modifications. 34 C.F.R. §§ 106.40(b)(2), (3)(i).

Leave to recover from childbirth—which requires at least six to eight weeks—is associated with lower rates of infant and child mortality, as well as improved maternal health outcomes. *Postpartum*, Cleveland Clinic (Feb. 27, 2024), https://my.clevelandclinic.org/health/articles/postpartum; *Paid Parental Leave, Statement of Policy*, Am. Coll. of Obstetricians and Gynecologists (July 2016), https://www.acog.org/

clinical-information/policy-and-position-statements/statements-of-policy/2020/paid-parental-leave. Title IX regulations have long included a provision to offer leave for as long as medically necessary for postpartum students. 45 C.F.R. § 86.40(b)(5) (1975). In practice, however, students have struggled to access time off because of a lack of awareness of their right to it—and of their right to full reinstatement upon their return. The Rule, for the first time, requires schools to clearly inform students of their rights to leaves of absence and to reinstatement. 34 C.F.R. §§ 106.40(b)(2), (3)(i).

The Rule's requirement that schools clearly inform students of their rights to leaves of absence will make a critical difference for many students. For example, when Student I asked her school about time off to recover from childbirth, she was incorrectly informed that Title IX only covered pregnancy and that postpartum leave was only available if she had a disabling complication. Student J's school refused to discuss a plan for childbirth recovery while she was pregnant, and days after she gave birth, the school told her she had to return for exams. As a result, Student J was not allowed to take the time off that her doctor recommended after a complicated pregnancy and birth.

Likewise, Student K wanted just two weeks off to deliver and recover from childbirth, but her college informed her that taking that time was against policy, and that if she missed as little as two days, she could fail her classes. So, Student J—like some other pregnant

students—induced labor to avoid missing class. Induction without medical indication can increase the risk of complications including hemorrhage, cesarean birth, fetal stress, and negative impacts on future pregnancies. *Choosing Wisely Recommendation #307*, Am. Acad. of Fam. Physicians, https://perma.cc/N7XF-EADQ. The Rule mitigates the risks of these harms, ensuring healthier students, healthier pregnancies, and healthier babies.

### III. At minimum, the portions of the Rule protecting pregnant and postpartum students should go into effect because they are unchallenged and severable.

The district court was correct in refusing to enjoin the entire Rule, including the three key new provisions discussed in this brief. Plaintiffs-Appellants never challenged any of these provisions, and their arguments in favor of an overbroad injunction of the entire Rule overlooked the Department's explicit severability language and clear intent that they go into effect even if a court were to enjoin other provisions. "[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001). As such, "an injunction must be narrowly tailored to the proven legal violations and restrain no more conduct than reasonably necessary." *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21 F.4th 1267, 1280 (11th Cir. 2021). The Court should, at minimum, let

the provisions codified at 34 C.F.R. § 106.40 go into effect because they do not depend in any way on the outcome of litigation over, and are entirely severable from, the challenged provisions.

First, where there is "no indication that the regulation would not have been passed but for its inclusion," a challenged regulatory provision is severable from the rest of a rule. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988). Put another way, as to the unchallenged portion, "[s]everance and affirmance of a portion of an administrative regulation is improper" only if there is "substantial doubt" that the agency would have adopted the severed portion on its own. *Davis Cnty. Solid Waste Mgmt. v. E.P.A.*, 108 F.3d 1454, 1459 (D.C. Cir. 1997). Here, there is no such doubt, because the Department explained that "each of the provisions of these final regulations discussed in this preamble serve an important, related, but distinct purpose." 89 Fed. Reg. at 33848. The Department specifically "confirm[ed] that each of the provisions in the final regulations is intended to operate independently of each other and that the potential invalidity of one provision should not affect the other provisions." *Id*. This should carry the day.

Second, even if it did not, severability is appropriate when unchallenged provisions can "operate entirely independently" from or "are not in any way intertwined" with challenged provisions. *Davis Cnty.*, 108 F.3d at 1459 (citing *Telephone & Data Sys. v. FCC*, 19 F.3d 42, 50 (D.C. Cir. 1994)); *see also Am. Fuel & Petrochemical Manufacturers v.*

*Env't Prot. Agency*, 3 F.4th 373, 384 (D.C. Cir. 2021) (observing that severance was proper when an unchallenged provision "operates independently"). Here, the unchallenged provisions relating to pregnant and postpartum students operate independently from the challenged provisions, and Plaintiffs-Appellants have not offered (and cannot offer) any argument to the contrary.

Plaintiffs-Appellants object to the Rule's inclusion of gender identity discrimination within 34 C.F.R. § 106.10's definition of "sex discrimination." *See Alabama,* 2024 WL 3607492, at *6 (discussing the challenged provisions). This Court characterized that disputed definition's scope as "appear[ing] to touch every substantive portion of the Rule." *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024) (quoting *Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024)). But the substantive provisions discussed in this brief do not depend in any way upon gender identity's inclusion in the definition of sex discrimination. In fact, they do not require 34 C.F.R. § 106.10's definition of sex discrimination at all. A separate part of the Rule includes a distinct definition of "pregnancy or related conditions," 34 C.F.R. § 106.21, which neither set of Plaintiffs-Appellants challenged. And, as discussed above, prior to the Rule, the Department's Title IX regulations did not include any definition of sex discrimination analogous to 34 C.F.R. § 106.10's—an absence that did not

prevent those earlier regulations from providing pregnancy-related protections, *see supra* p. 4.

All of the provisions of 34 C.F.R. § 106.40 are therefore "sufficiently independent of the enjoined definitional provision." *See Department of Educ. v. Louisiana*, --- S. Ct. -----, Nos. 24A78, 24A79, 2024 WL 3841071, at *1 (U.S. Aug. 16, 2024) (per curiam). Those "particular provisions" are identified as follows:

- 34 C.F.R. § 106.40(a), which prohibits the "adopt[ion] or implementat[ion] [of] any policy, practice, or procedure concerning a student's current, potential, or past parental, family, or marital status that treats students differently on the basis of sex";

- 34 C.F.R. § 106.40(b)(1), which prohibits discrimination in educational programs or activities on the basis of pregnancy or postpartum status;

- 34 C.F.R. § 106.40(b)(2), which mandates the provision of Title IX Coordinator contact information to pregnant students;

- 34 C.F.R. § 106.40(b)(3), which mandates that specific actions be taken to prevent discrimination and ensure equal access for pregnant and postpartum students without requiring extensive supporting documentation, including: providing information about their rights; providing reasonable

accommodations such as individualized and optional policy, practice, or procedure modifications which may include "breaks during class to express milk, breastfeed, or attend to health needs associated with pregnancy or related conditions, including eating, drinking or using the restroom; intermittent absences to attend medical appointments," "allowing a student to sit or stand, or carry or keep water nearby," and "changes in physical space or supplies (for example, access to a larger desk or a footrest)"; permitting voluntary leaves of absence "to cover, at minimum, the period of time deemed medically necessary by the student's licensed healthcare provider"; and providing access to a lactation space "other than a bathroom, that is clean, shielded from view, free from intrusion from others";

- 34 C.F.R. § 106.40(b)(4), which mandates that pregnancy or related conditions be treated "in the same manner and under the same policies as any other temporary medical conditions" with respect to any of the institution's medical or hospital benefits, services, plans, or policies; and

- 34 C.F.R. § 106.40(b)(5), which specifies the limited conditions under which a student who is pregnant or has a related condition would be required to "provide certification from a healthcare provider or any other person that the student is

physically able to participate in the recipient's class, program, or extracurricular activity."

See *id.*

The Supreme Court recently denied applications to stay preliminary injunctions pending appeal in similar cases to this one, finding that "the Government has not provided … a sufficient basis to disturb the lower courts' interim conclusions that the three provisions found likely to be unlawful are intertwined with and affect other provisions of the rule" and has not "adequately identified which particular provisions, if any, are sufficiently independent of the enjoined definitional provision and thus might be able to remain in effect." *See Louisiana*, 2024 WL 3841071 at *1. But, as the dissent noted, the "injunctions are overbroad" because they "bar the Government from enforcing the entire rule—including provisions that bear no apparent relationship to [the plaintiffs'] alleged injuries," including "the unchallenged provisions" that "require[] schools to provide 'reasonable accommodations' to pregnant students, including but not limited to 'breaks during class to express breast milk, breastfeed, or attend to health needs associated with pregnancy or related conditions." *Id.* at *2, 7 (Sotomayor, J., dissenting in part). *See also Fin. Info. Techs.,* 21 F.4th at 1280.

The Supreme Court's decision in *Louisiana* is not binding. *See* Trevor N. McFadden and Vetan Kapoor, *The Precedential Effects of the*

*Supreme Court's Emergency Stays*, 44 Harvard Journal of Law & Public Policy 827, 882 (Summer 2021) ("In sum, we argue that decisions to deny a stay have no precedential value."); Vetan Kapoor and Judge Trevor McFadden, *Symposium: The Precedential Effects of Shadow Docket Stays*, SCOTUSBLOG (Oct. 28, 2020, 9:18 AM), https://www.scotusblog.com/2020/10/symposium-the-precedentialeffects-of-shadow-docket-stays ("[D]ecisions with little precedential value for lower courts [] include[] denials of stay applications. Decisions to deny a stay cannot have any persuasive or precedential effects, as the Supreme Court may deny a stay request for any number of nonmerits reasons."). *See also* Kristen E. Parnigoni, *Shades of Scrutiny: Standards for Emergency Relief in the Shadow Docket Era*, 63 B.C. L. Rev. 2743, 2749 (Nov. 2022) ("Shadow docket decisions now comprise an unwieldy block of new jurisdiction, albeit with unclear precedential value").

Regardless, however, the Supreme Court did not hold that the challenged provisions are not severable from the unchallenged provisions—only that the Government had failed to carry its burden, for purposes of its emergency application, to demonstrate severability or to "adequately identif[y] which particular provisions" are severable. *See Louisiana*, 2024 WL 3841071, at *1. At this juncture, though, the plaintiffs, not the Government, carry the burden to demonstrate why the sweeping injunction Plaintiffs seek, including of the unchallenged provisions in 34 C.F.R. § 106.40, is necessary and sufficiently "narrowly

tailored" to remedy their alleged harms. *See Suntrust*, 252 F.3d at 1166 (citing *Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974) ("[I]t should not have been incumbent upon the defendants to prove" that a preliminary injunction should *not* be issued.)); *Fin. Info. Techs.*, 21 F.4th at 1280; *Alabama*, 2024 WL 3607492, at *13 ("[T]he court will [] assume that the regulations in the Final Rule are severable…because Plaintiffs have not carried their burden of showing they are not."). They cannot do so. *See* AOB 44–52. And both the Government and, in this brief, *amici* have "adequately identified" the "particular provisions" from which the challenged provisions can be severed. *See id*. at 44–45, 50–51; *see infra* p. 22.

The above-identified substantive sections do not depend on the disputed scope of sex discrimination in other parts of the Rule and are not intertwined with the challenged provisions. To the contrary, they demonstrate the Department's clear intent to provide protections for pregnant and parenting students independent and severable from the Rule's other protections. At minimum, then, any injunction should be "narrowly tailored" to remedy the harms plaintiffs allege by permitting the unchallenged and severable provisions of 34 C.F.R. § 106.40 to go into effect. *See Fin. Info. Techs.*, 21 F.4th at 1280.

## CONCLUSION

Portions of the Rule not at issue in the Plaintiffs-Appellants' suits provide vital protections for pregnant and postpartum students, and the district court properly refused to enjoin them. This Court should affirm the district court's denial of the preliminary injunction. At minimum, any injunction should be sufficiently narrow such that those unchallenged portions of the Rule, as codified in 34 C.F.R. § 106.40, may go into effect as soon as possible.

Respectfully submitted,

/s/ Matthew Borden

Matthew Borden
Tabitha Cohen
Kory DeClark
BRAUNHAGEY & BORDEN LLP
747 Front Street
San Francisco, CA 94111
(415) 599-0210
borden@braunhagey.com

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Counsel for *Amici Curae*

October 25, 2024

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief:

(i) complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 29 because it contains 4,846 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 16.66.1, set in Century Schoolbook 14-point type.

<u>/s/ Matthew Borden</u>

Matthew Borden

**CERTIFICATE OF SERVICE**

I certify that on October 25, 2024, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Matthew Borden

Matthew Borden