# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

STATE OF ALABAMA, et al.,

*Plaintiffs-Appellants,*

v.

U.S. SECRETARY OF EDUCATION, et al.,

*Defendants-Appellees.*

Appeal from the U.S. District Court for the
Northern District of Alabama, No. 7:24-cv-533 (Axon, J.)

## REPLY BRIEF OF APPELLANTS

Steve Marshall
  *Attorney General*
Edmund G. LaCour Jr.
  *Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

[Additional counsel listed at end]

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Appellants certify that the prior certificates,

as amended and supplemented by appellees and amici, are complete.

Dated: November 12, 2024

s/ *Cameron T. Norris*
Counsel for Private Plaintiffs

s/ *Edmund G. LaCour Jr.*
Counsel for Alabama

s/ *Henry C. Whitaker*
Counsel for Florida

s/ *Stephen J. Petrany*
Counsel for Georgia

s/ *Joseph D. Spate*
Counsel for South Carolina

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ..............C-1 of 1

Table of Citations ...........................................................................................................ii

Introduction & Summary of Argument ............................................................................1

Argument ........................................................................................................................2

   I.  Plaintiffs are entitled to a preliminary injunction under *Louisiana*. ........................2

     A.  *Louisiana* resolves most of the questions on appeal.........................................2

     B.  The Department abandons the district court's suggestions for why this case
        might be different. .....................................................................................6

   II.  Even if *Louisiana* didn't control, Plaintiffs were entitled to a preliminary
     injunction. ...............................................................................................................9

     A.  Likely merits............................................................................................ 10

        1. §106.10 ......................................................................................... 10

        2. §106.31(a)(2) ................................................................................. 13

        3. §106.2............................................................................................ 16

     B.  Irreparable harm..................................................................................... 19

     C.  Balance of harms and public interest................................................... 21

   III.The whole rule should be temporarily enjoined. ................................................. 22

Conclusion................................................................................................................... 26

Certificate of Compliance ........................................................................................... 28

Certificate of Service .................................................................................................. 28

# TABLE OF CITATIONS

*primary authority

## Cases

*Adams v. Sch. Bd. of St Johns Cnty.,
   57 F.4th 791 (11th Cir. 2022) ......................................................1, 11, 12, 14-16

Ala. Ass'n of Realtors v. HHS,
   594 U.S. 758 (2021) ..........................................................................................4

*Alabama v. U.S. Sec'y of Educ.,
   2024 WL 3981994 (11th Cir. Aug. 22)..........................3, 5, 9, 11, 17, 19-24

Allen v. Milligan,
   599 U.S. 1 (2023) ...............................................................................................4

Arlington Cent. Sch. Dist. BOE v. Murphy,
   548 U.S. 291 (2006) ......................................................................................... 17

Barr v. AAPC,
   591 U.S. 610 (2020).............................................................................................4

BOE of Highland Loc. Sch. Dist. v. DOE,
   208 F. Supp. 3d 850 (S.D. Ohio 2016) .......................................................... 16

Bostock v. Clayton Cnty.,
   590 U.S. 644 (2020)......................................................................................... 13

Bridge v. Okla. DOE,
   711 F. Supp. 3d 1289 (W.D. Okla. 2024) ...................................................... 15

Carroll ISD v. DOE,
   2024 WL 3381901 (N.D. Tex. July 11) .......................................................... 11

Clark v. Martinez,
   543 U.S. 371 (2005).......................................................................................... 16

Commonwealth v. Biden,
   57 F.4th 545 (6th Cir. 2023) .......................................................................... 21

D.H. v. Williamson Cnty. BOE,
   638 F. Supp. 3d 821 (M.D. Tenn. 2022)........................................................ 15

*Davis v. Monroe Cnty. BOE,
   526 U.S. 629 (1999).................................................... 6, 16, 17, 18, 20, 23

*DOE v. Louisiana,
   144 S.Ct. 2507 (2024) ............................................... 1, 3-6, 9, 22-25

*Facebook v. Duguid,*
592 U.S. 395 (2021) ........................................................................... 12

*Florida v. HHS,*
19 F.4th 1271 (11th Cir. 2021) ......................................................... 19

*Georgia v. President,*
46 F.4th 1283 (11th Cir. 2022) .................................................... 20, 21

*Hand v. Scott,*
888 F.3d 1206 (11th Cir. 2018) ........................................................... 6

*Hobby Lobby Stores v. Sebelius,*
723 F.3d 1114 (10th Cir. 2013) ........................................................... 9

*In re Cumbess,*
960 F.3d 1325 (11th Cir. 2020) ......................................................... 14

*Jackson v. Birmingham BOE,*
544 U.S. 167 (2005) ............................................................... 11, 16, 17

*Joseph v. Bd. of Regents of Univ. Sys. of Ga.,*
— F.4th —, 2024 WL 4705544 (11th Cir. Nov. 7) ......................... 16

*Kansas v. DOE,*
2024 WL 3273285 (D. Kan. July 2) ......................................... 15, 22, 23

*Kisor v. Wilkie,*
588 U.S. 558 (2019) ........................................................................... 12

*Labrador v. Poe,*
144 S.Ct. 921 (2024) ........................................................................... 4

*LaCroix v. Ft. Myers Beach,*
38 F.4th 941 (11th Cir. 2022) ............................................................. 8

*Louisiana v. Biden,*
55 F.4th 1017 (5th Cir. 2022) ........................................................... 21

*Louisiana v. DOE,*
2024 WL 2978786 (W.D. La. June 13) ............................................ 10

*Louisiana v. DOE,*
2024 WL 3452887 (5th Cir. July 17) ................................................ 22

*Mallory v. Norfolk S. Ry.,*
600 U.S. 122 (2023) ............................................................................. 4

*Mayor of Baltimore v. Azar,*
973 F.3d 258 (4th Cir. 2020) ............................................................ 24

*Mozilla Corp. v. FCC,*
940 F.3d 1 (D.C. Cir. 2019) ............................................................ 21

*NetChoice v. Bonta,*
113 F.4th 1101 (9th Cir. 2024) ....................................................... 24

*NFIB v. OSHA,*
595 U.S. 109 (2022) ........................................................................... 4

*PDE v. Olentangy,*
109 F.4th 453 (6th Cir.), *vacated,* 2024 WL 4647888 (Nov. 1) .................... 18

*Purcell v. Gonzalez,*
549 U.S. 1 (2006) ................................................................................ 4

*\*Speech First v. Cartwright,*
32 F.4th 1110 (11th Cir. 2022) ................................................... 17-20

*Speech First v. Khator,*
603 F. Supp. 3d 480 (S.D. Tex. 2022) .......................................... 17

*Tennessee v. Cardona,*
2024 WL 3019146 (E.D. Ky. June 17) ........................................... 11

*\*Tennessee v. Cardona,*
2024 WL 3453880 (6th Cir. July 17) ......................... 10, 11, 24, 25

*Tennessee v. Cardona,*
2024 WL 3631032 (E.D. Ky. July 10) ........................................... 26

*Tennessee v. USDA,*
665 F. Supp. 3d 880 (E.D. Tenn. 2023) ........................................ 15

*Texas v. Cardona,*
2024 WL 3658767 (N.D. Tex. Aug. 5) .......................................... 11

*Trump v. IRAP,*
582 U.S. 571 (2017) ......................................................................... 24

*United States v. Jackson,*
390 U.S. 570 (1968) ......................................................................... 24

*United States v. Stevens,*
559 U.S. 460 (2010) ......................................................................... 19

*W.V. ex rel. Morrisey v. Treasury,*
59 F.4th 1124 (11th Cir. 2023) ....................................................... 17

**Statutes**

20 U.S.C. §1681 ........................................................................ 11, 12, 14

20 U.S.C. §1686................................................................................................12, 14

42 U.S.C. §2000e-2 ................................................................................................ 11

**Regulations**

34 C.F.R. §106.10 ................................................................2, 5, 6, 9-11, 13, 14, 22

34 C.F.R. §106.2................................................................2, 6, 16, 17, 22, 25

34 C.F.R. §106.31 ................................................................ 2, 6, 8, 9, 12-14, 22

34 C.F.R. §106.40 ................................................................................................ 25

34 C.F.R. §106.45 ................................................................................................ 25

34 C.F.R. §106.46 ................................................................................................ 25

34 C.F.R. §106.71 ................................................................................................ 25

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving
Federal Financial Assistance, 85 FR 30,026 (May 19, 2020) ....................................... 19

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving
Federal Financial Assistance, 89 FR 33,474 (Apr. 29, 2024).............. 12-14, 20, 21, 25

# INTRODUCTION & SUMMARY OF ARGUMENT

Even on the Department's telling, its case for affirming the district court requires this Court to say *at least* the following:

- When the Supreme Court said that States "were entitled to preliminary injunctive relief" against the rule's core provisions, the Justices were just making a preliminary guess. *DOE v. Louisiana*, 144 S.Ct. 2507, 2509-10 (2024). This Court can now say that all nine Justices were wrong. *See* Red-Br.17-18.

- The district court did not abuse its discretion when, unlike every other court in every other case, it denied any temporary injunction. The motions panel *did* abuse its discretion, though, when it granted relief. *See* Red-Br.8.

- Circuit precedent holds that "sex" in Title IX cannot include "gender identity." *Adams v. Sch. Bd. of St Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc). But the Department was free to achieve the same result by defining "sex discrimination" to include "gender-identity discrimination." *See* Red-Br.21-22, 30-32.

Saying any one of those things would be radical. That the Department's position requires saying *all* of them confirms how wrong it is.

Plaintiffs, for their part, ask this Court to keep preserving the status quo. This Court has already entered rulewide relief twice. That relief is appropriate because the rule's core provisions are likely unlawful and the Department makes no new case for partial relief. And only rulewide relief preserves the status quo, as Plaintiffs explained and the Department never denies. Blue-Br.20, 40-41. This Court should reverse the district court and enter that relief itself.

# ARGUMENT

The Supreme Court's opinion in *Louisiana* requires this Court to hold that Plaintiffs were entitled to a preliminary injunction. But even ignoring all nine Justices (and every other court), Plaintiffs were entitled to that relief. The Department's arguments for making the States immediately comply with a judicially redlined version of the rule remain unpersuasive. This Court should reverse. And importantly, the Department doesn't dispute that the best way to issue a preliminary injunction is for this Court to issue one itself. Blue-Br.40.

## I.    Plaintiffs are entitled to a preliminary injunction under *Louisiana*.

After the Supreme Court's opinion in *Louisiana*, this Court cannot hold that the rule's three core provisions are likely legal, that Plaintiffs lack irreparable harm, or that Plaintiffs fail the other preliminary-injunction factors. *Louisiana* is binding on those questions. The Department doesn't defend the notion that this case could come out differently.

### A.    *Louisiana* resolves most of the questions on appeal.

The five-Justice majority opinion in *Louisiana* was clear: "Importantly, all Members of the Court today accept that the plaintiffs *were entitled* to preliminary injunctive relief as to three provisions of the rule." 144 S.Ct. at 2509-10 (emphasis added). The four-Justice dissent was clear too: "Every Member of the Court agrees respondents are entitled to interim relief" as to "§106.10," "§106.31(a)(2)," and "§106.2's definition of

hostile environment harassment." *Id.* at 2510 (Sotomayor, J., dissenting). The Justices were discussing the States' entitlement to a preliminary injunction, not the Department's entitlement to a "stay." *Cf.* Red-Br.17. By opining that the States were "entitled" to preliminary relief, all nine "had to find" irreparable harm, the balance of equities, and—at least for the rule's core provisions—likely success on the merits. *Alabama v. U.S. Sec'y of Educ.*, 2024 WL 3981994, at *1 n.1 (11th Cir. Aug. 22).

The Department elides this point by debating whether *Louisiana* resolves this "appeal." Red-Br.18 n.3. Plaintiffs never said that. *Louisiana* resolves parts of this appeal: that the rule's three main provisions are likely unlawful and that the States satisfied the other preliminary-injunction factors. Blue-Br.21-23. Plaintiffs agree that *Louisiana* does not resolve "severability"—the "argument" that the Court rejected because the Department failed to carry its "burden" in "its emergency applications." 144 S.Ct. at 2510. The preliminary language that the Department quotes from *Louisiana* is all about severability, and *that* argument is why the Court stressed that expedited proceedings were still needed in the courts of appeals. Red-Br.17, 51-52. But there was nothing tentative about the Court's conclusion that the States "were *entitled* to preliminary injunctive relief." 144 S.Ct. at 2509-10 (emphasis added). The Court started that sentence with the word "Im-

portantly." *Id.* at 2509. And it stressed the Justices' unanimity, explaining that "all Members of the Court today accept" the States' entitlement to a preliminary injunction. *Id.* at 2509-10.[1]

The Department does not dispute that *Louisiana*'s legal conclusions bind this Court. The Supreme Court understands that, even at the stay stage, its majority opinions can have "vertical precedential effect." *Labrador v. Poe*, 144 S.Ct. 921, 934 (2024) (Kavanaugh, J., concurring). That effect occurs when the Court reaches firm conclusions of law. The Department wouldn't argue that lower courts can ignore, for example, the *Purcell* principle from *Purcell v. Gonzalez*, 549 U.S. 1 (2006), or the major-questions doctrine from *Alabama Association of Realtors v. HHS*, 594 U.S. 758 (2021), and *NFIB v. OSHA*, 595 U.S. 109 (2022)—even though all three are stay opinions. In fact, the Department concedes that the Supreme Court's stay opinions "are binding" when lower courts are "presented with identical" circumstances. Red-Br.18 n.3. But the relevant

---

[1] Supreme Court opinions often use the phrase "the Court today" to highlight the number of Justices who agree on a proposition of law. *E.g.*, *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 146 n.11 (2023) ("a majority of the Court today agrees"); *Barr v. AAPC*, 591 U.S. 610, 614 (2020) (opinion of Kavanaugh, J.) ("Six Members of the Court today conclude"); *Allen v. Milligan*, 599 U.S. 1, 44 (2023) (Kavanaugh, J., concurring) ("all Members of this Court today agree"). The Department thinks the Court said "today" to signal that it was *not* deciding whether the States were entitled to a preliminary injunction—the exact opposite of what the Court wrote. Red-Br.17-18. The Department cannot explain why the dissent made the same point without saying "today." *See Louisiana*, 144 S.Ct. at 2510 (Sotomayor, J., dissenting) ("Every Member of the Court agrees").

conclusion in *Louisiana* and the central issue here—whether the rule's three main provisions are likely illegal and the States are otherwise entitled to a preliminary injunction—are identical.

This Court cannot contradict the Supreme Court because, in the Department's view, *Louisiana* did not sufficiently address "*Bostock* and the text of Title IX." Red-Br.17. Those questions were addressed thoroughly by many parties and amici across 12 briefs. *See, e.g.*, U.S.-*Tennessee*-Appl.28-37, 2024 WL 3511533; U.S.-*Louisiana*-Reply.17-27, 2024 WL 3606499. The Court then deliberated over them for several weeks. *See* Docket, Nos. 24A78-79 (applications filed July 22, briefing ended July 29, opinion issued August 16). And when the Court held that the States "'were entitled'" to a preliminary injunction, it "had to" deem the Department's arguments on *Bostock* and Title IX unlikely to prevail. *Alabama*, 2024 WL 3981994, at *1 n.1.

The Court's opinion reveals its reasoning. It explains that the States were "arguing," and the district courts "agreed," that "the rule exceeded the bounds of the statutory text." 144 S.Ct. at 2509. It then agrees that the States were entitled to a preliminary injunction as to three provisions, "including" the one that turns on the Department's *Bostock* argument: §106.10, "the central provision that newly defines sex discrimination to include discrimination on the basis of sexual orientation and gender identity." *Id.* at 2509-10; *accord id.* at 2510 (Sotomayor, J., dissenting) (explaining that the States "contend that the rule unlawfully redefines sex discrimination" and that "[e]very Member of the Court agrees [the States] are entitled to interim relief as to … §106.10 (defining sex

5

discrimination)"). Even if this discussion could be called "dicta" or "summary," it would remain equally binding on this Court. *See* Blue-Br.21-23; *Hand v. Scott*, 888 F.3d 1206, 1208 (11th Cir. 2018).

## B. The Department abandons the district court's suggestions for why this case might be different.

There is no legitimate way to say that the States in *Louisiana* "were entitled to a preliminary injunction" but the States here are not. 144 S.Ct. at 2509-10. *Louisiana* involved similar plaintiffs, challenging the same rule, suing at the same time, asserting the same irreparable harms, raising the same claims that Plaintiffs press on appeal. *See id.* at 2512 (Sotomayor, J., dissenting) (explaining that those States claimed that §106.10 and §106.31(a)(2) contradict the statute and that §106.2 violates *Davis* and the First Amendment); *id.* at 2512-13 (explaining that those States asserted sovereign, constitutional, and compliance harms); *id.* at 2512 n.3 (calling this case "similar" to *Louisiana*). Plaintiffs' opening brief explained in detail why their timing, evidence, and briefs compare favorably to all the other cases where courts preliminarily enjoined the rule. Blue-Br.42-46. The Department offers no response. Its passing assertion that this case is "different," without explaining how it's different or why any supposed differences matter, is not a developed argument. Red-Br.12, 17.[2]

---

[2] To be sure, Plaintiffs raised *more* claims than the *Louisiana* plaintiffs. But Plaintiffs narrowed this appeal down to the arguments raised in *Louisiana*, both to simplify the appeal and because those arguments are sufficient to justify rulewide relief. Plaintiffs

Though Plaintiffs thought the Department might defend the district court's sua sponte suggestion of "delay," Blue-Br.42, the Department never does. It understands that Plaintiffs moved swiftly, that *the Department* was the one who wanted a slightly longer schedule, that a ruling on this ground would violate party presentation, and that no caselaw supports the district court's suggestion of delay. *See* Blue-Br.42-43, 16-17.

Nor does the Department defend the district court's sua sponte suggestion of forfeiture. Plaintiffs explained how forfeiture would not be an independent basis to affirm, since the district court ultimately decided their motion on substantive grounds. Blue-Br.44. The Department never disagrees; it concedes that the district court "addressed plaintiffs' challenges" on the merits. Red-Br.8. Though the Department sometimes quotes the district court's suggestion of forfeiture, it never *defends* the notion that Plaintiffs forfeited something. Plaintiffs explained how a ruling on forfeiture grounds would have been an abuse of discretion, since Plaintiffs' briefs were thorough, the Department forfeited forfeiture below, the district court misstated forfeiture doctrine, and more. Blue-Br.44-47. The Department never responds; it concedes that any arguments it "understood and addressed" below "cannot [be] forfeited," Red-Br.50, and it never

---

disagree with the district court's preliminary analysis of all their claims, and they plan to renew all their claims at summary judgment.

disputes that it understood and addressed every argument that Plaintiffs press here, Blue-Br.45-46.[3]

If the Department meant to argue forfeiture on appeal, it has forfeited forfeiture again. As just explained, the Department largely parrots the district court without responding to any of the arguments that Plaintiffs made about forfeiture in their opening brief. *E.g.* Red-Br.3, 42-47. And the Department asks this Court to treat only one of Plaintiffs' claims as forfeited: their claim that §106.31(a)(2) is contrary to law. Red-Br.25 n.6. But even there, the Department raises the point only in a footnote, merely quotes the district court's conclusion, and responds to none of Plaintiffs' arguments. Red-Br.25 n.6; *see LaCroix v. Ft. Myers Beach*, 38 F.4th 941, 947 n.1 (11th Cir. 2022) (deeming waived an unsubstantiated procedural argument raised only in a footnote). And just recently, the Department jointly moved to stay summary-judgment proceedings in the district court, reasoning that this Court's decision "may have a 'substantial effect' on the claims." R.77 at 2. But affirming the denial of a preliminary injunction based on forfeiture would have no effect on the claims, let alone a "substantial" one. *See Hobby Lobby*

---

[3] The Department also concedes that Plaintiffs addressed severability below "at length." Red-Br.50. It excuses its own briefing deficiencies by saying it would be "unreasonable" to address severability "before the district court" found "any provision of the Rule likely invalid." Red-Br.50. But that severability-in-a-vacuum analysis is precisely what *the district court* did below. *See* R.58 at 29-36. Plaintiffs agree that the district court's severability analysis should carry no weight here.

*Stores v. Sebelius*, 723 F.3d 1114, 1144 n.19 (10th Cir. 2013) (en banc) (arguments forfeited at preliminary-injunction stage are not forfeited at later stages). The Department thus seems to appreciate that forfeiture is not a basis to affirm.

The motions panel was right to be "unpersuaded" that "Plaintiffs failed to advance and support the key claims they make here," including their claim that §106.31(a)(2) violates *Adams* and Title IX. *Alabama*, 2024 WL 3981994, at *3 n.5. Below, Plaintiffs' *main* argument was that the rule's importation of gender identity into Title IX was contrary to law. After Plaintiffs explained that both §106.10 and §106.31(a)(2) do that, R.7-1 at 14-15, their briefs referred to those provisions collectively as "the rule," R.7-1 at 11, 21-26; R.34 at 3-4; R.38 at 8-12. Like Plaintiffs, the motions panel addressed these provisions together, *see Alabama*, 2024 WL 3981994, at *4-5, and the *Louisiana* dissent referred to them collectively as "the Rule," 144 S.Ct. at 2512. Plaintiffs did not forfeit anything by refusing to buy the Department's (dubious) argument that §106.31(a)(2) and §106.10 are independent. Blue-Br.44-47, 23. Tellingly, the Department never explains how, if §106.10 is contrary to law because Title IX does not cover gender identity, then §106.31(a)(2) could survive. It couldn't. *See infra* II.A.2.

## II.     Even if *Louisiana* didn't control, Plaintiffs were entitled to a preliminary injunction.

The most the Department can say about nine Justices (plus the motions panel and every other court so far) is that their conclusions are not technically binding. Red-Br.18. But if the Supreme Court only "'*today* accept[ed]'" that the States were entitled

to a preliminary injunction, Red-Br.17, what does the Department *tomorrow* argue that warrants a different result? Nothing. The "'record'" has not been developed. Red-Br.17, 51 (quoting *Louisiana*). And the Department's legal arguments are the same as they were at the Supreme Court. *See* U.S.-*Tennessee*-Appl.28-37, 2024 WL 3511533. Those arguments, even if they weren't foreclosed, remain unpersuasive for each preliminary-injunction factor.

### A.    Likely merits
#### 1. §106.10

The Department agrees that, due to the Spending Clause, it must prove that *Bostock*'s reasoning *clearly* extends to Title IX. Red-Br.24; Blue-Br.27. It thinks it can meet that burden for §106.10, but it likely fails to overcome four main problems.

The first problem is *Bostock* and the caselaw interpreting it. Whether *Bostock* extends to Title IX is the subject of a circuit split. *Louisiana v. DOE*, 2024 WL 2978786, at *10 & n.49 (W.D. La. June 13). So it's impossible to say that *Bostock* clearly extends to Title IX, especially in this circuit. *Bostock* concerns Title VII and employment, and this Court's precedents have twice refused to extend *Bostock* to different laws or contexts. *See* Blue-Br.23-24 (discussing *Adams* and *Eknes-Tucker*). *Bostock* itself leaves open bathrooms and other contexts where males and females are not similarly situated—the *main* contexts that the rule covers. Blue-Br.25-26. *Bostock* also postdates Title IX by nearly five decades. And Title IX's text and context are markedly different from Title VII's. *See Tennessee v. Cardona*, 2024 WL 3453880, at *2-3 (6th Cir. July 17); *Tennessee v.*

*Cardona*, 2024 WL 3019146, at \*15 (E.D. Ky. June 17); *Texas v. Cardona*, 2024 WL 3658767, at \*37 (N.D. Tex. Aug. 5). As the Department's one clear-statement case explains, Title VII "is a vastly different statute from Title IX." *Jackson v. Birmingham BOE*, 544 U.S. 167, 175 (2005). While Title VII requires sex to be a factor in the causal chain of discrimination, 42 U.S.C. §2000e-2(a) ("because of"), Title IX requires sex to be "the basis" for the discrimination, 20 U.S.C. §1681; *see Tennessee*, 2024 WL 3453880, at \*3. And while Title VII has an exemption for "bona fide" considerations of sex, Red-Br.23, the Department would extend *Bostock* to Title IX *without* bringing over Title VII's "employment-specific defenses," *Tennessee*, 2024 WL 3453880, at \*2-3.

The second problem is *Adams*. The en banc Court held that "sex" in Title IX means "biological sex" and does not include "gender identity." 57 F.4th at 812-13. So when Title IX bans discrimination "on the basis of sex," 20 U.S.C. §1681(a), it does not ban discrimination "on the basis of gender identity." Yet §106.10 states the exact opposite. There is no difference between what the rule does (reading "sex discrimination" to mean "gender-identity discrimination") and what *Adams* rejects (reading "sex" to mean "gender identity"). *See Carroll ISD v. DOE*, 2024 WL 3381901, at \*4 (N.D. Tex. July 11); *Alabama*, 2024 WL 3981994, at \*4. Agencies are supposed to faithfully interpret their governing statutes, not devise clever ways around them.

The third problem is Title IX's exclusions. *Adams* explains that, if *Bostock*'s "but-for" reasoning applied to Title IX, then it would "swallow" the exclusions and provide double protection for "transgender persons." 57 F.4th at 814 & n.7. Schools could not

have male-only fraternities, for example, if Title IX required them to treat females as males. *See id.* at 814-15. That the Department had to pass another regulation to try to get out of this jam (§106.31(a)(2)) proves that *Adams* was right about the statute. And the rule trades an incorrect reading of the statute for an "implausible" one. *Facebook v. Duguid*, 592 U.S. 395, 406-07 (2021). The Department still cannot explain why a rational Congress would let schools ban males who identify as female from the Girl Scouts (20 U.S.C. §1681(a)(6)(B)) but force schools to let these males into female showers, sports, and sex-ed classes. Blue-Br.28, 9. The Department reads Title IX's exclusions as areas where Congress thought a practice was discriminatory but acceptable. *See* Red-Br.23, 29-30, 6, 13-14; 89 FR 33,816-21. Yet Congress did not think separating males and females in various circumstances was discriminatory at all. The living-facilities provision, for example, is titled "Interpretation" and says nothing in Title IX "shall *be construed*" as banning sex separation. 20 U.S.C. §1686 (emphasis added). And when Congress ratified the early athletics regulation, it agreed that sex-separated sports did not trigger Title IX's general ban on sex discrimination to begin with, since Title IX has no statutory exclusion for sports. *Adams*, 57 F.4th at 816-17; Blue-Br.25-26. The Department ignores this "powerful evidence" of Title IX's "original public meaning." *Kisor v. Wilkie*, 588 U.S. 558, 594 (2019) (Gorsuch, J., concurring).

The last problem is the rule's breadth. Though the Department focuses on hypotheticals like schools barring "transgender students" from "participating in the science fair," the rule does not justify itself on these grounds, the Department admits these

hypotheticals are not currently happening, and §106.10 is not tailored to them. Red-Br.49. Section 106.10 does not bar discrimination against students "'simply for being transgender,'" Red-Br.49 (cleaned up), or even discrimination in contexts where males and females are "similarly situated," *Bostock v. Clayton Cnty.*, 590 U.S. 644, 657 (2020). Section 106.10 defines discrimination "on the basis of … gender identity" to *be* discrimination "on the basis of sex." It thus requires schools to let males who identify as females, for example, room with females on overnight trips, undress and shower with females, go to the female sex-ed class, and play contact sports against females in gym class. Blue-Br.2-3, 8-9. (The Department's assurance that boxing matches could be separated by "'ability'" is cold comfort to an amateur female who gets punched by an equally amateur, but naturally, stronger male. Red-Br.30.) That the Department might have been able to ban some gender-identity discrimination under a different rule does not justify the sweeping rule that it adopted here.

### 2. §106.31(a)(2)

If §106.10 likely violates the APA because Title IX does not clearly cover gender identity, then §106.31(a)(2) necessarily falls too. The latter defines "more than de minimis harm" to be prohibited sex discrimination under Title IX. 34 C.F.R. §106.31(a)(1)-(2); Red-Br.13, 25-27; 89 FR 33,528. But because gender-identity discrimination is not sex discrimination, the declaration in §106.31(a)(2) that treating someone inconsistently with their "gender identity" is "more than de minimis harm *on the basis of sex*" is legally false. (Emphasis added.)

13

The only reason that §106.31(a)(2) exists, moreover, is because §106.10 injects gender identity into Title IX, creating uncertainty about what that means for Title IX's statutory and regulatory exemptions. Red-Br.22 n.5; 89 FR 33,814-21. Without §106.10, then, §106.31(a)(2) no longer functions. Neither the Department nor the rule suggests that "more than de minimis harm" means anything other than preventing participation based on "gender identity." Red-Br.32; 89 FR 33,818-21. And Title IX bans sex discrimination, not "more than de minimis harm." 20 U.S.C. §1681. The rule rests on a logical fallacy if it states that, because sex discrimination never occurs when the harm is de minimis, sex discrimination always occurs when the harm is not de minimis. *Cf.* Red-Br.32, 19 n.4; *see In re Cumbess*, 960 F.3d 1325, 1335 (11th Cir. 2020) (discussing "the fallacy of 'denying the antecedent'").

Though §106.31(a)(2) is invalid for all the same reasons as §106.10, it's invalid for at least one more: *Adams'* interpretation of Title IX's living-facilities provision (20 U.S.C. §1686). Blue-Br.9, 27-28. The Department concedes that, if this part of *Adams* "bind[s] subsequent panels," then §106.31(a)(2) is unlawful. Red-Br.30-32. But it does bind. As the Department notes elsewhere, this Court is "'bound not only by the holdings of prior cases'" but also by their legal reasoning. Red-Br.23. And a core part of *Adams'* reasoning was that the statutory exception for living facilities authorizes strictly sex-separated bathrooms. *See* 57 F.4th at 814 (citing "[§]1686" as "expressly allow[ing]"

separate "bathrooms"); *id.* at 815 ("In summary, Title IX … expressly separating the sexes when it comes to bathrooms *and other living facilities*." (emphasis added)); *id.* at 816 (similar).

While the Department now says this reading of *Adams* does not "withstan[d] scrutiny," Red-Br.25, it's the reading of *Adams* that the Department adopts *in the rule* itself, *see* Blue-Br.9, 27. Two dissenters in *Adams* agreed that the majority "relies on" the living-facilities provision. 57 F.4th at 858 (Jill Pryor, J., dissenting). And just a few months ago, the United States told another court that "[t]he *Adams* court *held* that school restrooms are encompassed within the term 'living facilities' under Section 1686." U.S.-Amicus-Br.19-20, *Bridge v. Okla. DOE*, 2024 WL 3553838 (10th Cir. July 19) (emphasis added).

Even if the Department were right that *Adams* merely "assumed" that the living-facilities provision allows sex-separated bathrooms, the Department does not prove that this reading is likely "incorrect." Red-Br.30-31. Courts not bound by this circuit's precedent have reached the same conclusion as *Adams*: "Bathrooms and locker rooms" are "facilities that are used for activities of daily living such as bathing and dressing," and Congress's concern with "privacy" does not disappear when the bathroom is in a school rather than a dorm. *Kansas v. DOE*, 2024 WL 3273285, at *10 (D. Kan. July 2); *accord Tennessee v. USDA*, 665 F. Supp. 3d 880, 913-14 (E.D. Tenn. 2023); *Bridge v. Okla. DOE*, 711 F. Supp. 3d 1289, 1299 (W.D. Okla. 2024); *D.H. v. Williamson Cnty. BOE*, 638 F. Supp. 3d 821, 834-35 (M.D. Tenn. 2022). Even the cases that split with *Adams*

hold only that, with respect to bathrooms and locker rooms, the term living facilities is "ambiguous." *E.g.*, *BOE of Highland Loc. Sch. Dist. v. DOE*, 208 F. Supp. 3d 850, 869 (S.D. Ohio 2016). But ambiguity means the Department loses under the Spending Clause. *Adams*, 57 F.4th at 815-17.

### 3. §106.2

The Department's response to *Davis* remains a nonsequitur. It does not matter whether *Davis* interpreted Title IX's "definition of 'discrimination' in the context of a private damages action." Red-Br.35-36. The Department never denies that statutes are not chameleons; interpretations rendered in one context fix the statute's meaning in all other contexts. *See* Blue-Br.30 (citing *Clark v. Martinez*, 543 U.S. 371, 380, 382, 386 (2005)). So what matters is that "*Davis*" interpreted "the text of Title IX." *Jackson*, 544 U.S. at 173-74; *see* Blue-Br.30. The Department's focus on the implied right of action ignores that, under the Supreme Court's precedent on implied rights of action, the key question is the text of the statute. As this Court explained last week, the way that courts "determine the appropriate scope of the implied right of action" is by "look[ing] to the text of Title IX and its statutory context." *Joseph v. Bd. of Regents of Univ. Sys. of Ga.*, — F.4th —, 2024 WL 4705544, at *7 (11th Cir. Nov. 7). *Davis* thus authoritatively interpreted the text of Title IX, and the Department was never free to force schools to take on broader liability than what the Supreme Court carefully delineated.

Even if the same words in Title IX could mean two different things, *Davis*' reasoning applies equally to administrative enforcement. The Department appreciates that

*Davis* was concerned with the Spending Clause's requirement of fair notice. It seems to think that administrative enforcement removes that concern because the Department gives funding recipients notice and an opportunity to comply before it punishes them. Red-Br.37. But the Spending Clause requires fair notice at the time the recipient takes the money. *Arlington Cent. Sch. Dist. BOE v. Murphy*, 548 U.S. 291, 296 (2006). That notice must come from the "'clear terms of the statute.'" *Jackson*, 544 U.S. at 183. An "executive agency" cannot provide it. *W.V. ex rel. Morrisey v. Treasury*, 59 F.4th 1124, 1147 (11th Cir. 2023). The Department cites no case saying otherwise. Nor, of course, can the Department violate the First Amendment. Though the *Davis* "dissent discussed the First Amendment," Red-Br.37, the majority "respond[ed] to the dissen[t]" and, rather than deny its concerns, explained why the "'very real limitations'" in its definition of harassment avoided them, *Alabama*, 2024 WL 3981994, at *6.

This Court doesn't need *Davis* to see the First Amendment problems with the rule's expanded definition of harassment. The Department is wrong that, "[p]rior to litigation over the Rule," no court held that harassment definitions like §106.2's violate the First Amendment. Red-Br.34. Speech First won preliminary injunctions against two such policies, including one from this Court in *Cartwright. See Speech First v. Khator*, 603 F. Supp. 3d 480, 482 & n.6 (S.D. Tex. 2022); *Speech First v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022). That the Department is left making ticky-tack distinctions between its definition and the one in *Cartwright*, *see* Red-Br.40-41, only proves that these policies present First Amendment concerns. And its distinctions are unpersuasive. *See* Blue-

Br.32-33. Though the *Cartwright* policy covered more types of harassment, the parts that covered "sex," "gender identity," "sexual orientation," and "pregnancy … status" chilled speech on those topics and were preliminarily enjoined too. 32 F.4th at 1114; *see id.* at 1125, 1121 & n.3. And the rule's "some impact" and "contribut[es] to" standards reach even more speech than the *Cartwright* policy. Blue-Br.32.

By exempting only "stray" and accidental "misuse of language," moreover, the Department admits that its definition punishes students who intentionally or repeatedly refuse to use other students' "preferred pronouns." Red-Br.38; *see* R.7-12 ¶7. It cites a case that upheld such a policy for K-12 students under the First Amendment, Red-Br.40, but that case just got vacated because the Sixth Circuit is rehearing it en banc, *PDE v. Olentangy*, 109 F.4th 453 (6th Cir.), *vacated*, 2024 WL 4647888 (Nov. 1). And the rule here covers universities too, where free-speech protections are *strongest. Cartwright*, 32 F.4th at 1127-29 & n.6.

The Department's prior guidance does not disprove the problem. *Cf.* Red-Br.33, 36. *Davis* cited that guidance for different propositions; the Court did not quote or approve its definition of harassment. *See Davis v. Monroe Cnty. BOE*, 526 U.S. 629, 647-48, 651 (1999). *Davis* adopted a much narrower definition, explicitly rejecting the broader definition from Title VII (and implicitly rejecting the guidance's similar definition). *See id.* at 651. Schools are not the workplace, *id.*, and students have greater First Amendment rights on campus than employees do at work, *Olentangy*, 109 F.4th at 483 (Batchelder, J., dissenting). In 2020, moreover, the Department ditched that prior guidance for

a notice-and-comment rule that adopted *Davis* verbatim, precisely because the broader definitions of harassment were chilling students' protected speech. 85 FR 30,162-65 & nn.738-39, 30,037. Now that the Department has codified one of those broader definitions in this rule, all schools must adopt it. R.7-13 ¶7. And because the rule's definition is facially unconstitutional, it will chill protected speech from occurring in the first place. *Cartwright*, 32 F.4th at 1128. Students will not be reassured by the Department's "promis[e]" that schools will "use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010); *cf.* Red-Br.38.

## B.  Irreparable harm

The district court made no "finding" on irreparable harm. *Cf.* Red-Br.41. It made a mistaken *legal* assumption that the rule is likely valid. Blue-Br.26-29. But under any standard of review, Plaintiffs proved sovereign, constitutional, and compliance harms—any one of which is sufficient for a preliminary injunction.

**Sovereign**: States always suffer irreparable harm when their statutes are preempted by federal regulations that are likely invalid, a basic principle that even this Court's nonbinding opinion in *Florida v. HHS* accepts. *See* 19 F.4th 1271, 1291 n.4 (11th Cir. 2021); *Alabama*, 2024 WL 3981994, at *7 n.9. The Department doesn't deny that its rule claims to preempt at least four state statutes. Blue-Br.36-37. Though it now says "many of the purportedly conflicting state laws" are not preempted, the Department doesn't explain which ones or why not. Red-Br.42. It tries to incorporate the district

court by reference, but the district court *agreed* that the rule preempts several state laws. *Alabama*, 2024 WL 3981994, at *7 n.8. That preemption comes from the rule's three core provisions, Blue-Br.36-37, and principles of severability and equitable discretion "justify enjoining" the rest of the rule, Red-Br.42; *see infra* III; Blue-Br.33-35, 40-41.

**Constitutional**: The rule also chills the speech of students, including the "associations' members" and the States' many primary, secondary, post-secondary, and graduate students. Red-Br.42; *see* Blue-Br.37; R.7-13 ¶¶13-18; R.7-12 ¶¶14-23; R.7-11 ¶¶10-14, ¶20. This constitutional harm was imminent, supported by evidence and argument, and not hard to follow. *Alabama*, 2024 WL 3981994, at *7 n.10. The rule scraps a definition of harassment that follows *Davis* and adopts a definition that exceeds *Davis*. The rule gave funding recipients (nearly all schools) just three months to adopt that definition as their own. 89 FR 33,476. But the rule's definition is facially unconstitutional; so when schools adopt it, they objectively chill students' speech. *Cartwright*, 32 F.4th at 1128. That chilling effect occurs as soon as the policy is adopted, regardless when or how a school enforces it. *Id.* at 1120-22. And chill alone is irreparable. *Id.* at 1128. The Department cites no case suggesting otherwise, or even *a* case about the First Amendment. *See* Red-Br.42-43.

**Compliance**: In "[t]his Circuit," the "rule" is that "unrecoverable costs of compliance constitute irreparable harm." *Georgia v. President*, 46 F.4th 1283, 1302 (11th Cir. 2022). The Department doesn't dispute "the existence" of Plaintiffs' compliance costs. *Id.* And it doesn't deny that its sovereign immunity makes them unrecoverable. *Alabama*,

2024 WL 3981994, at *6 & n.7. It thinks Plaintiffs' costs are too small, citing two out-of-circuit cases that discussed irreparable harm only after finding that the rule's predecessor was likely *lawful*. Red-Br.43. But in this circuit, even "ordinary" and "obvious" costs can be irreparable. *Georgia*, 46 F.4th at 1302 (cleaned up); *accord Louisiana v. Biden*, 55 F.4th 1017, 1034-35 & n.51 (5th Cir. 2022). This precedent doesn't mean that "even a cent of compliance costs" can freeze a federal regulation, Red-Br.43; small costs won't win the balance of equities unless the regulation is likely illegal, *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023).

And the costs here are hardly small or ordinary. It is *undisputed* that the rule imposes substantial and ongoing costs directly on the States. *See* Blue-Br.38-39, 12-13, 41. Many of those costs stem from the rule's three central provisions, which the rule concedes will increase complaints and investigations at least 10%, costing recipients tens of millions. 89 FR 33,851; Blue-Br.12-13. And the Department cites no authority suggesting that the unrecoverable costs from the other, inseverable parts of the rule do not count. *See Mozilla Corp. v. FCC*, 940 F.3d 1, 46-47 (D.C. Cir. 2019).

## C.    Balance of harms and public interest

On the remaining factors, the Department refuses to engage. It doesn't deny that, if the rule likely violates federal law, then these factors necessarily favor Plaintiffs. Blue-Br.39. And it doesn't deny that a preliminary injunction spares Plaintiffs from irreparable harms but imposes none on the Department—since it has no "sovereign"

interest in enforcing a regulation that exceeds the higher law of Title IX or the Constitution. *Louisiana v. DOE*, 2024 WL 3452887, at \*2-3 (5th Cir. July 17); *Alabama*, 2024 WL 3981994, at \*7 & n.9. This case doesn't involve "naval training" or matters of national security. *Cf.* Red-Br.44 (citing *Winter*). It involves a rule that the Department waited three years to enact, *Louisiana*, 2024 WL 3452887, at \*3, and that has never been in force in most States or schools, *Kansas*, 2024 WL 3273285, at \*20-22. That rule addresses sex discrimination, which is already banned under state and local law, Title IX, and the Department's rules. *Louisiana*, 2024 WL 3452887, at \*3. The Department concedes that no State will discriminate against students "simply for being transgender." Red-Br.49 (cleaned up). But by letting males into female spaces, the rule will violate "privacy rights" and harm women in ways that Title IX seeks to prevent. *Alabama*, 2024 WL 3981994, at \*7 n.12.

## III.  The whole rule should be temporarily enjoined.

No court—or even a single Justice—has voted for the Department's proposal to freeze only §106.31(a)(2) and §106.2's harassment definition as applied to gender identity. *Cf.* Red-Br.48-50. Even the dissents in *Louisiana* would have frozen all of §106.10, §106.31(a)(2), and §106.2's definition of hostile-environment harassment. *Louisiana*, 144 S.Ct. at 2510 (Sotomayor, J., dissenting). For §106.10, it should be enjoined too because it likely violates the APA. The whole provision injures the States by increasing their duties under Title IX. And because §106.31(a)(2) clarifies contexts where §106.10 does

*not* apply, enjoining §106.31(a)(2) alone could expand §106.10's scope to women's sports. Blue-Br.5-9, 23. As for §106.2, its whole definition of hostile-environment harassment exceeds *Davis*, saddling the States with increased duties and liabilities. And its whole definition likely violates free speech. Though students certainly don't want to be punished for using offensive "pronouns," Red-Br.49, they also want to speak freely about all arguably sex-related topics, including abortion, same-sex marriage, and gender identity, *see, e.g.*, R.7-12 ¶¶14-17.

And, of course, a *majority* of the Supreme Court approved rulewide relief just a few months ago. Since then, the Department has neither expanded the "record" nor proven what the Court said was missing. *Louisiana*, 144 S.Ct. at 2509-10. Rulewide relief remains proper. *See* Blue-Br.33-35, 40-41.

Though the Department debates severability, it never responds to the second independent reason for rulewide relief: the equities. It never denies that partial relief would double the costs for the States—a perverse reward for *winning* that a regulation's core provisions are unlawful. Blue-Br.41. The costs might now triple or quadruple. A different injunction out of Kansas freezes the whole rule for several schools in the plaintiff States, one that the Tenth Circuit still has not stayed. *Kansas*, 2024 WL 3273285, at *20-22, *appeal filed*, No. 24-3097. And this rule tries to repeal President Trump's rule, the same person who will be President again in January. Blue-Br.4-5. Instead of ping-ponging schools back and forth, a rulewide preliminary injunction would "maintain the status quo." *Alabama*, 2024 WL 3981994, at *9. This Court's equitable discretion to craft

temporary relief justifies that approach, regardless who's ultimately right about severability. *See Trump v. IRAP*, 582 U.S. 571, 579-80 (2017). The Department can hardly complain, as it never asked the Supreme Court to stay this Court's injunction pending appeal or tried to move this case ahead in the district court. Blue-Br.13-19; R.77. And a rulewide injunction wouldn't stop the Department from using its enforcement discretion to give schools more flexibility, Red-Br.45, or from issuing other parts of the rule "as separate rules," something it says is "easily" done, Red-Br.45.

As for severability, the Department cannot deny that rulewide relief is proper when the provisions of a rule that are likely illegal are likely inseverable. *Cf.* Red-Br.44, 51. The Department's failure to prove severability was a major reason why the Supreme Court left rulewide relief in place. *Louisiana*, 144 S.Ct. at 2510; *see, e.g.*, *NetChoice v. Bonta*, 113 F.4th 1101, 1125 (9th Cir. 2024) (affirming a preliminary injunction that reached other "provisions on the basis that they are not severable" from the illegal one). When provisions are likely inseverable, a rulewide preliminary injunction just mirrors the relief that a court would likely impose at the end of the case. *E.g.*, *Mayor of Baltimore v. Azar*, 973 F.3d 258, 292-96 (4th Cir. 2020) (en banc).

The rule's illegal provisions are likely inseverable. The Department relies exclusively on the rule's severability clauses. Red-Br.45-47. But severability "rarely" turns on those provisions. *United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968). The rule's boilerplate clauses do not contemplate *all* of its "core provisions" being "invalidated simultaneously." *Tennessee*, 2024 WL 3453880, at *4; *Alabama*, 2024 WL 3981994, at *8; *see*

89 FR 33,848 ("the potential invalidity of *one* provision should not affect the other provisions" (emphasis added)). And more importantly, the Department does not contest that freezing the core provisions would "impair the function" of the whole rule. *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988). The core provisions "are intertwined with and affect" the other provisions. *Louisiana*, 144 S.Ct. at 2510. Even the Department's "examples" use the illegal definition of "sex discrimination" 42 times and "sex-based harassment" 35 times. Red-Br.44-45; *see* 34 C.F.R. §106.2, §106.40(b), §106.45, §106.46, §106.71. So too for all but the most "technical" parts of the rule. *See Tennessee*, 2024 WL 3453880, at *4.

The Department gives this Court no basis to let the rule immediately come online, on a temporary basis starting in the middle of the school year, with *no* regulatory definition of sex discrimination. *Cf.* Red-Br.47. Schools could "not know" what that rule means. *Tennessee*, 2024 WL 3453880, at *4. An injunction (especially a preliminary one) does not erase an illegal provision or change the original meaning of the provisions that cross-reference it. *Id.* at *3-4; *Tennessee*, 2024 WL 3631032, at *1. Even if the Department responded to an injunction by pretending that its rule incorporates *Adams'* understanding of sex discrimination, that version of the rule could not survive the APA's demand for reasoned decisionmaking. Blue-Br.33-34. The rule outright rejects *Adams*. 89 FR 33,816-21. And nowhere in its reasoning or its "cost-benefit analyses," *Tennessee*, 2024 WL 3453880, at *4, does it justify itself in terms of letting "transgender students" participate in "the science fair, the marching band, or student government"—

practices that the Department agrees are *not* occurring, Red-Br.49; *Tennessee v. Cardona*, 2024 WL 3631032, at *11 (E.D. Ky. July 10).

## CONCLUSION

This Court should reverse the district court and enter a preliminary injunction prohibiting Defendants from enforcing the rule in Alabama, Florida, Georgia, and South Carolina.

Dated: November 12, 2024

Steve Marshall
  Attorney General
s/  *Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
  Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Alabama*

Ashley Moody
  Attorney General
s/ *Henry C. Whitaker*
Henry C. Whitaker
  Solicitor General
James H. Percival
  Chief of Staff
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
henry.whitaker@myfloridalegal.com

*Counsel for Florida*

Respectfully submitted,

*/s/ Cameron T. Norris*
Cameron T. Norris
Thomas S. Vaseliou
C'Zar Bernstein
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
cam@consovoymccarthy.com
tvaseliou@consovoymccarthy.com
czar@consovoymccarthy.com

*Counsel for Private Plaintiffs*

Christopher M. Carr
  Attorney General
s/ *Stephen J. Petrany*
Stephen J. Petrany
  Solicitor General
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Georgia*

Alan Wilson
  Attorney General
s/ *Joseph D. Spate*
Joseph D. Spate
  Assistant Deputy Solicitor General
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for South Carolina*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7) because it contains 6,469 words, excluding the parts that can be excluded. It also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font (with 16-point and 15-point headings).

Dated: November 12, 2024                     */s/ Cameron T. Norris*

## CERTIFICATE OF SERVICE

I e-filed this brief, which will email everyone requiring notice.

Dated: November 12, 2024                     */s/ Cameron T. Norris*